1  Daniel D. Harshman (SBN# 177139)
   Charles E. Wheeler (SBN# 82915)
2  Cozen O'Connor
   425 California Street, Suite 2400
3  San Francisco, CA 94104
   Telephone: (415) 617-6100
4  Facsimile: (415) 617-6101
   Email: dharshman@cozen.com
5         cwheeler@cozen.com
6
7  Attorneys for Plaintiff
   PSI CORPORATION
8
9           IN THE UNITED STATES DISTRICT COURT
10        FOR THE NORTHERN DISTRICT OF CALIFORNIA
11                    OAKLAND DIVISION

| | |
|---|---|
| 12  PSI CORPORATION (f/k/a/ FRIENDLYWAY CORPORATION, f/k/a BIOFARM, INC.), | Case No. C 07-02869 SBA |
| 13          Plaintiff, | |
| 14      vs. | **PSI CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER** |
| 15 | |
| 16  ALEXANDER VON WELCZECK, HENRY LO, MICHAEL DRAPER, and FRIENDLYWAY AG, | **[PART II - EXHIBITS D THROUGH F]** |
| 17 | |
| 18          Defendants. | |
| 19 | |
| 20  FRIENDLYWAY, INC., KARL JOHANNSMEIER, PACIFIC CAPSOURCE, INC., and DERMA PLUS, INC., | Date :    TBD |
| 21 | Time :    TBD |
| 22          Nominal Defendants. | Before:    TBD |
| 23 | |

24  ///
25
26  ///
27

# EXHIBIT D

Daniel D. Harshman (SBN# 177139)
Charles Wheeler
COZEN O'CONNOR
425 California Street, Suite 2400
San Francisco, CA 94104
Telephone: (415) 617-6100
Facsimile: (415) 617-6101
E-mail: dharshman@cozen.com

Attorneys for Plaintiff
PSI CORPORATION

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PSI CORPORATION (f/k/a/ FRIENDLYWAY CORPORATION, f/k/a BIOFARM, INC.), | Case No. C 07-02869 EDL |
| Plaintiff, | **DECLARATION OF DAVID FONI IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER** |
| vs. | |
| ALEXANDER VON WELCZECK, HENRY LO, MICHAEL DRAPER, and FRIENDLYWAY AG, | JURY TRIAL DEMANDED |
| Defendants. | Hearing Date and Time: |
| FRIENDLYWAY, INC., KARL JOHANNSMEIER, PACIFIC CAPSOURCE, INC., and DERMA PLUS, INC., | |
| Nominal Defendants. | |

## DECLARATION OF DAVID FONI

I, David Foni, hereby state in accordance with the provisions of Title 28, section 1746 of the United States Code as follows:

1.    I am 18 years of age and competent to testify regarding the facts stated herein.

2.    I joined PSI Corporation ("PSI") in January 2007 as a director and its Chief Executive Officer.

3.    PSI was formerly known as Biofarm, Inc. In 2004, Biofarm changed its name to Friendlyway Corporation after it acquired Friendlyway, Inc. ("FWI"). In 2006, Friendlyway the company changed its name to PSI Corporation.

4.    Alex von Welczeck was the Chief Executive Officer of PSI Corporation and one of its directors between approximately December 10, 2004 and May 1, 2006. Henry Lo was its Chief Executive Officer and a director during the same times.

5.    On or about May 29, 2007, I learned that Michael Draper, acting through a company called Derma Plus, Inc., recently had contacted PSI's transfer agent and secured the release of 720,000 shares of Plaintiff's stock.

6.    Two days later, the market price of Plaintiff's stock declined by half, with no company news to explain the drop.

7.    Earlier in May 2007, I learned that Henry Lo also had recently sold shares of PSI stock.

8.    PSI is presently attempting to raise capital. This additional capital is necessary for PSI's continued success and viability. The price volatility described above hurts PSI's ability to do so. The existence of the 18 million shares issued on December 10, 2004 also hurts the company's ability to do so.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 4th day of June, 2007.

_____
David Foni

DECLARATION OF DAVID FONI IN SUPPORT OF PLAINTIFF'S
MOTION FOR A TEMPORARY RESTRAINING ORDER

2

# EXHIBIT E

## CLOSING AGREEMENT

This Closing Agreement (this "**Agreement**") is made effective as of December 10, 2004, by and among Biofarm, Inc., a Nevada corporation ("**BIOF**"), and friendlyway, Inc. a Delaware corporation ("**FWAY**"), and each of FWAY's stockholders listed in <u>Exhibit A</u> attached hereto (collectively, the "**FWAY Stockholders**"), with reference to the material facts and circumstances set forth in the Recitals below.

## <u>RECITALS</u>

A.    BIOF, FWAY and FWAY Stockholders are parties to that certain Share Exchange Agreement ("**Exchange Agreement**") of even date herewith pursuant to which BIOF will acquire all of the issued and outstanding shares of FWAY's capital stock from the FWAY Stockholders in exchange for issuance of shares of BIOF's Common Stock to the FWAY Stockholders (the "**Exchange**").

B.    To memorialize certain changes in circumstances since the execution of the Exchange Agreement as more particularly described herein and to facilitate the Closing, the parties to the Exchange Agreement desire to enter into this Closing Agreement.

C.    The parties are executing this Agreement to memorialize their understanding regarding the foregoing.

## <u>AGREEMENT</u>

**NOW, THEREFORE**, in consideration of the covenants, promises and representations made under the Exchange Agreement, set forth herein, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree follows:

### SECTION 1

#### Interpretation.

1.1    *Interpretation.* Except as stated otherwise in this Agreement, the Exchange Agreement, including any Exhibit and Schedule thereto, shall remain in full force and effect. In the event of a conflict between the provisions of this Agreement and those of the Exchange Agreement, this Agreement shall control. Terms with initial capital letters are defined terms which shall have the respective meanings given them in the Exchange Agreement, unless the context of this Agreement requires otherwise.

## SECTION 2

### Changes.

2.1    *Additional FWAY Stockholders.*  As more particularly described in Schedule 3.3 of the Schedule of Exceptions attached hereto as <u>Exhibit B</u>, subsequent to the execution of the Exchange Agreement, the following parties (the "New Stockholders") became stockholders of FWAY: (a) Pacific Capsource, Inc.; (b) Karl Heinz Johannsmeier; (c) Henry Lo; and (d) Derma Plus, Inc. For all purposes, the New Stockholders shall be deemed to be parties to the Exchange Agreement and shall be treated as FWAY Stockholders (as that term is defined in the Exchange Agreement). <u>Exhibit A</u> to the Exchange Agreement shall be deemed to be amended and restated to be as set forth on <u>Exhibit A</u> to this Agreement.

2.2    *Schedule of Exceptions.*  The Schedule of Exceptions attached hereto as <u>Exhibit B</u> sets forth exceptions to FWAY's, FWAY Stockholders', and BIOF's respective representations and warranties as of the Closing.  The Schedule of Exceptions attached to the Exchange Agreement shall be deemed to be amended and restated to be as set forth on <u>Exhibit B</u> to this Agreement.

2.3    *Failure of Conversion Conditions Relating to Issuance of BIOF Common Stock.*  FWAY represents and warrants that with respect to the five (5) Unsecured Convertible Promissory Notes (the "Notes") listed in Schedule 3.3(B) of the Schedule of Exceptions attached hereto, because the Conversion Conditions (defined in the Notes) did not occur prior to November 15, 2004 as required, the principal and accrued interest on the Notes will not convert into 2,833,333 shares of BIOF Common Stock as provided for in the Notes.

2.4    *Waiver of Certain Conditions to Closing.*  FWAY and each of the FWAY Stockholders hereby waive the following conditions to their respective obligation to close as more particularly described in Section 7 of the Exchange Agreement: (a) Section 7.9 (Voting Agreement); (b) 7.11 (Lockup Agreement); and (c) Section 7.15 (Registration Rights). Notwithstanding the foregoing, however, BIOF agrees that subsequent to the Closing it shall execute the Voting Agreement, Registration Rights Agreement, and the Finder's Fee Agreement substantially in the forms previously delivered to BIOF.

2.5    *Affirmation by FWAY Stockholders.*  Each of the FWAY Stockholders hereby affirms to its actual knowledge, as of the effective date of this Agreement, that: (a) it is not aware of any breach by BIOF of any of BIOF's representations and warranties set forth in the Exchange Agreement, and (b) there are no facts or circumstances actually known to such FWAY Stockholder giving rise to an FWAY Stockholders Claim (as defined in the that certain Indemnification Agreement dated effective December 10, 2004 by and among BIOF, FWAY, FWAY Stockholders and certain Trustees (the "**Indemnification Agreement**")).  Furthermore, the parties acknowledge and agree that notwithstanding the foregoing affirmation, nothing shall preclude an FWAY Stockholder from pursuing an FWAY Stockholder Claim predicated upon any facts or circumstances that become known to such FWAY Stockholder at any time subsequent to the effective date of this Agreement.

2

## SECTION 3

### Miscellaneous.

3.1    *Amendment.* Except as expressly provided herein, neither this Agreement nor any term hereof may be amended, waived, discharged or terminated other than by a written instrument referencing this Agreement and signed by FWAY, each FWAY Stockholder and BIOF.

3.2    *Notices.* All notices and other communications required or permitted hereunder shall be in writing and shall be sent overnight courier, by facsimile or otherwise delivered by hand or by messenger addressed:

(a)    if to BIOF:

To the CEO or President of BIOF at the address stated in the then most current BIOF SEC Document.

(b)    if to FWAY:

friendlyway, Inc.
1255 Battery Street, Suite 200
San Francisco, CA 94111
Attn: President
Facsimile: (415) 288-3334

(c)    If to the FWAY Stockholders:

To the contact person at the address set forth in Exhibit A.

Each such notice or other communication shall for all purposes of this Agreement be treated as effective or having been given when delivered if delivered personally, or, if sent by courier, at the earlier of its receipt or 48 hours after the same has been given to a reputable courier service, addressed and mailed as aforesaid, if sent by facsimile, upon confirmation of facsimile transfer.

3.3    *Governing Law.* This Agreement shall be governed in all respects by the internal laws of the State of California as applied to agreements entered into among California residents to be performed entirely within California, without regard to principles of conflicts of law.

3.4    *Successors and Assigns.* This Agreement, and any and all rights, duties and obligations hereunder, shall not be assigned, transferred, delegated or sublicensed by any party without the prior written consent of the other parties. Any attempt by a party without such permission to assign, transfer, delegate or sublicense any rights, duties or obligations that arise under this Agreement shall be void. Subject to the foregoing and except as otherwise provided herein, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the successors, assigns, heirs, executors and administrators of the parties hereto.

3

3.5     *Entire Agreement.* The Exchange Agreement and this Agreement constitute the full and entire understanding and agreement among the parties with regard to the subjects hereof and thereof. No party shall be liable or bound to any other party in any manner with regard to the subjects hereof or thereof by any warranties, representations or covenants except as specifically set forth herein or therein.

3.6     *Delays or Omissions.* Except as expressly provided herein, no delay or omission to exercise any right, power or remedy accruing to any party to this Agreement upon any breach or default of any other party under this Agreement shall impair any such right, power or remedy of such non-defaulting party, nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring, nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent or approval of any kind or character on the part of any party of any breach or default under this Agreement, or any waiver on the part of any party of any provisions or conditions of this Agreement, must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement (including, without limitation, the remedies described in Section 10) or by law or otherwise afforded to any party to this Agreement, shall be cumulative and not alternative.

3.7     *Severability.* If any provision of this Agreement becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, portions of such provision, or such provision in its entirety, to the extent necessary, shall be severed from this Agreement, and such court will replace such illegal, void or unenforceable provision of this Agreement with a valid and enforceable provision that will achieve, to the extent possible, the same economic, business and other purposes of the illegal, void or unenforceable provision. The balance of this Agreement shall be enforceable in accordance with its terms.

3.8     *Counterparts.* This Agreement may be executed in any number of counterparts, each of which shall be enforceable against the parties actually executing such counterparts, and all of which together shall constitute one instrument.

3.9     *Telecopy Execution and Delivery.* A facsimile, telecopy or other reproduction of this Agreement may be executed by one or more parties hereto and delivered by such party by facsimile or any similar electronic transmission device pursuant to which the signature of or on behalf of such party can be seen. Such execution and delivery shall be considered valid, binding and effective for all purposes. At the request of any party hereto, all parties hereto agree to execute and deliver an original of this Agreement as well as any facsimile, telecopy or other reproduction hereof.

3.10     *Jurisdiction; Venue.* With respect to any disputes arising out of or related to this Agreement, the parties consent to the exclusive jurisdiction of, and venue in, the state courts in San Francisco County in the State of California (or in the event of exclusive federal jurisdiction, the courts of the Northern District of California).

3.11     *Construction.* No provision of this Agreement shall be construed in favor of or against any party on the ground that such party or its counsel drafted the provision. Any

4

remedies provided for herein are not exclusive of any other lawful remedies which may be available to either party, except as otherwise provided in this Agreement. This Agreement shall at all times be construed so as to carry out the purposes stated herein. Time shall be of the essence.

    3.12   *Attorney's Fees.*  In the event that any suit or action is instituted to enforce any provisions in this Agreement, the prevailing party in such dispute shall be entitled to recover from the losing party all fees, costs and expenses of enforcing any right of such prevailing party under or with respect to this Agreement, including without limitation all fees, costs and expenses of appeals.

*(The remainder of this page is left intentionally blank.)*

IN WITNESS WHEREOF, this Closing Agreement is executed as of the date first written above.

| | |
|---|---|
| **Biofarm, Inc.**, a Nevada corporation<br><br>By: _____<br><br>Name: _____<br><br>Title: _____ | **friendlyway AG**, a German corporation<br><br>By: _____<br><br>Name: _____<br><br>Title: _____ |
| **friendlyway, Inc.**, a Delaware corporation<br><br>By: _____<br><br>Name: _____<br><br>Title: _____ | _____<br>Alexander von Welczeck |
| _____<br>Henry Lo | _____<br>Karl Heinz Johannsmeier |
| **Derma Plus, Inc.**, a Nevada corporation<br><br>By: _____<br><br>Name: _____<br><br>Title: _____ | **Pacific Capsource, Inc.**, a Nevada corporation<br><br>By: _____<br><br>Name: _____<br><br>Title: _____ |

IN WITNESS WHEREOF, this Closing Agreement is executed as of the date first written above.

| **Biofarm, Inc.**, a Nevada corporation | **friendlyway AG**, a German corporation |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| **friendlyway, Inc.**, a Delaware corporation | |
| By: _____ | _____ |
| Name: _____ | **Alexander von Welczeck** |
| Title: _____ | |
| | _____ |
| **Henry Lo** | **Karl Heinz Johannsmeier** |
| **Derma Plus, Inc.**, a Nevada corporation | **Pacific Capsource, Inc.**, a Nevada corporation |
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |

IN WITNESS WHEREOF, this Closing Agreement is executed as of the date first written above.

| Biofarm, Inc., a Nevada corporation | friendlyway AG, a German corporation |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _FROX_   _Bauer_ |
| Title: _____ | Title: _CEO_   _VP_ |
| friendlyway, Inc., a Delaware corporation | |
| By: _____ | |
| Name: _____ | Alexander von Welczeck |
| Title: _____ | |
| | |
| Henry Lo | Karl Heinz Johannsmeier |
| Derma Plus, Inc., a Nevada corporation | Pacific Capsource, Inc., a Nevada corporation |
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |

**IN WITNESS WHEREOF**, this Closing Agreement is executed as of the date first written above.

| | |
|---|---|
| **Biofarm, Inc.**, a Nevada corporation<br><br>By: _____<br><br>Name: _____<br><br>Title: _____ | **friendlyway AG**, a German corporation<br><br>By: _____<br><br>Name: _____<br><br>Title: _____ |
| **friendlyway, Inc.**, a Delaware corporation<br>By: _____<br>Name: _Alexander von Welczeck_<br>Title: _CEO_ | _____<br>**Alexander von Welczeck** |
| _____<br>**Henry Lo** | _____<br>**Karl Heinz Johannsmeier** |
| **Derma Plus, Inc.**, a Nevada corporation<br>By: _____<br>Name: _Michael J. Draper_<br>Title: _Principal_ | **Pacific Capsource, Inc.**, a Nevada corporation<br>By: _____<br>Name: _Gary Little_<br>Title: _PRESIDENT_ |

**IN WITNESS WHEREOF**, this Closing Agreement is executed as of the date first written above.

| Biofarm, Inc., a Nevada corporation | friendlyway AG, a German corporation |
|---|---|
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |
| friendlyway, Inc., a Delaware corporation<br><br>By: _____<br><br>Name: _Alexander von Welczeck_<br><br>Title: _CEO_ | _[signature]_<br><br>**Alexander von Welczeck** |
| _[signature]_<br><br>**Henry Lo** | _[signature]_<br><br>**Karl Heinz Johannsmeier** |
| Derma Plus, Inc., a Nevada corporation<br><br>By: _[signature]_<br><br>Name: _Michael T. Dagit_<br><br>Title: _Principal_ | Pacific Capsource, Inc., a Nevada corporation<br><br>By: _[signature]_<br><br>Name: _Gary Little_<br><br>Title: _President_ |

**IN WITNESS WHEREOF**, this Closing Agreement is executed as of the date first written above.

| | |
|---|---|
| **Biofarm, Inc.**, a Nevada corporation<br><br>By: _____<br><br>Name: _____<br><br>Title: _____ | **friendlyway AG**, a German corporation<br><br>By: _____<br><br>Name: _____<br><br>Title: _____ |
| **friendlyway, Inc.**, a Delaware corporation<br>By: _____<br>Name: _Alexander von Welczeck_<br>Title: _CEO_ | _____<br>**Alexander von Welczeck** |
| _____<br>**Henry Lo** | _____<br>**Karl Heinz Johannsmeier** |
| **Derma Plus, Inc.**, a Nevada corporation<br>By: _____<br>Name: _Michael J. Draper_<br>Title: _Principal_ | **Pacific Capsource, Inc.**, a Nevada corporation<br>By: _____<br>Name: _Gary Little_<br>Title: _President_ |

IN WITNESS WHEREOF, this Closing Agreement is executed as of the date first written above.

| | |
|---|---|
| **Biofarm, Inc.,** a Nevada corporation<br><br>By: _____<br><br>Name: _____<br><br>Title: _____ | **friendlyway AG,** a German corporation<br>By: _____<br>Name: _____<br>Title: _CEO_   _VP_ |
| **friendlyway, Inc.,** a Delaware corporation<br>By: _____<br>Name: _Alexander von Welczeck_<br>Title: _CEO_ | _____<br>**Alexander von Welczeck** |
| _____<br>**Henry Lo** | _____<br>**Karl Heinz Johannsmeier** |
| **Derma Plus, Inc.,** a Nevada corporation<br>By: _____<br>Name: _Michael T. Draper_<br>Title: _Principal_ | **Pacific Capsource, Inc.,** a Nevada corporation<br>By: _____<br>Name: _Gary Little_<br>Title: _President_ |

EXHIBIT "A"

FWAY STOCKHOLDERS

| Name and Addresses of FWAY Stockholder: | Number of FWAY Common Shares owned pre-Closing | Number of BIOF Common Shares Owned post-Closing |
|---|---|---|
| Alexander von Welczeck<br>1255 Battery Street, Suite 200<br>San Francisco, CA 94111 | 4,811,110 | 8,659,999 |
| friendlyway AG<br>Münchener Strasse 12–16<br>85774 München<br>Germany<br>Attn: Vorstand | 3,333,334 | 6,000,001 |
| Karl Heinz Johannsmeier<br>8 Blanding Lane<br>Belvedere, CA 94920 | 555,556 | 1,000,000 |
| Pacific Capsource, Inc.<br>2325 Jackson #303<br>San Francisco, CA 94115 | 611,111 | 1,100,000 |
| Henry Lo<br>2715 Scott Street,<br>San Francisco, CA 94123 | 500,000 | 900,000 |
| Derma Plus, Inc.<br>405 12th Avenue #204<br>San Francisco, CA 94118 | 188,889 | 340,000 |
| **TOTAL:** | **10,000,000** | **18,000,000** |

EXHIBIT "B"

SCHEDULE OF EXCEPTIONS

[SEE ATTACHED]

# SCHEDULE OF EXCEPTIONS

## to the

## SHARE EXCHANGE AGREEMENT

### By and Among

### BIOFARM, INC.

### And

### FRIENDLYWAY, INC.

### And its Stockholders:

### FRIENDLYWAY AG

### ALEXANDER VON WELCZECK

### August 13, 2004

**SCHEDULE 3.3**

**Capitalization.**

A.    New Stockholders.

1.    Effective as of February 15, 2004, FWAY issued 500,000 shares of FWAY Common to Henry Lo.

2.    Effective as of June 15, 2004, FWAY issued 611,111 and 188,889 shares of FWAY Common, respectively, to Pacific Capsource, Inc., a Nevada corporation and Derma Plus, Inc., a Nevada corporation.

3.    Effective as of August 20, 2004, FWAY issued 333,334 shares of FWAY Common to friendlyway AG, a German corporation.

4.    In accordance with that certain Stock Redemption Agreement dated August 20, 2004, FWAY redeemed 1,633,334 shares of FWAY Common from Alexander von Welczeck.

5.    In accordance with that certain Common Stock Purchase Agreement dated effective October 4, 2004, Alexander von Welczeck sold 555,556 shares of FWAY Common to Karl Heinz Johannsmeier.

B.    Promises to Issue Shares of BIOF Common Stock Post-Closing.

1.    Effective as of July 16, 2004, FWAY received a certain loan in the amount of $180,000 from John Jameson. In accordance with the Unsecured Convertible Promissory Note dated July 16, 2004, the outstanding loan amount may be converted into either (a) 1,000,000 shares of BIOF Common or (b) 555,556 shares of FWAY Common.

2.    Effective as of August 16, 2004, FWAY received a certain loan in the amount of $18,000 from Stephen R. Simpkin. In accordance with the Unsecured Convertible Promissory Note dated August 16, 2004, the outstanding loan amount may be converted into either (a) 100,000 shares of BIOF Common or (b) 55,556 shares of FWAY Common.

3.    Effective as of September 13, 2004, FWAY received a certain loan in the amount of $18,000 from Henry Lo. In accordance with the Unsecured Convertible Promissory Note dated September 13, 2004, the outstanding loan amount may be converted into either (a) 100,000 shares of BIOF Common or (b) 55,556 shares of FWAY Common.

4.    Effective as of October 4, 2004, FWAY received a certain loan in the amount of $180,000 from Karl Heinz Johannsmeier. In accordance with the Unsecured Convertible Promissory Note dated October 4, 2004, the outstanding loan amount may be converted into either (a) 1,000,000 shares of BIOF Common or (b) 555,556 shares of FWAY Common.

5.    Effective as of October 15, 2004, FWAY received a certain loan in the amount of $15,000 from Henry Lo. In accordance with the Unsecured Convertible Promissory Note dated

October 15, 2004, the outstanding loan amount may be converted into either (a) 83,333 shares of BIOF Common or (b) 46,296 shares of FWAY Common.

## SCHEDULE 3.6

### Changes.

1.     FWAY and friendlyway AG have entered into that certain Amendment No. 1 to that certain License Agreement dated August 1, 2002 (the **"License Agreement"**) between FWAY and friendlyway AG. Amendment No. 1 provides for (a) a certain limitation of the intellectual property licensed under the License Agreement in the event that a certain license fee under the License Agreement will not be paid, and (b) for the payment of license fees in the event of a sublicense to affiliated parties.

2.     Effective as of July 16, 2004, FWAY received a certain loan in the amount of $180,000 from John Jameson. In accordance with the Unsecured Convertible Promissory Note dated July 16, 2004, the outstanding loan amount may be converted into either: (a) 1,000,000 shares of BIOF Common or (b) 555,556 shares of FWAY Common.

3.     Effective as of August 16, 2004, FWAY received a certain loan in the amount of $18,000 from Stephen R. Simpkin. In accordance with the Unsecured Convertible Promissory Note dated August 16, 2004, the outstanding loan amount may be converted into either (a) 100,000 shares of BIOF Common or (b) 55,556 shares of FWAY Common.

4.     In accordance with that certain Stock Redemption Agreement dated August 20, 2004, FWAY redeemed 1,633,334 shares of FWAY Common from Alexander von Welczeck by issuing a Promissory Note in the principal amount of $367,500.

5.     Effective as of September 13, 2004, FWAY received a certain loan in the amount of $18,000 from Henry Lo. In accordance with the Unsecured Convertible Promissory Note dated September 13, 2004, the outstanding loan amount may be converted into either (a) 100,000 shares of BIOF Common or (b) 55,556 shares of FWAY Common.

6.     Effective as of October 4, 2004, FWAY received a certain loan in the amount of $180,000 from Karl Heinz Johannsmeier. In accordance with the Unsecured Convertible Promissory Note dated October 4, 2004, the outstanding loan amount may be converted into either: (a) 1,000,000 shares of BIOF Common or (b) 555,556 shares of FWAY Common.

7.     Effective as of October 15, 2004, FWAY received a certain loan in the amount of $15,000 from Henry Lo. In accordance with the Unsecured Convertible Promissory Note dated October 15, 2004, the outstanding loan amount may be converted into either (a) 83,333 shares of BIOF Common or (b) 46,296 shares of FWAY Common.

## SCHEDULE 3.7

### Intellectual Property.

The vast majority of FWAY's intellectual property rights are based upon the terms and conditions under the License Agreement, as amended, a copy of which has been provided to BIOF.

## SCHEDULE 3.8

### Material Contracts.

1.    Rental Partner Agreement dated July 30, 2003 between FWAY and CCR Solutions, a Canadian corporation.

2.    Rental Partner Agreement dated July 8, 2003 between FWAY and Rent-a-PC, a New York corporation.

3.    Rental Partner Agreement dated July 8, 2003 between FWAY and Bit-by-Bit, an Oregon corporation.

4.    Rental Partner Agreement dated May 30, 2003 between FWAY and Datasis Corporation, an Illinois corporation.

5.    Reseller Agreement dated June 5, 2003 between FWAY and STSN General Holdings, a Delaware corporation.

6.    Standard VAR Agreement dated May 1, 2003 between FWAY and iConvention, Inc., a California corporation.

7.    Referral Agreement dated October 6, 2003 between FWAY and Marcole Enterprises, a California corporation.

8.    Referral Program Agreement dated October 10, 2003 between FWAY and Pronto Networks, Inc.

9.    Software Sales Agreement dated March 26, 2003 between FWAY and Provisio LLC.

## SCHEDULE 3.9

### Title to Properties and Assets; Liens.

The Company leases equipment and certain assets from the following financial institutions:

De Lage Landen Financial Services     - Sharp Copier AR507

Venserve     - Sony 42" Plasma Display
     - Compaq Armada E500 P3 700
     - Goldmine Software v5.0

GE Capital Fleet Services     - Ford Winstar

## SCHEDULE 3.14

### Registration and Voting Rights.

FWAY and the FWAY Stockholders are parties to that certain Shareholder Agreement dated August 1, 2002 ("**Shareholder Agreement**") which provides for certain voting rights, participation rights, co-sale rights, rights of first refusal, and purchase and sale options for each FWAY Stockholder. A copy of the Shareholder Agreement has been provided to BIOF. The Shareholder Agreement will be terminated as of Closing.

## SCHEDULE 3.17

### Employees.

Executive Employment Agreement dated August 1, 2000 between FWAY and Alexander von Welczeck.

## SCHEDULE 3.21

### Corporate Documents.

Listed below are additional minutes of all meetings of directors and stockholders and all actions by written consent without a meeting by the directors and stockholders. Upon written request, FWAY shall make available a copy of each document to any party to the Exchange Agreement so requesting.

1.    Written Consent in Lieu of Special Meeting of the Board of Directors dated effective as of February 15, 2004.

2.    Written Consent in Lieu of Special Meeting of the Board of Directors dated effective as of April 10, 2004.

3.    Written Consent in Lieu of Special Meeting of the Board of Directors dated effective as of June 15, 2004.

4.     Written Consent of the Board of Directors dated effective as of July 16, 2004.

5.     Written Consent of the Board of Directors dated effective as of August 16, 2004.

6.     Written Consent in Lieu of Special Meeting of the Board of Directors dated effective as of August 20, 2004.

7.     Written Consent of the Board of Directors dated effective as of September 13, 2004.

8.     Written Consent of the Board of Directors dated effective as of October 4, 2004.

## SCHEDULE 4.1

### Ownership.

See Schedule 3.14 above and terms of the Shareholder Agreement for preemptive or similar rights, restrictions, or claims of every kind.

## SCHEDULE 4.2

### Authority to Execute and Perform Agreement; No Breach.

See Schedule 4.1 above.

# EXHIBIT F

## FRIENDLYWAY, INC.

### OFFICERS' CERTIFICATE

The undersigned, the Chief Executive Officer and Chief Financial Officer of friendlyway, Inc., a Delaware corporation, ("FWAY"), acting in their respective capacities and not in their individual capacities, pursuant to Section 2.3(a) of that certain Share Exchange Agreement (the "Agreement"), dated effective August 13, 2004, by and among Biofarm, Inc., a Nevada corporation ("BIOF"), FWAY, and its stockholders, do hereby certify to BIOF on behalf of FWAY:

(1)    As of the date of Closing, each of the conditions to BIOF's obligation to close listed in Section 6 of the Agreement other than Section 6.1(b) have been satisfied, subject to the terms of that certain Closing Agreement between BIOF, FWAY, and FWAY Stockholders dated effective as of August 13, 2004.

All defined terms used, but not defined, in this Officers' Certificate shall have the meanings ascribed to them in the Agreement.

**IN WITNESS WHEREOF**, each of the undersigned has hereunto signed his name as of _December 10_, 2004.

FRIENDLYWAY, INC.,
a Delaware corporation

By:    _____
Alexander von Welczeck, Chief Executive Officer


By:    _____
Henry Lo, Chief Financial Officer

1

DERMA PLUS, INC.

OFFICERS' CERTIFICATE

The undersigned, the Chief Executive Officer of Derma Plus, Inc., a Nevada corporation ("**Derma Plus**"), acting in his capacity and not in his individual capacity, pursuant to Section 2.4(b) of that certain Share Exchange Agreement (the "**Agreement**"), dated effective August 13, 2004, by and among Biofarm, Inc., a Nevada corporation ("**BIOF**"), friendlyway, Inc., a Delaware corporation, and its stockholders, does hereby certify to BIOF on behalf of Derma Plus:

     (1)    The representations and warranties made by Derma Plus in Section 4 of the Agreement (as modified by the disclosures in the Schedule of Exceptions) are true and correct in all material respects as of the date of Closing except for representations and warranties which are modified by materiality or by a Material Adverse Effect clause, which representations and warranties are true and correct in all respects.

All defined terms used, but not defined, in this Officers' Certificate shall have the meanings ascribed to them in the Agreement.

**IN WITNESS WHEREOF**, each of the undersigned has hereunto signed his name as of _December 10_, 2004.

                        **DERMA PLUS, INC.,**
                        **a Nevada corporation**

                        By: _____

                        Printed Name: _____

                        Title:  Chief Executive Officer

1

## PACIFIC CAPSOURCE, INC.

## OFFICERS' CERTIFICATE

The undersigned, the Chief Executive Officer of Pacific Capsource, Inc., a Nevada corporation ("PC"), acting in his capacity and not in his individual capacity, pursuant to Section 2.4(b) of that certain Share Exchange Agreement (the "**Agreement**"), dated effective August 13, 2004, by and among Biofarm, Inc., a Nevada corporation ("**BIOF**"), friendlyway, Inc., a Delaware corporation, and its stockholders, does hereby certify to BIOF on behalf of PC:

(1)    The representations and warranties made by PC in Section 4 of the Agreement (as modified by the disclosures in the Schedule of Exceptions) are true and correct in all material respects as of the date of Closing except for representations and warranties which are modified by materiality or by a Material Adverse Effect clause, which representations and warranties are true and correct in all respects.

All defined terms used, but not defined, in this Officers' Certificate shall have the meanings ascribed to them in the Agreement.

**IN WITNESS WHEREOF**, each of the undersigned has hereunto signed his name as of _December 10_, 2004.

PACIFIC CAPSOURCE, INC.,
a Nevada corporation

By: _Gary Little_

Printed Name: _Gary Little_

Title:  Chief Executive Officer

1

## FWAY INDIVIDUAL STOCKHOLDERS' CERTIFICATE

The undersigned, acting in their individual capacities as stockholders of friendlyway, Inc., a Delaware corporation ("FWAY"), pursuant to Section 2.4(b) of that certain Share Exchange Agreement (the **"Agreement"**), dated effective August 13, 2004, by and among Biofarm, Inc., a Nevada corporation ("BIOF"), FWAY, and its stockholders, hereby certify to BIOF:

(1)     The representations and warranties made by the undersigned in Section 4 of the Agreement (as modified by the disclosures in the Schedule of Exceptions) are true and correct in all material respects as of the date of Closing except for representations and warranties which are modified by materiality or by a Material Adverse Effect clause, which representations and warranties are true and correct in all respects.

All defined terms used, but not defined, in this Certificate shall have the meanings ascribed to them in the Agreement.

**IN WITNESS WHEREOF**, the undersigned have signed their names effective as of *December 10*, 2004.

ALEXANDER VON WELCZECK

_____

KARL HEINZ JOHANNSMEIER

_____

HENRY LO

_____

1

10-DEZ-04    20:46    Von-friendlyway                    +4989959791569    T-128  S.017/023  F-577

### FRIENDLYWAY AG

### OFFICERS' CERTIFICATE

The undersigned, each a member of Vorstand of friendlyway AG, a German corporation ("AG"), acting in their respective capacities and not in their individual capacities, pursuant to Section 2.4(b) of that certain Share Exchange Agreement (the "Agreement"), dated effective August 13, 2004, by and among Biofarm, Inc., a Nevada corporation ("BIOF"), friendlyway, Inc., a Delaware corporation, and its stockholders, do hereby certify to BIOF on behalf of AG:

(1)    The representations and warranties made by AG in Section 4 of the Agreement (as modified by the disclosures in the Schedule of Exceptions) are true and correct in all material respects as of the date of Closing except for representations and warranties which are modified by materiality or by a Material Adverse Effect clause, which representations and warranties are true and correct in all respects.

―    All defined terms used, but not defined, in this Officers' Certificate shall have the meanings ascribed to them in the Agreement.

IN WITNESS WHEREOF, each of the undersigned has hereunto signed his name as of 12 - 18 ― , 2004.

FRIENDLYWAY AG,
a German corporation

By: _____
    Klaus Trox, Vorstand

By: _____
    Andreas Stütz, Vorstand

1