1  Daniel D. Harshman (SBN# 177139)
   Charles E. Wheeler (SBN# 82915)
2  Cozen O'Connor
   425 California Street, Suite 2400
3  San Francisco, CA  94104
   Telephone:  (415) 617-6100
4  Facsimile:  (415) 617-6101
   Email:  dharshman@cozen.com
5          cwheeler@cozen.com
6
7  Attorneys for Plaintiff
   PSI CORPORATION
8
9            IN THE UNITED STATES DISTRICT COURT
10        FOR THE NORTHERN DISTRICT OF CALIFORNIA
11                    OAKLAND DIVISION

| | |
|---|---|
| 12 PSI CORPORATION (f/k/a/ FRIENDLYWAY CORPORATION, f/k/a BIOFARM, INC.), | Case No. C 07-02869 SBA |
| 13                Plaintiff, | **PSI CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER** |
| 14       vs. | |
| 15 | |
| 16 ALEXANDER VON WELCZECK, HENRY LO, MICHAEL DRAPER, and FRIENDLYWAY AG, | **[PART III - EXHIBITS G THROUGH I]** |
| 17 | |
| 18                Defendants. | |
| 19 | |
| 20 FRIENDLYWAY, INC., KARL JOHANNSMEIER, PACIFIC CAPSOURCE, INC., and DERMA PLUS, INC., | Date :    TBD |
| 21 | Time :    TBD |
| 22                Nominal Defendants. | Before:   TBD |
| 23 | |

24  ///
25
26  ///
27

28

# EXHIBIT G

May 11 07 06:36p                                                        p.3

ENDORSED
F I L E D
San Francisco County Superior Court

APR 2 3 2007

GORDON PARK-LI, Clerk
BY: _____ JUN P. PANELO
                    Deputy Clerk

1

2  Laurence A. Weiss (Bar No. 164638)
   Holly Baudler (Bar No. 238843)
3  HELLER EHRMAN LLP
   275 Middlefield Road
4  Menlo Park, CA 94025              **CASE MANAGEMENT CONFERENCE SET**
5  Telephone: (650) 324-7000
   Facsimile: (650) 324-0638
6                                    SEP 2 1 2007 -9ᵃᵐ AM
7  Attorneys for Plaintiff
   friendlyway AG                    DEPARTMENT 212
8
9                 SUPERIOR COURT OF CALIFORNIA
10                  COUNTY OF SAN FRANCISCO
11
12 friendlyway AG, a German corporation,  ) Case No.: C G C -07 -4 6 2 6 2 2
                                          )
13              Plaintiff,               ) UNLIMITED JURISDICTION
                                          )
14        v.                             ) **COMPLAINT FOR BREACH OF**
                                          ) **CONTRACT, VIOLATION OF U.C.C.**
15 PSI CORPORATION, a Nevada             ) **§ 8-401 (NRS 104.8401), CONVERSION,**
16 corporation, fka friendlyway Corporation, ) **UNJUST ENRICHMENT, EQUITABLE**
   fka Biofarm, Inc.; and DOES 1-20,     ) **INDEMNITY, AND INJUNCTIVE AND**
17                                        ) **DECLARATORY RELIEF**
                                          )
18              Defendants.              )
                                          ) JURY TRIAL DEMANDED
19                                        )
20 _____)

21       Plaintiff friendlyway AG hereby complains against PSI Corporation and Does 1-20,

22 and alleges as follows:

23                          **PRELIMINARY STATEMENT**

24       1.     Plaintiff brings this action to recover for the harm it has suffered and

25 continues to suffer as a result of defendant's wrongful and arbitrary "cancellation" of more

26 than 7.5 million shares of common stock of PSI Corporation owned by plaintiff, and

27 defendant's failure to comply with both its contractual obligations to issue more than 1.0

28 million additional shares of the common stock of PSI Corporation to plaintiff and its duty to

Heller
Ehrman LLP

COMPLAINT

1 register transfers of stock as instructed by plaintiff.

**PARTIES**

2.     Plaintiff friendlyway AG ("FWAG") is a German corporation with its

principal place of business at Feringa-Strasse 9, 85774 Unterfoehring, Germany.

3.     Defendant PSI Corporation ("PSI") is a Nevada corporation with its principal

place of business at 7222 Commerce Center Drive, Suite 230, Colorado Springs, Colorado

80919. On information and belief, from approximately March 2005 through September

2006, PSI was known as friendlyway Corporation ("FW Corp."), and had its principal place

of business at 1225 Battery Street, San Francisco, California 94111.  On information and

belief, prior to March 2005, PSI was known as Biofarm, Inc. ("Biofarm").

4.     Defendants DOES 1-20 are persons or entities whose true names and

capacities are presently unknown to plaintiff, and who therefore are sued by such fictitious

names.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously

named defendants perpetrated some or all of the wrongful acts alleged herein, is responsible

in some manner for the matters and things alleged herein, and is jointly and severally liable

for the acts complained of herein.  Plaintiffs will seek leave of court to amend this

Complaint to state the true names and capacities of such fictitiously named defendants when

ascertained.

**VENUE**

5.     Venue is proper in this Court pursuant to California Code of Civil Procedure

Section 395.5, and also pursuant to the forum selection clause in the Share Exchange

Agreement by and among Biofarm and FW Inc. and its Stockholders, FWAG and

Alexander von Welczeck ("von Welczeck"), dated August 13, 2004 (the "2004 Share

Exchange Agreement"), which provides that, with respect to disputes arising out of or

related to that Agreement, the parties consent to the exclusive jurisdiction of, and venue in,

the state and federal courts in San Francisco County in the State of California.

Heller
Ehrman LLP

COMPLAINT                                    2



## FACTUAL ALLEGATIONS

6.    In 2000, FWAG established a wholly-owned subsidiary, FW Inc., in Delaware, and was issued 10,000,000 shares of FW Inc.'s common stock. FWAG seconded an employee, von Welczeck, to FW Inc. to become its chief executive officer.

7.    In August 2002, FWAG, FW Inc., von Welczeck, and certain FWAG shareholders entered into a Stock Purchase Agreement, effective August 1, 2002 (the "2002 Stock Purchase Agreement"). Pursuant to the 2002 Stock Purchase Agreement, von Welczeck purchased 7,000,000 shares of FW Inc. common stock for $40,000. Also pursuant to the 2002 Stock Purchase Agreement, FWAG paid von Welczeck $40,000 in consideration for von Welczeck's waiver of his right to be re-employed by FWAG and FWAG's related obligation to pay the expense of relocating von Welczeck and his family to Germany. These obligations were offset against one another at the closing. Following the closing of the transactions set forth in the 2002 Stock Purchase Agreement, von Welczeck owned 7,000,000 shares of FW Inc. common stock, and FWAG owned 3,000,000 shares of FW Inc. common stock.

8.    In August 2004, the stockholders of FW Inc., including FWAG and von Welczeck, agreed to exchange all of their shares of FW Inc. common stock for an aggregate of 18,000,000 shares of Biofarm (now PSI) common stock pursuant to the 2004 Share Exchange Agreement and a Closing Agreement, effective December 10, 2004, among Biofarm, FW Inc., and each of FW Inc.'s stockholders.

9.    As a result of the transaction described in Paragraph 8, FWAG was issued 6,000,001 shares of Biofarm (now PSI) common stock. Also a result of the transaction described in Paragraph 8, von Welczeck was issued 8,659,999 shares of Biofarm (now PSI) common stock.

10.    Also as a result of the transaction described in Paragraph 8, FW Inc. became a wholly-owned subsidiary of Biofarm (now PSI).

11.    Upon information and belief, FWAG's stock certificate representing the 6,000,001 shares of Biofarm (now PSI) common stock owned by FWAG was placed in the

Heller
Ehrman LLP

COMPLAINT                                          3

May 11 07 06:37p                                                                    p.6



1   custody of the then-management of Biofarm (now PSI) in anticipation of a possible further

2   stock exchange being negotiated in 2005. Upon information and belief, PSI and/or its

3   agents currently have possession and/or control of the stock certificate representing the

4   6,000,001 shares of Biofarm (now PSI) common stock owned by FWAG.

5          12.     Section 10.2 of the 2004 Share Exchange Agreement provided that additional

6   shares of Biofarm (now PSI) common stock would be issued to the former stockholders of

7   FW Inc. under certain circumstances:

8              *Adjustment of Share Issuances.* If at any time, and from time to
9              time, after the Closing, the sum of (i) the number of shares of
               BIOF [now PSI] Common issued and outstanding as of the
10             Closing (including the number of S-8 Shares, if any that are
               subsequent to the Closing determined to have been issued and
11             outstanding as of the Closing), (ii) the number of shares of
12             BIOF [now PSI] Common issued with respect to any claims
               relating to the cancellation of the S-8 shares, (iii) the number of
13             shares of BIOF [now PSI] Common issued in connection with
               the Artwork Obligation after the Closing, and (iv) the number of
14             shares of BIOF [now PSI] Common issued with respect to any
15             claims arising out of events or circumstances occurring prior to
               the Closing which are issued subsequent to the Closing (such
16             sum the "Adjusted Capitalization"), exceeds 6,000,000 (as
17             appropriately adjusted for stock splits, stock dividends,
               recapitalizations and like events) then BIOF [now PSI] shall, as
18             soon as practicable, issue to the FWAY Stockholders [including
19             FWAG and von Welczeck] (in the same proportions as the
               Acquisition Consideration was issued to them) such additional
20             number of shares of BIOF [now PSI] Common such that the
               total number of shares of BIOF [now PSI] Common issued to
21             the FWAY Stockholders pursuant to this agreement equals three
22             (3) times the Adjusted Capitalization. Such shares shall be
               deemed to be additional shares of Acquisition Consideration and
23             an adjustment to the acquisition price.

24         13.     Upon information and belief, FWAG has become entitled to an additional

25   approximately 1,000,000 or more shares of Biofarm (now PSI) common stock pursuant to

26   Section 10.2 of the 2004 Share Exchange Agreement. However, PSI has never issued these

27   additional shares of PSI common stock it owes to FWAG.

28         14.     In February 2005, FWAG and von Welczeck entered into a Settlement

Heller
Ehrman LLP

COMPLAINT                                    4



1  Agreement and Limited Release (the "2005 Settlement Agreement") pursuant to which von

2  Welczeck transferred 1,529;824 shares of Biofarm (now PSI) common stock (and promised

3  to transfer 20% of any shares of Biofarm (now PSI) common stock issued to von Welczeck

4  pursuant to Section 10.2 of the 2004 Share Exchange Agreement) to FWAG in

5  consideration for the release by FWAG of certain of von Welczeck's obligations then

6  outstanding under the 2002 Stock Purchase Agreement.

7       15.    Upon the effective date of the 2005 Settlement Agreement, FWAG owned

8  7,529,825 shares of Biofarm (now PSI) common stock.

9       16.    Upon information and belief, PSI and/or its agents currently has possession of

10 the stock certificate representing the 1,529,824 shares of Biofarm (now PSI) common stock

11 that von Welczeck transferred to FWAG as alleged in Paragraph 14.

12      17.    Beginning in February 2005, in connection with providing additional

13 financing to Biofarm (now PSI), FWAG offered and sold in Germany to non-U.S. citizens

14 reverse convertible bonds, which were convertible into shares of Biofarm (now PSI)

15 common stock. The purchasers of the bonds subsequently elected to convert the bonds.

16 FWAG intended to effect the conversion by transferring to the bondholders shares of

17 Biofarm (now PSI) common stock owned by FWAG in accordance with each bondholder's

18 subscription certificate.

19      18.    In March 2005, Biofarm changed its name to friendlyway Corporation ("FW

20 Corp.").

21      19.    In June 2005, FWAG entered into a subscription agreement with FW Corp.

22 (now PSI) (the "June 2005 Subscription Agreement") pursuant to which certain notes held

23 by FWAG were cancelled and FWAG subscribed the outstanding principal and accrued

24 interest thereunder in consideration for the issuance of 2,318,575 shares of FW Corp. (now

25 PSI) common stock.

26      20.    In July 2005, FWAG entered into a subscription agreement with FW Corp.

27 (now PSI) (the "July 2005 Subscription Agreement") pursuant to which certain notes held

28 by FWAG were cancelled and FWAG subscribed the outstanding principal and accrued

Heller
Ehrman LLP

COMPLAINT                                    5



1   interest thereunder in consideration for the issuance of 1,250,000 shares of FW Corp. (now

2   PSI) common stock.

3          21.    In September 2005, FWAG entered into a subscription agreement with FW

4   Corp. (now PSI) (the "September 2005 Subscription Agreement") pursuant to which certain

5   notes held by FWAG were cancelled and FWAG subscribed the outstanding principal and

6   accrued interest thereunder in consideration for the issuance of 1,250,000 shares of FW

7   Corp. (now PSI) common stock.

8          22.    The June 2005 Subscription Agreement, the July 2005 Subscription

9   Agreement and the September 2005 Subscription Agreement are collectively referred to

10  herein as the "2005 Subscription Agreements."

11         23.    As a result of the transactions described above, as of March 9, 2006, FWAG

12  was entitled to approximately 13,348,400 or more shares of FW Corp. (now PSI) common

13  stock. This number consists of the 6,000,001 shares issued pursuant to the 2004 Share

14  Exchange Agreement as described in Paragraph 8 above, 1,529,824 shares transferred to

15  FWAG by von Welczeck pursuant to the 2005 Settlement Agreement as described in

16  Paragraph 14, approximately 1,000,000 or more shares owed pursuant to Section 10.2 of the

17  2004 Share Exchange Agreement, and an aggregate of 4,818,575 shares owed pursuant to

18  the 2005 Subscription Agreements described in Paragraphs 19-22.

19         24.    In April 2006, FWAG sent stock powers and assignments separate from

20  certificate to FW Corp. (now PSI) and instructed FW Corp. (now PSI) to transfer an

21  aggregate of 7,850,000 shares of the FW Corp. (now PSI) common stock owned by FWAG

22  to certain non-U.S. citizens in connection with the conversion of the convertible bonds

23  described in Paragraph 17.

24         25.    In May 2006, FW Corp. (now PSI) acquired Pantel Systems, Inc., a Nevada

25  corporation, pursuant to a Share Exchange Agreement (the "2006 Share Exchange

26  Agreement"), dated April 27, 2006, among FW Corp. (now PSI), Pantel Systems, Inc. and

27  Kenneth J. Upcraft, its sole stockholder.

28         26.    Pursuant to the 2006 Share Exchange Agreement, Upcraft acquired

Heller
Ehrman LLP

COMPLAINT                                          6



1  20,000,000 shares of FW Corp. (now PSI) common stock in exchange for all his shares of
2  capital stock of Pantel Systems, Inc. As a result, Upcraft became the largest single
3  shareholder of FW Corp. (now PSI). Upon the closing of the transaction described in the
4  2006 Share Exchange Agreement, Upcraft also became President and Chief Executive
5  Officer of FW Corp. (now PSI), and had the power to exercise his control over FW Corp.
6  (now PSI).

7          27.    In July 2006, FWAG again requested that FW Corp. (now PSI) issue and
8  deliver stock certificates evidencing the transfers described in Paragraph 24 and the balance
9  of shares owned by FWAG.

10          28.    To date, PSI has refused to carry out FWAG's instructions to transfer shares
11  held by FWAG as described in Paragraphs 24 and 27.

12          29.    On August 15, 2006, FW Corp. (now PSI), now controlled by Upcraft,
13  announced that it had "cancelled" the issuance of 15,560,000 shares of its common stock.
14  Upon information and belief, these "cancelled" shares include the 6,000,001 shares issued
15  to FWAG pursuant to the 2004 Share Exchange Agreement and the 1,529,824 shares
16  transferred to FWAG by von Welczeck pursuant to the 2005 Settlement Agreement.

17          30.    The purported "cancellation" of 7,529,825 shares of FW Corp. (now PSI)
18  common stock owned by FWAG was wrongful and without any justification whatsoever.

19          31.    In October 2006, FW Corp. changed its name to PSI Corporation ("PSI").

20          32.    In October 2006, PSI issued to FWAG three stock certificates for PSI
21  common stock, representing 2,318,575 shares, 1,250,000 shares and 833,333 shares,
22  respectively, apparently pursuant to the 2005 Subscription Agreements described in
23  Paragraphs 19-22. To date PSI has not issued a certificate representing the remaining
24  416,667 shares issuable to FWAG pursuant to the 2005 Subscription Agreements.

25                          **FIRST CAUSE OF ACTION**

26                  **(Breach of the 2004 Share Exchange Agreement)**

27                          **(Cancellation of Shares)**

28          33.    Plaintiff FWAG realleges and incorporates by reference the allegations of

Heller
Ehrman LLP

COMPLAINT                            7



1   Paragraphs 1-32 above.

2       34.    FWAG has performed all conditions, covenants and promises required on its

3   part by the terms and conditions of the 2004 Share Exchange Agreement.

4       35.    Defendant PSI has breached the terms of the 2004 Share Exchange

5   Agreement by purporting to "cancel" shares of PSI common stock owned by FWAG that

6   were issued as part of the consideration for FWAG's entering into the 2004 Share Exchange

7   Agreement.

8       36.    As a result of PSI's breach of the 2004 Share Exchange Agreement, FWAG

9   has been deprived of 7,529,825 shares of PSI common stock. FWAG has been unable to

10  sell, transfer, or otherwise enjoy the rights of ownership of the PSI common stock it

11  rightfully owns, and has been damaged thereby.

12                      **SECOND CAUSE OF ACTION**

13                (**Breach of the 2004 Share Exchange Agreement**)

14        (**Failure to Issue Additional Shares Owed Under Section 10.2**)

15      37.    Plaintiff FWAG realleges and incorporates by reference the allegations of

16  Paragraphs 1-36 above.

17      38.    FWAG has performed all conditions, covenants and promises required on its

18  part by the terms and conditions of the 2004 Share Exchange Agreement.

19      39.    Defendant PSI has breached the terms of the 2004 Share Exchange

20  Agreement, and, in particular, Section 10.2 thereto, by failing to issue to FWAG

21  approximately 1,000,000 or more shares of PSI common stock owed to FWAG as further

22  consideration for FWAG's entering into the 2004 Share Exchange Agreement.

23      40.    As a result of PSI's breach of the 2004 Share Exchange Agreement, FWAG

24  has been deprived of approximately 1,000,000 or more additional shares of PSI common

25  stock. FWAG has been unable to sell, transfer, or otherwise enjoy the rights of ownership

26  of the PSI common stock it rightfully owns, and has been damaged thereby.

27

28

Heller
Ehrman LLP

COMPLAINT                                  8

### THIRD CAUSE OF ACTION

#### (Breach of the 2005 Subscription Agreements)

41.     Plaintiff FWAG realleges and incorporates by reference the allegations of Paragraphs 1-40 above.

42.     FWAG has performed all conditions, covenants and promises required on its part by the terms and conditions of the 2005 Subscription Agreements.

43.     Defendant PSI's actions described above have breached the terms of at least one of the 2005 Subscription Agreements.

44.     As a result of PSI's breach of the at least one of the 2005 Subscription Agreements, FWAG has been deprived of 416,667 shares of PSI common stock. FWAG has been unable to sell, transfer, or otherwise enjoy the rights of ownership of the PSI common stock it rightfully owns, and has been damaged thereby.

### FOURTH CAUSE OF ACTION

#### (Violation of U.C.C. § 8-401 (NRS 104.8401))

45.     Plaintiff FWAG realleges and incorporates by reference the allegations of Paragraphs 1-44 above.

46.     FWAG owns the shares of PSI common stock described herein and is eligible to have such shares registered in its name.

47.     FWAG's duly authorized agents delivered to PSI requests to transfer shares of its PSI common stock to certain non-U.S. individuals (*i.e.*, the bondholders who exercised their conversion rights) along with valid stock powers and assignments separate from certificate.

48.     FWAG's agents were known to PSI and PSI was reasonably assured that the instructions were genuine and authorized.

49.     FWAG complied with any applicable tax laws in connection with the transfers it requested.

50.     The requested transfers violated no issuer-imposed restriction on transfer known to FWAG.

Heller
Ehrman LLP

COMPLAINT                                      9



1    51.  No appropriate person had demanded PSI not to register the transfers

2  requested by FWAG.

3    52.  The requested transfers were rightful.

4    53.  PSI has a duty to register the transfers requested by FWAG.

5    54.  PSI's failure or refusal to register the transfers and to issue a stock certificate

6  to FWAG for the balance of its shares of PSI common stock has caused FWAG to be unable

7  to sell, transfer, or otherwise enjoy the rights of ownership of the PSI common stock it

8  rightfully owns, and has potentially exposed FWAG to claims against it by the holders of

9  the convertible bonds who exercised their conversion rights but have not yet been issued

10  their shares, and has been damaged thereby.

11                          **FIFTH CAUSE OF ACTION**

12                              **(Conversion)**

13    55.  Plaintiff FWAG realleges and incorporates by reference the allegations of

14  Paragraphs 1-54 above.

15    56.  Plaintiff FWAG has a right to possession of its personal property, namely, (a)

16  7,529,825 shares of PSI common stock FWAG owns pursuant to the 2004 Share Exchange

17  Agreement and 2005 Settlement Agreement, (b) at least 1,000,000 or more additional shares

18  of PSI common stock that PSI is required to issue FWAG pursuant to Section 10.2 of the

19  2004 Share Exchange Agreement and (c) 416,667 shares of PSI common stock FWAG

20  agreed to issue to FWAG pursuant to the 2005 Subscription Agreements.

21    57.  PSI and/or its agents actually interfered with plaintiff's right to possession of

22  this property.

23    58.  The conduct by PSI and/or its agents was willful, knowing and intentional and

24  was undertaken with malice.

25    59.  FWAG has demanded return of the property.

26    60.  The interference by PSI and/or its agents with FWAG's right to possession of

27  its property has caused FWAG injury, damage, loss or harm in that has been unable to sell,

28

Heller
Ehrman LLP

COMPLAINT                                    10



1  transfer, or otherwise enjoy the rights of ownership of the PSI common stock it rightfully

2  owns.

### SIXTH CAUSE OF ACTION

#### (Unjust Enrichment)

5      61.   Plaintiff FWAG realleges and incorporates by reference the allegations of

6  Paragraphs 1-60 above.

7      62.   PSI's unilateral "cancellation" of at least 7,529,825 shares of PSI common

8  stock rightfully owned by FWAG deprives FWAG of the benefit of its ownership of the

9  stock.

10      63.   PSI's failure to issue (a) at least 1,000,000 or more additional shares of PSI

11  common stock that PSI is required to issue FWAG pursuant to Section 10.2 of the 2004

12  Share Exchange Agreement and PSI and (b) 416,667 shares of PSI common stock FWAG

13  agreed to issue to FWAG pursuant to the 2005 Subscription Agreements deprives FWAG of

14  the benefit of its ownership of the stock.

15      64.   PSI's unilateral "cancellation" of at least 7,529,825 shares of PSI common

16  stock rightfully owned by FWAG (which constituted approximately 14.34% of the issued

17  and outstanding shares of PSI common stock as of July 14, 2006) unjustly benefits PSI and

18  its shareholders at the expense of FWAG.

19      65.   PSI's failure to issue shares of PSI common stock pursuant to Section 10.2 of

20  the 2004 Share Exchange Agreement and 2005 Subscription Agreements unjustly benefits

21  PSI and its shareholders at the expense of FWAG.

### SEVENTH CAUSE OF ACTION

#### (Injunctive Relief)

24      66.   Plaintiff FWAG realleges and incorporates by reference the allegations of

25  Paragraphs 1-65 above.

26      67.   The possession by PSI and/or its agents of stock certificates representing

27  FWAG's ownership of 7,529,825 shares of PSI common stock deprives FWAG of ability to

28  sell, transfer, or otherwise enjoy the rights of ownership of the PSI common stock it

Heller
Ehrman LLP

COMPLAINT                                         11



1    rightfully owns.

2        68.    PSI's wrongful "cancellation" of at least 7,529,825 shares of PSI common

3    stock rightfully owned by FWAG deprives FWAG of ability to sell, transfer, or otherwise

4    enjoy the rights of ownership of the PSI common stock it rightfully owns.

5        69.    PSI's wrongful failure to issue at least 1,000,000 or more shares of PSI

6    common stock owed to FWAG pursuant to Section 10.2 of the 2004 Stock Exchange

7    Agreement deprives FWAG of ability to sell, transfer, or otherwise enjoy the rights of

8    ownership of the PSI common stock it rightfully owns.

9        70.    PSI's wrongful failure to issue 416,667 shares of PSI common stock owed to

10   FWAG pursuant to one or more of the 2005 Subscription Agreements deprives FWAG of

11   ability to sell, transfer, or otherwise enjoy the rights of ownership of the PSI common stock

12   it rightfully owns.

13       71.    PSI's refusal to register the stock transfers requested by FWAG in April 2006

14   has deprived and continues to deprive FWAG of the ability to complete the conversion of

15   the convertible bonds in favor of its non-U.S. bondholders.

16       72.    Damages may be an inadequate remedy in this situation because of FWAG's

17   obligation to transfer shares of PSI common stock to the bondholders who elected to

18   convert their bonds into stock.

19                            **EIGHTH CAUSE OF ACTION**

20                                 **(Declaratory Relief)**

21       73.    Plaintiff FWAG realleges and incorporates by reference the allegations of

22   Paragraphs 1-72 above.

23       74.    PSI has purported to "cancel" at least 7,529,825 shares of PSI common stock

24   that is rightfully owned by FWAG.

25       75.    PSI has refused to issue and convey to FWAG the additional shares of PSI

26   common stock issuable pursuant to the 2004 Share Exchange Agreement and the 2005

27   Subscription Agreements.

28       76.    An actual, present controversy involving justiciable questions has arisen

Heller
Ehrman LLP



1  between the parties with respect to the "cancelled" shares, the additional shares issuable

2  under Section 10.2 of the 2004 Share Exchange Agreement and the shares issuable but not

3  issued under the 2005 Subscription Agreements.

### NINTH CAUSE OF ACTION

#### (Equitable Indemnity)

77.  Plaintiff FWAG realleges and incorporates by reference the allegations of
Paragraphs 1-76 above.

78.  To provide financing to Biofarm (now PSI), FWAG offered and sold in
Germany to non-U.S. citizens reverse convertible bonds, which were convertible into shares
of Biofarm (now PSI) common stock. The purchasers of the bonds subsequently elected to
convert the bonds.

79.  PSI's refusal to register the stock transfers requested by FWAG in April 2006
has deprived FWAG of the ability to complete the conversion of the convertible bonds in
favor of its bondholders.

80.  Any harm or losses suffered by FWAG as a result FWAG's inability to
complete the conversion of the convertible bonds is attributable to PSI's failure to register
the stock transfers as FWAG requested.

### DEMAND FOR JURY TRIAL

Plaintiff FWAG demands a trial by jury on all causes of action in this Complaint.

### PRAYER FOR RELIEF

Plaintiff FWAG respectfully prays for relief as follows:

1.  For compensatory damages in an amount in excess of $25,000, to be proven at
trial, and/or for an order requiring restitution of ill-gotten gains;

2.  For pre-judgment interest to the extent permitted by law;

3.  For an order finding and declaring that PSI's unilateral "cancellation" of
FWAG's shares is wrongful and compelling PSI to issue and convey to FWAG all the
shares issuable pursuant to the 2004 Share Exchange Agreement and/or the 2005
Subscription Agreements;

Heller
Ehrman LLP

COMPLAINT                                    13



4.    For an injunction compelling PSI issue and convey to FWAG all the shares issuable pursuant to the 2004 Share Exchange Agreement and/or the 2005 Subscription Agreements;

5.    For an injunction compelling PSI to issue stock certificates to non-U.S. noteholders as requested by FWAG;

6.    For punitive damages;

7.    For an award of all attorneys' fees, costs and expenses involved in the investigation, filing and prosecution of this action, as provided in, *inter alia*, Section 11.14 of the 2004 Share Exchange Agreement, and any applicable provision of law;

8.    For recoverable costs of suit incurred herein; and

9.    For such other and further relief as the Court may deem just and proper.

DATED: April 23, 2007                    Respectfully submitted,

HELLER EHRMAN LLP


By _____
Laurence A. Weiss
Attorneys for Plaintiff
friendlyway AG

SV 2265860 v4
4/23/07 9:58 AM (42027.0001)

Heller
Ehrman LLP

COMPLAINT                                    14

# EXHIBIT H

```
<DOCUMENT>
<TYPE>8-K/A
<SEQUENCE>1
<FILENAME>v013567_8k.txt
<TEXT>
```

EFFECTIVE AUGUST 23RD, 2004

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 8-K/A

CURRENT REPORT

Pursuant to Section 13 OR 15(d) of
The Securities Exchange Act of 1934

Date of Report (Date of earliest event reported): December 10, 2004

BIOFARM, INC.
(Exact name of registrant as specified in its charter)

| Nevada | 000-20317 | 88-0270266 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

| 1255 Battery Street, Suite 200 San Francisco, CA | 94111 |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: (415) 288-3333

--------------------------------------------------------------------------
(Former name or former address, if changed since last report.)

Check the appropriate box below if the Form 8-K filing is intended to
simultaneously satisfy the filing obligation of the registrant under any of the
following provisions (see General Instruction A.2. below):

[_]    Written communications pursuant to Rule 425 under the Securities Act
       (17 CFR 230.425)

[_]    Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17
       CFR 240.14a-12)

[_]    Pre-commencement communications pursuant to Rule 14d-2(b) under the
       Exchange Act (17 CFR 240.14d-2(b))

[_]    Pre-commencement communications pursuant to Rule 13e-4(c) under the
       Exchange Act (17 CFR 240.13e-4(c))

SEC873(6-04)    Potential persons who are to respond to the collection of
                information contained in this form are not required to respond
                unless the form displays a currently valid OMB control number.

```
<PAGE>
```

This amendment to Form 8-K, originally filed on December 16, 2004, includes the

information required under Item 9.01 of Form 8-K. This amendment includes no other changes to Form 8-K, as originally filed on December 16, 2004.

ITEM 9.01 FINANCIAL STATEMENTS AND EXHIBITS

TABLE OF CONTENTS

a)    Financial statements of businesses acquired (as of October 31, 2004, and for the ten months ended October 31, 2004 and the year ended December 31, 2003)

          Report of Independent Registered Public Accounting Firm        F-1
          Balance sheet                                                  F-2
          Statements of operations                                       F-3
          Statements of cash flows                                       F-4
          Statements of stockholders' equity (deficit)                   F-5
          Notes to financial statements                                  F-6

b)    Pro forma financial statements (as of October 31, 2004 and for the period then ended)

          Unaudited pro forma condensed combining financial information  F-13
          Unaudited pro forma condensed combining balance sheet          F-14
          Unaudited pro forma condensed combining statement of operations F-15

          Notes to unaudited pro forma condensed
            combining financial statements                               F-16
<PAGE>

REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

The Stockholders and Board of Directors
friendlyway, Inc.

We have audited the accompanying balance sheet of friendlyway, Inc. (the "Company") as of October 31, 2004, and the related consolidated statements of operations, stockholders' equity (deficit) and cash flows for the ten month period ended October 31, 2004 and the year ended December 31, 2003. These financial statements are the responsibility of management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of friendlyway, Inc. as of October 31, 2004, and the results of its operations and its cash flows for the ten month period ended October 31, 2004 and the year ended December 31, 2003, in conformity with accounting principles generally accepted in the United States of America.

As discussed in Note 1 to the financial statements, the Company entered into a

reverse merger transaction with Biofarm, Inc. on December 10, 2004. The reverse merger transaction will be accounted for as a recapitalization of the Company, which is the accounting acquirer, effective on December 10, 2004. Also as discussed in Note 1 to the financial statements, in connection with its reverse merger transaction with Biofarm, Inc., the Company has changed its fiscal year end to October 31.

The accompanying financial statements have been prepared assuming that the Company will continue as a going concern. As discussed in Note 3 to the financial statements, the Company incurred a net loss of $437,178 for the ten-months ended October 31, 2004, and has total assets of $742,005 and an accumulated deficit of $670,615 at October 31, 2004. The realization of a major portion of the Company's assets is dependent upon its ability to meet future financing requirements, and the success of future operations. These conditions raise substantial doubt about the Company's ability to continue as a going concern. Management's plans regarding these matters also are described in Note 3. The financial statements do not include any adjustments that might result from the outcome of this uncertainty.

/s/ ASHER & COMPANY, LTD.

Philadelphia, PA
February 23, 2005

F-1

<PAGE>

FRIENDLYWAY, INC.
BALANCE SHEET
OCTOBER 31, 2004

ASSETS

| | |
|---|---:|
| **CURRENT ASSETS** | |
| Cash and cash equivalents | $ 139,403 |
| Accounts receivable, net of allowance for doubtful accounts of $73,250 | 412,083 |
| Inventory | 59,620 |
| Other current assets | 44,344 |
| Total current assets | 655,450 |
| FURNITURE AND EQUIPMENT, net | 86,555 |
| TOTAL ASSETS | $ 742,005 |

LIABILITIES AND STOCKHOLDERS' EQUITY (DEFICIT)

| | |
|---|---:|
| **CURRENT LIABILITIES** | |
| Note payable, bank | $ 49,851 |
| Note payable, other | 52,500 |
| Convertible notes payable, Stockholders | 198,000 |
| Convertible notes payable, other | 198,000 |
| Accounts payable | 358,410 |
| Accrued interest | 15,631 |
| Accrued license and maintenance fees, Stockholder | 70,435 |

| | |
|---|---:|
| Other current liabilities | 24,829 |
| Total current liabilities | 967,656 |
| LONG-TERM DEBT | |
| Note payable, other | 7,500 |
| Convertible note payable, Stockholder | 15,000 |
| Note payable, Stockholder | 367,500 |
| | 390,000 |
| STOCKHOLDERS' EQUITY (DEFICIT) | |
| Common stock, $.001 par value; 20,000,000 shares authorized, 10,000,000 issued and outstanding | 10,000 |
| Additional paid-in capital | 190,143 |
| Accumulated deficit | (670,615) |
| Unearned compensation | (145,179) |
| Total stockholders' equity (deficit) | (615,651) |
| TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY (DEFICIT) | $ 742,005 |

The accompanying notes are an integral part of these financial statements.

F-2

<PAGE>

FRIENDLYWAY, INC.
STATEMENTS OF OPERATIONS
TEN MONTHS ENDED OCTOBER 31, 2004 AND
YEAR ENDED DECEMBER 31, 2003

| | 2004 | 2003 |
|---|---:|---:|
| REVENUES | | |
| Sales | $ 1,611,385 | $ 1,224,286 |
| Rentals and services | 333,146 | 412,726 |
| Total revenues | 1,944,531 | 1,637,012 |
| COST OF REVENUES | | |
| Sales | 1,035,176 | 1,010,124 |
| Rentals and services | 157,298 | 183,534 |
| Total cost of revenues | 1,192,474 | 1,193,658 |
| Gross profit | 752,057 | 443,354 |
| Selling, general and administrative expenses | 1,001,870 | 906,081 |
| Stock based compensation | 185,321 | -- |

| | | |
|---|---:|---:|
| Loss from operations | (435,134) | (462,727) |
| | | |
| Other income (expense) | | |
| Interest expense | (19,061) | (4,786) |
| Other income | 17,017 | 34,060 |
| | ------------ | ------------ |
| | (2,044) | 29,274 |
| | ------------ | ------------ |
| | | |
| NET LOSS | $  (437,178) | $  (433,453) |
| | ============ | ============ |
| | | |
| Basic and diluted loss per common share | $    (0.04) | $    (0.04) |
| | ============ | ============ |
| Weighted average number of shares | 10,000,000 | 10,000,000 |
| | ============ | ============ |

The accompanying notes are an integral part of these
financial statements.

F-3

<PAGE>

FRIENDLYWAY, INC.
STATEMENTS OF CASH FLOWS
TEN MONTHS ENDED OCTOBER 31, 2004 AND
YEAR ENDED DECEMBER 31, 2003

| | 2004 | 2003 |
|---|---:|---:|
| | ---- | ---- |
| OPERATING ACTIVITIES | | |
| Net loss | $(437,178) | $(433,453) |
| Adjustments to reconcile net loss to net | | |
| cash utilized by operating activities: | | |
| Bad debt | 48,795 | 55,422 |
| Depreciation | 13,929 | 636 |
| Stock based compensation | 185,321 | -- |
| Changes in: | | |
| Accounts receivable | (325,276) | 10,826 |
| Inventory | (46,606) | 187,980 |
| Other current assets | (27,755) | 107,411 |
| Accounts payable | 124,777 | (39,122) |
| Accrued interest | 15,631 | -- |
| Accrued license and maintenance | | |
| fees, Stockholder | 48,613 | 21,822 |
| Other current liabilities | (6,755) | 20,686 |
| | --------- | --------- |
| | | |
| Net cash utilized by operating activities | (406,504) | (67,792) |
| | | |
| INVESTING ACTIVITIES | | |
| Purchase of property and equipment | (94,764) | (6,356) |
| | --------- | --------- |

| | | |
|---|---|---|
| Net cash utilized by investing activities | (94,764) | (6,356) |
| FINANCING ACTIVITIES | | |
| Short-term borrowings | 409,947 | 35,904 |
| Long-term borrowings | 15,000 | -- |
| Proceeds from sale of treasury stock | 180,000 | -- |
| Net cash provided by financing activities | 604,947 | 35,904 |
| INCREASE (DECREASE) IN CASH | 103,679 | (38,244) |
| Cash, beginning of period | 35,724 | 73,968 |
| Cash, end of period | $ 139,403 | $ 35,724 |

SUPPLEMENTAL DISCLOSURE OF CASH FLOW INFORMATION:

| | | |
|---|---|---|
| Cash paid for interest during the period | $ 3,430 | $ 4,786 |

SUPPLEMENTAL DISCLOSURE OF NONCASH INVESTING AND FINANCING ACTIVITIES:

During the ten month period ended October 31, 2004, the Company acquired 1,633,334 shares of treasury stock and issued a note payable in the amount of $367,500 as consideration.

During the ten month period ended October 31, 2004, the Company issued 833,334 shares of treasury stock to an employee and a Stockholder as compensation valued at $187,500, of which $40,179 is unearned at October 31, 2004.

During the ten month period ended October 31, 2004, the Company granted non-qualified stock options to purchase 820,000 shares of its common stock to employees, with an aggregate intrinsic value of $123,000, of which $105,000 is unearned at October 31, 2004.

During the ten month period ended October 31, 2004, the Company granted non-qualified stock options to purchase 100,000 shares of its common stock to an investor, with a fair value of $20,000.

The accompanying notes are an integral part of these financial statements.

F-4

<PAGE>

FRIENDLYWAY, INC.
STATEMENTS OF STOCKHOLDERS' EQUITY (DEFICIT)
TEN MONTH PERIOD ENDED OCTOBER 31, 2004 AND
YEAR ENDED DECEMBER 31, 2003

<TABLE>
<CAPTION>

| | SHARES | COMMON STOCK | ADDITIONAL PAID IN CAPITAL | RET EAR (ACCU DEF |
|---|---|---|---|---|
| <S> | <C> | <C> | <C> | <C> |
| Balance at January 1, 2003 | 10,000,000 | $   10,000 | $   47,143 | $   2 |
| Net loss | | | | (4 |
| Balance at December 31, 2003 | 10,000,000 | 10,000 | 47,143 | (2 |
| Purchase of treasury stock - 1,633,334 shares | | | | |
| Reissuance of treasury stock for compensation - 833,334 shares | | | | |
| Sale of treasury stock - 800,000 shares | | | | |
| Stock options granted for services | | | 143,000 | |
| Net loss | | | | (4 |
| Balance at October 31, 2004 | 10,000,000 | $   10,000 | $   190,143 | $  (6 |

</TABLE>

The accompanying notes are an integral part of these
financial statements.

F-5

<PAGE>

FRIENDLYWAY, INC.
NOTES TO FINANCIAL STATEMENTS

1.    ORGANIZATION AND BASIS OF PRESENTATION

friendlyway, Inc. ("FWI" or the "Company") is a leading self-service
solutions provider of customer-facing public access self-service systems.
The Company's products focus on the improvement of internet-based customer
communication at the point of sale in retail stores, point of
service/information in public locations or the Internet.

The Company was incorporated on June 8, 2000 in the State of Delaware by
friendlyway, AG ("FWAG"). Through July 31, 2002, FWI was a wholly owned
subsidiary of FWAG. Effective August 1, 2002, the Company's President
acquired a 70% interest in FWI from FWAG pursuant to a Management Buyout
Agreement ("MBO") with FWAG. Following the MBO, FWAG retained a 30%
ownership interest in FWI.

In connection with its reverse merger with Biofarm, Inc. on December 10,
2004 (See Note 11), the Company has changed its fiscal year end to October
31. The accompanying 2004 financial statements are as of October 31, 2004
and for the ten month period then ended. The accompanying 2003 financial

statements are for the year ended December 31, 2003.

2.    SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

USE OF ESTIMATES

The preparation of financial statements in conformity with generally
accepted accounting principles requires management to make estimates and
assumptions that affect the reported amounts of assets and liabilities and
disclosures of contingent assets and liabilities as of the date of the
financial statements and reporting period. Accordingly, actual results
could differ from those estimates.

CASH AND CASH EQUIVALENTS

Cash and cash equivalents consist of cash on hand and highly liquid
investments purchased with an original maturity of three months or less.

INVENTORY

Inventory is stated at the lower of cost or market. Cost is determined by
the first-in, first-out method. Inventory consists entirely of finished
goods at October 31, 2004.

FURNITURE AND EQUIPMENT

Furniture and equipment are recorded at cost. Depreciation is computed
using accelerated and straight-line methods over the assets estimated
useful lives of 3 to 5 years.

Expenditures for repairs and maintenance are charged to expense as
incurred. When depreciable assets are sold, retired or impaired, the cost
and related accumulated depreciation are removed with the resulting gain
or loss credited or charged to income.

REVENUE RECOGNITION

Revenue consists primarily of sales and rentals of self-service systems
and professional services. Sales revenue is recognized when both title and
risk of loss transfer to the customer, provided that no significant
obligations remain. Rental revenue is recognized as earned in accordance
with the terms of rental agreements, which are generally short-term in
duration. The Company provides for an estimate of product returns and
doubtful accounts, based on historical experience.

F-6

<PAGE>

FRIENDLYWAY, INC.
NOTES TO FINANCIAL STATEMENTS

ADVERTISING AND PROMOTION EXPENSE

Advertising and promotion costs are expensed as incurred. Advertising and
promotion expense incurred for the ten-months ended October 31, 2004 was
$25,638 and $107,169 for the year ended December 31, 2003.

FAIR VALUE OF FINANCIAL INSTRUMENTS

Statement of Financial Accounting Standards ("SFAS") No. 107, Disclosures

About Fair Value of Financial Instruments, requires disclosure of the fair value of certain financial instruments. The Company's financial instruments include cash and equivalents, trade receivables, accounts payable, and debt. Due to their current maturities, the carrying amounts of financial instruments are considered a reasonable estimate of the fair value of these instruments. The fair value of the guarantee of debt by the majority Stockholder's close relatives (See Note 5) is considered de minimus due to the amount of the credit facility guaranteed.

INCOME TAXES

The Company accounts for income taxes in accordance with SFAS No. 109, Accounting for Income Taxes.

STOCK BASED COMPENSATION

The Company has adopted the disclosure-only provisions of SFAS No. 123, Accounting for Stock-Based Compensation, and uses the intrinsic value method of accounting for stock-based awards granted to employees, as prescribed in Accounting Principles Board ("APB") Opinion No. 25, Accounting for Stock Issued to Employees, and related interpretations. For stock-based awards granted to outside parties, the Company uses the fair value method of accounting as prescribed in SFAS No. 123.

Pro-forma information regarding net income is required to be presented as if the Company had accounted for all stock options granted under the provisions of SFAS No. 123. The fair value of stock options granted has been estimated, as of the respective dates of grant, using the Black-Scholes option-pricing model. The following assumptions were used for such estimates: no dividend yield; no expected volatility; risk-free interest rate of 3.5% and 1.9% for the period ended October 31, 2004 and the year ended December 31, 2003, respectively; and a weighted average expected life of the options of 3 to 5 years. Had the accounting provisions of SFAS No. 123 been adopted, net loss and share data for the period ended October 31, 2004 and the year ended December 31, 2003 would have been as follows:

|  | January 1, 2004 – October 31, 2004 | 2003 |
|---|---|---|
| Net loss: |  |  |
| As reported | $(437,178) | $(433,453) |
| Less additional pro forma stock based compensation | (30,000) | (12,000) |
| Pro forma | $(467,178) | $(445,453) |
| Loss per share: |  |  |
| As reported | $    (.04) | $    (.04) |
| Pro forma | $    (.05) | $    (.04) |

All transactions with parties other than employees or services are the consideration received for the issuance of stock are accounted for based on the fair value of the consideration received or the fair value of the stock, whichever is more reliably measurable.

F-7

<PAGE>

FRIENDLYWAY, INC.
NOTES TO FINANCIAL STATEMENTS

EARNINGS PER SHARE

The Company accounts for loss per share under the provisions of SFAS No. 128, Loss Per Share, which requires a dual presentation of basic and diluted loss per share. Basic loss per share excludes dilution and is computed by dividing income available to common stockholders by the weighted average number of common shares outstanding for the year. Diluted loss per share is computed assuming the conversion of common stock equivalents, when dilutive. For the period ended October 31, 2004 and the year ended December 31, 2003, the Company's common stock equivalents, which consist of convertible debt and stock options, were anti-dilutive, and therefore, basic and diluted loss per share were the same.

RECLASIFICATIONS

Certain amounts have been reclassified in the prior year's financial statements to conform with the current period's presentation.

3. GOING CONCERN MATTERS

The accompanying financial statements have been prepared assuming the Company will continue as a going concern. As reflected in the accompanying financial statements, the Company incurred a net loss of $437,178 for the ten-months ended October 31, 2004, and has total assets of $742,005 and an accumulated deficit of $670,615 at October 31, 2004. The realization of a major portion of the Company's assets is dependent upon its ability to meet future financing requirements, and the success of future operations. As described in Note 11, in December 2004, the Company entered in a reverse merger transaction with Biofarm, Inc., a public shell-company. Additionally, the Company is seeking additional sources of financing, primarily for working capital purposes. The Company's ability to operate in the immediate future is highly dependent upon its ability to obtain financing.

These conditions raise substantial doubt about the Company's ability to continue as a going concern. The financial statements do not include any adjustments that might result from this uncertainty.

4. FURNITURE AND EQUIPMENT

Furniture and equipment consist of the following at October 31, 2004:

| | |
|---|---:|
| Rental equipment | $ 89,484 |
| Office furniture and equipment | 11,636 |
| Total furniture and equipment, at cost | 101,120 |
| Accumulated depreciation | (14,565) |
| Total furniture and equipment, net | $ 86,555 |

Depreciation expense for the ten month period ended October 31, 2004 and the year ended December 31, 2003 was $13,929 and $636, respectively.

5. NOTES PAYABLE AND LONG-TERM DEBT

NOTE PAYABLE, BANK

The Company has a line of credit with a bank which provides for maximum borrowings of $50,000. At October 31, 2004, there was $49,851 outstanding against this line of credit. Borrowings against the line of credit bear interest at the bank's prime rate plus 2% (6.75% at October 31, 2004). This line of credit expires in January 2006, and may be extended on an annual basis. Interest is payable monthly. Upon termination of the line of credit, any borrowings outstanding at that time are payable over 48 months. This line of credit is guaranteed by close relatives of the Company's majority Stockholder.

F-8

<PAGE>

FRIENDLYWAY, INC.
NOTES TO FINANCIAL STATEMENTS

NOTE PAYABLE, OTHER

In December 2003, the Company entered into an unsecured promissory note for $60,000 for services rendered by its law firm. The note constitutes a settlement of $73,810 of outstanding payables with $13,810 reflected as a settlement recorded on the Statement of Operations as other income for the year ended December 31, 2003. The note bears interest of 10% per annum and matures on December 31, 2005. Payments required on the note are for a $30,000 payment on or before December 31, 2004 with quarterly payments of $7,500 thereafter.

CONVERTIBLE NOTES, STOCKHOLDERS

During 2004, the Company issued convertible notes payable to the Company's CFO (also a Stockholder of the Company) in the aggregate amount of $33,000, and to another Stockholder of the Company in the amount of $180,000. Such convertible notes are unsecured, bear interest at 5% per annum, and are payable on August 15, 2005 ($18,000), October 3, 2005 ($180,000) and November 15, 2005 ($15,000). These convertible notes provide for automatic conversion features contingent upon the Company satisfying certain conditions by November 15, 2004. Such conditions were not satisfied by November 15, 2004. These convertible notes also provide an optional conversion feature which permits the note holders to convert the notes into 660,408 shares of the Company's common stock upon 30 days written notice to the Company. At October 31, 2004, no conversion rights were exercised by the note holders.

CONVERTIBLE NOTES, OTHER

During 2004, the Company issued convertible notes to unrelated third parties in the aggregate amount of $198,000. Such convertible notes are unsecured, bear interest, of 5% to 10% per annum, and are payable on various dates through August 15, 2005. These convertible notes provide for automatic conversion features contingent upon the Company satisfying certain conditions by November 15, 2004. Such conditions were not satisfied by November 15, 2004. These convertible notes also provide an optional conversion feature which permits the note holders to convert the notes into an aggregate of 611,112 shares of the Company's common stock upon 30 days written notice to the Company. At October 31, 2004, no conversion rights were exercised by the note holders.

NOTE PAYABLE, STOCKHOLDER

During 2004, the Company reacquired 1,633,334 shares of its common stock held by the Company's CEO and President (also the Company's majority Stockholder at October 31, 2004) . The purchase price for the reacquisition of shares was $0.225 per share, or $367,500, which the Company satisfied through the issuance of a promissory note. This note is unsecured, bears interest of 6% per annum, and matures on December 31, 2006. Upon the occurrence of certain events prior to December 31, 2006, as defined in the promissory note, the Company shall commence making quarterly payments of $40,000, plus accrued interest, with any remaining balances due and payable on December 31, 2006.

Aggregate maturities of debt at October 31, 2004 are as follows:

| Year | Amount |
|------|--------|
| 2005 | $498,351 |
| 2006 | 22,500 |
| 2007 | 367,500 |

F-9

<PAGE>

FRIENDLYWAY, INC.
NOTES TO FINANCIAL STATEMENTS

6.    INCOME TAXES

At October 31, 2004, the Company has gross deferred tax assets of approximately $1.9 million related to net operating loss carry-forwards and a difference in the basis of property and equipment between financial reporting and income tax reporting. At October 31, 2004, the Company has net operating loss carry-forwards for income tax purposes, which expire through 2019, of approximately $4.3 million that may be offset against future taxable income, if any, subject to certain limitations. Management has provided a deferred tax valuation allowance against all deferred tax assets.

7.    RELATED PARTY TRANSACTIONS

In August 2002, the Company entered into a License Agreement ("License Agreement) with its former parent and current minority shareholder, FWAG. Under the terms of the License Agreement, FWI is required to pay a license and maintenance fee as a percentage of gross revenue to FWAG. For the ten-month period ended October 31, 2004 and the year ended December 31, 2003, FWI has incurred license and maintenance fee expense in the amounts of $48,613 and $21,822, respectively, and at October 31, 2004, has recorded a liability of $70,435 related to license and maintenance fees payable.

During the ten-month period ended October 31, 2004 and the year ended December 31, 2003, the Company had purchases of $100,688 and $27,543, respectively, from FWAG.

8.    COMMITMENTS AND CONTINGENCIES

The Company currently leases it office facilities on a month-to-month basis. Rent expense for the ten-months ended October 31, 2004 and for the year ended December 31, 2003 was $51,380 and $77,909, respectively.

9.    STOCK OPTION PLAN

The Company's 2003 Stock Option Plan ("the Plan") has reserved 2,000,000 shares of common stock for issuance to employees, directors and consultants of the Company.

Under the Plan, eligible individuals may be granted incentive options or non-qualified options. The exercise price of incentive stock options granted under the Plan must be at least equal to the fair market value of the common stock on the date of grant. The exercise price of non-qualified options granted under the Plan must be not less than 85% of the fair market value of the common stock on the grant date, as determined by the Board of Directors. In addition, incentive and non-qualified options may be granted to persons owning more than 10% of the voting power of all classes of stock, at a price no lower than 110% of the fair market value at the date of grant, as determined by the Board of Directors. The Board also has the authority to set the term of the options (no longer than ten years from the date of grant). Options granted generally vest at the rate of 25% one year from the date of grant, and 1/36 each month thereafter.

F-10

<PAGE>

FRIENDLYWAY, INC.
NOTES TO FINANCIAL STATEMENTS

A summary of the activity of the Plan or the period from January 1, 2003 through October 31, 2004 is as follows:

|  | Number of Shares | Weighted Average Exercise Price |
|---|---|---|
| Outstanding at January 1, 2003 | -- | -- |
| Granted during 2003 | 500,000 | $    0.05 |
| Outstanding at December 31, 2003 | 500,000 | $    0.05 |
| Granted during the period ended October 31, 2004 | 920,000 | $    0.17 |
| Outstanding at October 31, 2004 | 1,420,000 | $    0.13 |

At October 31, 2004, the weighted average remaining contractual life of outstanding stock options was 9.2 years. Of the total outstanding stock options at October 31, 2004, exercisable stock options totaled 156,250, with a weighted average exercise price of $0.05 per share.

The weighted average fair value of stock options granted during the period ended October 31, 2004 was $184,000.

10.    SEGMENTS

The Company reports segments in accordance with SFAS No. 131, Disclosure about Segments of an Enterprise and Related Information. SFAS 131 requires disclosure of certain information about operating segments, geographic areas in which the Company operates, major customers, and products and services. In accordance with SFAS 131, the Company has determined it has two operating segments: the Systems Sales segment and Systems Rental

segment. These segments are not managed separately and there are no significant differences in the systems deployed via sales or rental.

The markets served by Systems Sales segment is North and South America (sales are predominantly in the United States). The Systems Rental segment serves primarily the United States. Sales and rental to any individual customer did not exceed 10% of consolidated sales.

F-11

<PAGE>

FRIENDLYWAY, INC.
NOTES TO FINANCIAL STATEMENTS

The Company does not maintain separate stand-alone financial statements prepared in accordance with generally accepted accounting principles for each of its operating segments. In accordance with SFAS 131, the following table presents information related to each operating segment included in, and in a manner consistent with, internal management reports.

|  | Ten-months ended October 31, 2004 | 2003 |
|---|---|---|
| Revenue |  |  |
| Sales | $1,611,385 | $1,224,286 |
| Rentals and services | 333,146 | 412,726 |
| Total revenues | 1,944,531 | 1,637,012 |
| Cost of revenues |  |  |
| Sales | 1,035,176 | 1,010,124 |
| Rentals and services | 157,298 | 183,534 |
| Total cost of revenues | 1,192,474 | 1,193,658 |
| Gross profit | $ 752,057 | $ 443,354 |

11.  SUBSEQUENT EVENTS

On December 10, 2004, the Company entered in a reverse merger transaction with Biofarm, Inc. ("BIOF"). At October 31, 2004, BIOF was a non-operating public shell corporation. As a result of this transaction, the stockholders of FWI became the controlling stockholders of BIOF, and FWI became a public company Registrant. This reverse merger transaction will be accounted for as a recapitalization of FWI, as FWI is the accounting acquirer, effective December 10, 2004. During the ten-months ended October 31, 2004, the Company incurred approximately $173,000 of costs related to the reverse merger transaction.

On December 21, 2004, the Company introduced its new business unit, "friendlyway Media." The new business unit is expected to provide multimedia and digital signage services customized to client specific needs.

F-12

<PAGE>

UNAUDITED PRO FORMA CONDENSED COMBINING FINANCIAL INFORMATION

On December 10, 2004, Biofarm, Inc. ("BIOF") and friendlyway, Inc. ("FWI") completed into a Stock Exchange Agreement ("Transaction") whereby the stockholders of FWI exchanged each share they owned of FWI common stock for 1.8 shares of BIOF common stock. The Transaction has been accounted for as a recapitalization of FWI, effective on December 10, 2004, as FWI is the accounting acquirer. In connection with the Transaction, FWI has changed its fiscal year end to October 31 from December 31. The accompanying historical audited financial statements of FWI are as of October 31, 2004 and for the ten month period then ended and the year ended December 31, 2003.

The following unaudited pro forma condensed combining financial statements have been derived by the application of pro forma adjustments to the historical financial statements of FWI, included elsewhere in this Form 8-K, combined with the historical consolidated financial statements of Biofarm, Inc. ("BIOF"). The Unaudited Pro Forma Condensed Combining Balance Sheet as of October 31, 2004 gives effect to the merger as if it had occurred on that date. The Unaudited Pro Forma Condensed Combined Statement of Operations for the Period Ended October 31, 2004 gives effect to the merger as if it had occurred on November 1, 2003.

You should read the following Unaudited Pro Forma Condensed Combining Financial Statements together with FWI's historical audited financial statements and the related notes included elsewhere in this Form 8-K.

In connection with the Transaction, BIOF issued 18 million shares of its common stock for the shares of the FWI common stock then outstanding. Additionally, in connection with the Transaction, stock options outstanding at December 10, 2004, to acquire 1,420,000 shares of FWI common stock, converted in rights to acquire 2,556,000 shares of BIOF common stock.

The following Unaudited Pro Forma Condensed Combining Financial Statements and notes thereto contain forward-looking statements that involve risks and uncertainties. Upon completion of the Transaction, BIOF's financial position and results of operations will differ, perhaps significantly, from the pro forma amounts reflected in this proxy statement/prospectus because of a variety of factors, including additional information, changes in value not currently identified and changes in operating results between the dates of the pro forma financial information and the date on which the Transaction is completed. BIOF has presented these Unaudited Pro Forma Condensed Combining Financial Statements for illustrative purposes only and are not necessarily indicative of the operating results or financial position that BIOF would have achieved had the Transaction been completed as of the date indicated, or the results that BIOF may obtain in the future.

F-13

<PAGE>

BIOFARM, INC.
UNAUDITED PRO FORMA CONDENSED COMBINING BALANCE SHEET
OCTOBER 31, 2004

<TABLE>
<CAPTION>

HISTORICAL
------------------------

<TABLE>

|                                                      | BIOFARM    | FWI      |
|------------------------------------------------------|------------|----------|
| <S>                                                  | <C>        | <C>      |
| ASSETS                                               |            |          |
|                                                      |            |          |
| CURRENT ASSETS                                       |            |          |
| Cash and cash equivalents                            | $    243   | $  139,  |
| Accounts receivable, net                             |   --       |    412,  |
| Inventory                                            |   --       |     59,  |
| Other current assets                                 |   --       |     44,  |
| Total current assets                                 |    243     |    655,  |
|                                                      |            |          |
| FURNITURE AND EQUIPMENT, net                         |   --       |     86,  |
|                                                      |            |          |
| Total Assets                                         | $    243   | $  742,  |
|                                                      |            |          |
|                                                      |            |          |
| LIABILITIES AND STOCKHOLDERS' DEFICIT                |            |          |
|                                                      |            |          |
| CURRENT LIABILITIES                                  |            |          |
| Note payable, bank                                   | $    --    | $   49,  |
| Note payable, other                                  |   --       |     52,  |
| Convertible notes payable, Stockholders              |   --       |    198,  |
| Convertible notes payable, other                     |   --       |    198,  |
| Accounts payable                                     | 101,818    |    358,  |
| Accrued interest                                     |   --       |     15,  |
| Accrued license and maintenance fees, Stockholder    |   --       |     70,  |
| Other current liabilities                            |   --       |     24,  |
| Total current liabilities                            | 101,818    |    967,  |
|                                                      |            |          |
| LONG-TERM DEBT                                       |            |          |
| Note payable, other                                  |   --       |      7,  |
| Convertible note payable, Stockholder                |   --       |     15,  |
| Note payable, Stockholder                            |   --       |    367,  |
|                                                      |   --       |    390,  |
|                                                      |            |          |
| STOCKHOLDERS' DEFICIT                                 | (101,575)  |   (615,  |
|                                                      |            |          |
| Total Liabilities and Stockholders' Deficit          | $    243   | $  742,  |

</TABLE>


F-14
<PAGE>


BIOFARM, INC
UNAUDITED PRO FORMA CONDENSED COMBINING STATEMENT OF OPERATIONS
PERIOD ENDED OCTOBER 31, 2004

<TABLE>
<CAPTION>
                                                              HISTORICAL

| | BIOFARM | FWI |
|---|---|---|
| <S> | <C> | <C> |
| REVENUES | | |
| Sales | $        -- | $  1,611, |
| Rentals and services | -- | 333, |
| Total revenues | -- | 1,944, |
| COST OF REVENUES | | |
| Sales | -- | 1,035, |
| Rentals and services | -- | 157, |
| Total cost of revenues | -- | 1,192, |
| Gross profit | -- | 752, |
| Selling, general and administrative expenses | 82,817 | 1,001, |
| Costs related to abandoned investments | 17,500 | |
| Stock based compensation | -- | 185, |
| Loss from operations | (100,317) | (435, |
| Other income (expense) | | |
| Interest expense | -- | (19, |
| Other income | -- | 17, |
| Loss before extraordinary item | (100,317) | (437, |
| Extraordinary loss: Transfer of assets and liabilities | 193,892 | |
| NET LOSS | $   (294,209) | $   (437, |
| Basic and diluted loss per common share (2) | | |
| Loss before extraordinary item | $      (0.02) | $       (0 |
| Extraordinary item | (0.03) | |
| | $      (0.05) | $       (0 |
| Weighted average number of shares (3) | 5,554,609 | 18,000, |

</TABLE>

F-15

<PAGE>

BIOFARM, INC.

NOTES TO UNAUDITED PRO FORMA CONDENSED COMBINING FINANCIAL STATEMENTS

(1) Reflects the estimated costs of the transaction.

(2) Historical basic and diluted loss per common share data for FWI has been adjusted to reflect the pro forma capitalization of FWI - see Note 3.

(3) Historical weighted average shares of FWI of 10 million for the period ended October 31, 2004 has been adjusted to reflect the pro forma recapitalization of FWI. The pro forma recapitalization of FWI adjusts each existing share of FWI on a 1.8 to 1.0 ratio to reflect the adjustment necessary to accomplish the exchange ratio in the transaction (18 million shares of BIOF common stock exchanged for 10 million shares of FWI common stock).

F-16

<PAGE>

SIGNATURES

    Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

                                    BioFarm,Inc
                                    --------------------
                                    (Registrant)

Date:  March 3, 2005

                              By: /s/ Alexander von Welczeck
                                  ------------------------------
                                  Alexander von Welczeck
                                  Chief Executive Officer

</TEXT>
</DOCUMENT>

# EXHIBIT I

```
<DOCUMENT>
<TYPE>10QSB
<SEQUENCE>1
<FILENAME>v014285_10qsb.txt
<TEXT>
```

U.S. SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

FORM 10-QSB

(Mark One)

|X|    Quarterly report under Section 13 or 15(d) of the Securities
       Exchange Act of 1934 for the quarterly period ended January
       31, 2005

|_|    TRANSITION REPORT UNDER SECTION 13 OR 15(d) OF THE
       EXCHANGE ACT
       For the transition period from _____ to _____

Commission file number 0-20317

BIOFARM, INC.

(Exact name of small business issuer as specified in its charter)

NEVADA                                          88-0270266
--------                                      --------------
(State or other jurisdiction                   (IRS Employer
of incorporation or organization)            Identification No.)

1255 BATTERY STREET, SAN FRANCISCO, CALIFORNIA 94111
----------------------------------------------------------------------
(Address of principal executive offices)

(415) 288-3333
----------------------------------------------------------------------
(Issuer's telephone number)

----------------------------------------------------------------------
(Former Name, Former Address and Former Fiscal Year,
if Changed Since Last Report)

Check whether the issuer: (1) has filed all reports required to be filed by
Section 13 0r 15(d) of the Securities Exchange Act of 1934 during the preceding
12 months (or such shorter period that the Registrant was required to file such
reports), and (2) has been subject to such filing requirements for the past 90
days.

Yes |X|        No |_|

The number of shares outstanding of each of the Issuer's Common Stock, $.001 par
value, as of March 15, 2005 was 23,681,095.
```
<PAGE>
```

BIOFARM, INC. D/B/A FRIENDLYWAY, INC.
JANUARY 31, 2005
QUARTERLY REPORT ON FORM 10-QSB

TABLE OF CONTENTS

Page

Special Note Regarding Forward Looking Statements........................... 3

PART I - FINANCIAL INFORMATION

Item 1.    Financial Statements (unaudited)
           Condensed Consolidated Balance Sheet as of
               January 31, 2005................................... 4
           Condensed Consolidated Statements of Operations -
               Three months ended January 31, 2005 and 2004.......... 5
           Condensed Consolidated Statements of Changes in
               Stockholders' Equity................................ 6
           Condensed Consolidated Statements of Cash Flows -
               Three months ended January 31, 2005 and 2004.......... 7
           Notes to Condensed Consolidated Financial Statements .......... 8
Item 2.    Management's Discussion and Analysis of Financial Condition
               and Results of Operations............................ 11
Item 3.    Controls and Procedures.................................... 17

PART II - OTHER INFORMATION

Item 1.    Legal Proceedings.......................................... 17
Item 2.    Unregistered Sales of Equity Securities and Use of Proceeds.... 17
Item 5.    Other Items................................................ 17
Item 6.    Exhibits and Reports on Form 8-K............................. 17

2

<PAGE>

SPECIAL NOTE REGARDING FORWARD-LOOKING STATEMENTS

    To the extent that the information presented in this Quarterly Report on
Form 10-QSB for the quarter ended January 31, 2005, discusses financial
projections, information or expectations about our products or markets, or
otherwise makes statements about future events, such statements are
forward-looking. We are making these forward-looking statements in reliance on
the safe harbor provisions of the Private Securities Litigation Reform Act of
1995. Although we believe that the expectations reflected in these
forward-looking statements are based on reasonable assumptions, there are a
number of risks and uncertainties that could cause actual results to differ
materially from such forward-looking statements. These risks and uncertainties
are described, among other places in this Quarterly Report, in "Management's
Discussion and Analysis of Financial Condition and Results of Operations".

    In addition, we disclaim any obligations to update any forward-looking
statements to reflect events or circumstances after the date of this Quarterly
Report. When considering such forward-looking statements, you should keep in
mind the risks referenced above and the other cautionary statements in this
Quarterly Report.

3

<PAGE>

BIOFARM, INC. D/B/A FRIENDLYWAY, INC.
CONDENSED CONSOLIDATED BALANCE SHEET
AS OF JANUARY 31, 2005
(UNAUDITED)

<TABLE>
<S>                                                                         <C>
                                  ASSETS

CURRENT ASSETS

        Cash and cash equivalents                                     $      68,433
        Accounts receivable, net                                            348,387
        Inventory                                                           104,917
        Other current assets                                                  3,430
                                                                      ------------
               Total current assets                                         525,167

FURNITURE AND EQUIPMENT, net                                                 83,156
                                                                      ------------

TOTAL ASSETS                                                          $      608,323
                                                                      ============

                LIABILITIES AND STOCKHOLDERS' EQUITY (DEFICIT)

CURRENT LIABILITIES
        Note payable, bank                                            $       49,851
        Note payable, other                                                  60,000
        Convertible notes payable, Stockholders                             213,000
        Convertible notes payable, other                                    198,000
        Accounts payable                                                    451,714
        Accrued interest                                                     27,781
        Accrued license and maintenance fees, Stockholder                    83,209
        Other current liabilities                                            94,022
                                                                      ------------
               Total current liabilities                                  1,177,577

LONG-TERM DEBT
        Note payable, Stockholder                                           367,500
                                                                      ------------
                                                                            367,500
STOCKHOLDERS' EQUITY (DEFICIT)
        Common stock, $.001 par value; 25,000,000 shares
          authorized, 23,681,480 issued and 23,681,095 outstanding           23,682
        Additional paid-in capital                                           75,873
        Unearned compensation                                              (113,384
        Accumulated deficit                                                (921,938
                                                                      ------------
                                                                          (935,767
        Less treasury stock, at cost, 385 shares                            (987
                                                                      ------------
               Total stockholders' equity (deficit)                       (936,754
                                                                      ------------

TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY (DEFICIT)                 $      608,323
                                                                      ============

</TABLE>

The accompanying notes are an integral part of these condensed consolidated financial statements.

4

<PAGE>

BIOFARM, INC. D/B/A FRIENDLYWAY, INC.
CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS
THREE MONTHS ENDED JANUARY 31, 2005 AND 2004
(UNAUDITED)

|  | 2005 | 2004 |
|---|---|---|
| REVENUES |  |  |
| Sales | $ 361,639 | $ 286,085 |
| Rentals and services | 149,328 | 87,210 |
| Total revenues | 510,967 | 373,295 |
| COST OF REVENUES |  |  |
| Sales | 244,241 | 344,165 |
| Rentals and services | 90,118 | 49,185 |
| Total cost of revenues | 334,359 | 393,350 |
| Gross profit (loss) | 176,608 | (20,055) |
| Selling, general and administrative expenses | 396,136 | 200,474 |
| Stock based compensation | 31,795 | -- |
| Loss from operations | (251,323) | (220,529) |
| Other income | -- | 23,070 |
| NET LOSS | $ (251,323) | $ (197,459) |
| Basic and diluted loss per common share | $ (0.01) | $ (0.01) |
| Weighted average number of common shares | 21,156,164 | 18,000,000 |

The accompanying notes are an integral part of these condensed consolidated financial statements.

5

<PAGE>

BIOFARM, INC. D/B/A FRIENDLYWAY, INC.
CONDENSED CONSOLIDATED STATEMENT OF STOCKHOLDERS' EQUITY (DEFICIT)
PERIOD ENDED JANUARY 31, 2005
(UNAUDITED)

<TABLE>

<CAPTION>

|  | Common stock | | Additional Paid-in Capital | Retained Earnings/ (Deficit) |
|  | Shares | Amount |  |  |
|---|---|---|---|---|
| <S> | <C> | <C> | <C> | <C> |
| Balance at December 31, 2002 | 18,000,000 | $18,000 | $ 39,143 | $ 200,016 |
| Net loss |  |  |  | (433,453) |
| Balance at December 31, 2003 | 18,000,000 | 18,000 | 39,143 | (233,437) |
| Purchase of treasury stock – 1,633,334 shares |  |  |  |  |
| Reissuance of treasury stock – for compensation – 833,334 shares |  |  |  |  |
| Sales of treasury stock – 800,000 shares |  |  |  |  |
| Stock options granted for services |  |  | 143,000 |  |
| Net loss |  |  |  | (437,178) |
| Balance at October 31, 2004 | 18,000,000 | 18,000 | $ 182,143 | $ (670,615) |
| Effect of reverse merger | 5,681,095 | 5,682 | (106,270) |  |
| Amortization of unearned compensation |  |  |  |  |
| Net loss |  |  |  | (251,323) |
| Balance at January 31, 2005 | 23,681,095 | $23,682 | $ 75,873 | $ (921,938) |

</TABLE>

The accompany notes are an integral part of these condensed consolidated financial statements.

6

<PAGE>

BIOFARM, INC. D/B/A FRIENDLYWAY, INC.
CONDENSED CONSOLIDATED STATEMENTS OF CASH FLOWS
THREE MONTHS ENDED JANUARY 31, 2005 AND 2004
(UNAUDITED)

|  | 2005 | 2004 |
|---|---|---|
| OPERATING ACTIVITIES |  |  |
| Net loss | $(251,323) | $(197,459) |
| Adjustments to reconcile net loss to net cash utilized by operating activities: |  |  |
| Depreciation | 6,589 | -- |

```
        Stock based compensation              31,795          --
        Changes in assets and liabilities:
            Accounts receivable               63,696       78,068
            Inventory                        (45,297)      92,567
            Other current assets              40,914        9,500
            Accounts payable                  (8,514)      14,964
            Accrued interest                  12,150          --
            Other current liabilities         81,967       (4,872)
                                            ---------    ---------

    Net cash utilized by operating activities (68,023)      (7,232)

INVESTING ACTIVITIES

    Purchase of property and equipment        (3,190)         --
                                            ---------    ---------

    Net cash utilized by investing activities (3,190)         --
                                            ---------    ---------

        DECREASE IN CASH                     (71,213)      (7,232)

Cash, beginning of period                    139,646       56,915
                                            ---------    ---------

Cash, end of period                        $  68,433    $  49,683
                                            =========    =========

SUPPLEMENTAL DISCLOSURE OF CASH FLOW INFORMATION:

    Cash paid for interest during the period $   4,765   $   1,514
                                            =========    =========
```

SUPPLEMENTAL DISCLOSURE OF NONCASH INVESTING AND FINANCING ACTIVITIES:

During the three-month period ended January 31, 2004, the Company applied a prepaid deposit against accounts payable in the amount of $124,000.

During the three-month period ended January 31, 2004, the Company converted accounts payable to notes payable in the amount of $60,000.

The accompanying notes are an integral part of these condensed consolidated financial statements.

7

<PAGE>

BIOFARM, INC. D/B/A FRIENDLYWAY, INC.
NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS

NOTE A - ORGANIZATION AND BASIS AND PRESENTATION

ORGANIZATION

On December 10, 2004, Biofarm, Inc. and its subsidiaries ("BIOF") entered into a reverse merger transaction with Friendlyway, Inc. ("FWI" or the "Company"). As a result, BIOF became an operating company. BIOF was a non-operating public shell corporation prior to the reverse merger transaction. As a result of this transaction, the stockholders of FWI became the controlling stockholders of

BIOF, and FWI became a public company Registrant. This reverse merger transaction has been accounted for as a recapitalization of FWI, as FWI is the accounting acquirer, effective December 10, 2004. As a result, the historical equity of the Company has been restated on a basis consistent with the recapitalization.

FWI was incorporated on June 8, 2000 in the State of Delaware by friendlyway, AG ("FWAG"). Through July 31, 2002, FWI was a wholly owned subsidiary of FWAG. Effective August 1, 2002, Alexander von Welczeck, FWI's President acquired a 70% interest in FWI from FWAG pursuant to a Management Buyout Agreement ("MBO") with FWAG. Following the MBO, FWAG retained a 30% ownership interest in FWI.

BUSINESS

FWI is a leading self-service solutions provider of customer-facing public access self-service systems. The Company's products focus on the improvement of internet-based customer communication at the point of sale in retail stores, point of service/information in public locations or the Internet.

BASIS OF PRESENTATION

The Company has prepared these unaudited condensed consolidated financial statements in accordance with the instructions to Form-10QSB and Rule 10-01 of Regulation S-X. Accordingly, they do not include all of the information and footnotes required by U.S. generally accepted accounting principles for complete financial statements.

FWI changed its fiscal year end to October 31 in connection with its reverse merger with BIOF.

In the opinion of management, the accompanying condensed consolidated financial statements include all adjustments necessary for a fair presentation of the Company's results of operations and financial condition and cash flows for the interim periods presented, including normal recurring accruals and other items. The results of operations for the periods presented are not necessarily indicative of the results of operations for the full year or any other interim period. The information included in this Form 10-QSB should be read in conjunction with Management's Discussion and Analysis and Financial Statements and the disclosures to FWI audited financial statements included in Form 8-K/A filed on March 3, 2005.

The Company has prepared these unaudited condensed consolidated financial statements in accordance with the instructions to Form 10-QSB and Rule 10-01 of Regulation S-X. Accordingly, they do not include all of the information and footnote required by U.S. generally accepted accounting principles for complete financial statments.

The Company's condensed consolidated financial statements have been prepared on a going concern basis, which contemplates the continuation of operations, realization of assets and liquidation of liabilities in the ordinary course of business, and do not reflect any adjustments that might result if the Company is unable to continue as a going concern. At January 31, 2005, the Company has total assets of $608,323 and liabilities of $1,545,075. FWI is an early stage company with a

8

<PAGE>

limited operating history. In their report on the Company's financial statements

for the year ended October 31, 2004 included in the Fiscal 2004 Form 8-K/A, the Company's independent auditors expressed substantial doubt about the Company's ability to continue as a going concern. On March 4, 2005, FWI obtained $150,000 of debt financing from FWAG and are in advanced discussions for additional financing for working capital.

NOTE B - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

INVENTORY

Inventory is stated at the lower of cost or market. Cost is determined by the first-in, first-out method. Inventory consists entirely of work-in-process at January 31, 2005.

REVENUE RECOGNITION

Revenue consists primarily of sales and rentals of self-service systems and professional services. Sales revenue is recognized when both title and risk of loss transfer to the customer, provided that no significant obligations remain. Rental revenue is recognized as earned in accordance with the terms of rental agreements, which are generally short-term in duration. The Company provides for an estimate of product returns and doubtful accounts, based on historical experience.

9

<PAGE>

INCOME TAXES

The Company accounts for income taxes in accordance with SFAS No. 109, Accounting for Income Taxes.

EARNINGS PER SHARE

The Company accounts for loss per share under the provisions of SFAS No. 128, Loss Per Share, which requires a dual presentation of basic and diluted loss per share. Basic loss per share excludes dilution and is computed by dividing income available to common stockholders by the weighted average number of common shares outstanding for the year. Diluted loss per share is computed assuming the conversion of common stock equivalents, when dilutive. For the three-months ended January 31, 2005 and 2004, the Company's common stock equivalents, which consist of convertible debt and stock options, were anti-dilutive, and therefore, basic and diluted loss per share were the same. The basic and diluted loss per share data and weighted average number of shares data for the period ended January 31, 2004 have been restated to present FWI's data on a recapitalized basis.

NOTE C - RELATED PARTY TRANSACTIONS

In August 2002, the Company entered into a license agreement ("License Agreement") with its former parent and current minority shareholder, FWAG. Under the terms of the License Agreement, FWI is required to pay a license and maintenance fee as a percentage of gross revenue to FWAG. For the three months ended January 31, 2005 and 2004, FWI has incurred license and maintenance fees in the amounts of $12,774 and $9,332, respectively, and at January 31, 2005, has recorded a liability of $83,209 related to license and maintenance fees payable.

During the three months ended January 31, 2005 and 2004, the Company had purchases of $41,233 and $2,744, respectively from FWAG.

On March 4, 2005, FWI obtained $150,000 of debt financing from FWAG and are in advanced discussions for additional financing for working capital.

10

<PAGE>

ITEM 2. MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS

For the last three years, Biofarm, Inc. ("BIOF") was a non-operating "shell" corporation with no revenue. During this period, BIOF's management had sought to acquire an operating business. On August 24, 2004, BIOF entered into a Share Exchange Agreement with the stockholders of Friendlyway, Inc. ("FWI" or the "Company"), pursuant to which BIOF agreed to acquire all of the outstanding shares of FWI in exchange for the issuance of 18,000,000 shares of Common Stock of BIOF and the assumption of outstanding options granted to FWI employees. That transaction closed on December 10, 2004 and FWI became a wholly-owned subsidiary of BIOF. This transaction has been accounted for (effective as of December 10, 2004) as a recapitalization of FWI, which is the accounting acquirer. As a result, the Company became an operating company. The Statements of Operations for the three months ended January 31, 2005 and 2004 reflect the activity of the operations of FWI.

FWI was incorporated in Delaware in June 2000, as a self-service solutions provider of customer-facing public access self-service systems. FWI's products focus on the improvement of internet-based customer communication at the point of sale in retail stores, point of service/information in public locations or the Internet. Through July 31, 2002, FWI was a wholly-owned subsidiary of Friendlyway AG ("FWAG"). Effective August 1, 2002, FWI's President, Alexander von Welczeck, acquired a 70% interest in FWI from FWAG, pursuant to a Management Buyout Agreement ("MBO") with FWAG. Following the MBO, FWAG retained a 30% ownership interest in FWI.

In March 2004, Henry Lo assumed full time responsibilities as Chief Financial Officer. Mr. Lo, together with Mr. von Welczeck, brought new investors to the FWI to strengthen FWI's working capital to support its sales growth, and took steps necessary to implement a new business strategy. This new business strategy will seek to combine software, services and design around the self-service solutions marketplace. In December 2004, FWI announced the launch of Friendlyway Media, which will be primarily focused on FWI's software platform and custom software design services. Together with Friendlyway Interactive Systems and Friendlyway Event Services, these three business units form the revenue model of FWI. Currently, FWI generates most of its revenue from the sale and rental of its systems. FWI has a direct sales force in addition to a strong network of value added resellers for complex software integration projects. For our rental business, FWI utilizes its proprietary Certified Rental Partner Network for fulfilling short-term rental deployments for our customers. FWI outsources its non-strategic tasks, including assembly and manufacturing, which management believes, results in increased turnover and scalability in a cost-effective manner. FWI's products and services are offered domestically, in Europe and in Asia.

11

<PAGE>

During 2004, a number of steps were taken to prepare FWI for the launch of this new plan, culminating with the reverse merger transaction with BIOF. Among these

steps taken were:

- o    Construction of the details of the new business plan around the Company's three core business units: Friendlyway Interactive Systems, Friendlyway Event Services and Friendlyway Media.
- o    Reduction of costs via direct materials sourcing and a change in contract manufacturing partner.
- o    Engagement of key professional services providers: including legal and investment banking.
- o    Negotiating with new investment sources.
- o    Identifying and negotiating with key acquisition targets.

The Company's goal is to become a leading self-service solutions provider of customer-facing public access self-service systems. FWI's customers include some of the most prestigious Fortune 500 companies including: Bank of America, Boeing, Disney, Fidelity Investments, Marriott Hotels, Merck, Microsoft, Nike, and Pfizer.

RESULTS OF OPERATIONS

The following discussion should be read in conjunction with the condensed consolidated financial statements and related notes included elsewhere is this report. Except for the historical financial information contained herein, the matters discussed in this Quarterly Report on Form 10-QSB may be considered "forward-looking" statements within the meaning of Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Act of 1934, as amended. Such statements include declarations regarding the intent, beliefs or current expectations of Biofarm and our management. Such forward-looking statements are not guarantees of future performance and involve a number of risks and uncertainties. We undertake no obligation to publicly release the results of any revision to these forward-looking statements, which may be made to reflect events or circumstances after the dates hereof or to reflect the occurrence of unanticipated events. Important factors which could cause actual results to differ materially from those in the forward-looking statements, include but are not limited to: the company's short operating history which makes it difficult to predict its future results of operations; the dependence of the company's revenue upon the company's suite of products; the company's history of operating losses and expected future losses which could impede its ability to address the risks and difficulties encountered by companies in new and rapidly evolving markets; the company's future operating results could fluctuate which may cause volatility or a decline in the price of the company's stock.

The following discussion is a comparison of FWI results of the two periods as the acquisition was accounted for as a recapitalization of FWI and, thus, the results of FWI (rather than the results of Biofarm (which had no operations)) are being presented and discussed.

12

<PAGE>

THREE MONTHS ENDED JANUARY 31, 2005 AS COMPARED TO THREE MONTHS ENDED JANUARY 31, 2004

REVENUE

Revenue consists primarily of sales and rentals of self-service systems and professional services. Sales revenue is recognized when both title and risk of loss transfer to the customer, provided that no significant obligations remain.

Rental revenue is recognized as earned in accordance with the terms of rental agreements, which are generally short-term in duration. The Company provides for an estimate of product returns and doubtful accounts, based on historical experience.

Total revenue for the three months ended January 31, 2005 ("2005 period) increased $137,671, or 36.9% to $510,967 from $373,296 for the three months ended January 31, 2004 ("2004 period). Systems sales revenue and systems rental and services revenue accounted for 70.8% and 29.2% of total revenue, respectively for the 2005 period and 76.6% and 23.4%, respectively for the 2004 period.

Sales revenue. We sell our systems to end user customers and value added resellers (VARs). Systems sales revenue for the 2005 period increased $75,554, or 26.4% to $361,639 from $286,085 for the 2004 period. The increase in systems sales activity was principally driven by increased sales and marketing efforts and headcount during the 2005 period.

Rental and services revenue. We maintain a pool of rental units for short-term deployments to end-user customers. In addition, FWI utilizes its proprietary Certified Rental Partner Network for fulfilling short-term rental deployments for our customers. Systems rental and service revenue for the 2005 period increased $62,118, or 71.2% to $149,328 from $87,210 for the 2004 period. The increase in systems rental and service revenue was principally driven by stronger demand for our systems at tradeshow and conference venues from new and existing customers during the 2005 period.

COST OF REVENUE

Cost of sales revenue. Cost of sales revenue is primarily comprised of manufacturing and component costs in the production of our systems. We outsource our manufacturing to a contract manufacturing partner and in most cases, directly purchase components for production from third-party vendors. For certain systems, we purchase directly from FWAG. Despite an increase in sales revenue, cost of sales revenue for the 2005 period decreased $99,924 to $244,241 from $344,165 for the 2004 period. This decrease is attributed to lower manufacturing and assembly costs as we transitioned to a new manufacturing partner in the 2005 period and lower costs in our key components such as displays and personal computers. Cost of sales revenue as a percentage of sales revenue was 67.5% for the 2005 period resulting in a gross margin on sales revenue of 32.5%. Cost of sales revenue as a percentage of sales revenue was 120.3% for the 2004 period resulting in a negative gross margin on sales revenue of 20.3%. Producing and purchasing in larger quantities enables more favorable pricing for FWI, which may result in improved gross margins.

13

<PAGE>

Cost of rental revenue. Cost of rental revenue is primarily comprised of fulfillment costs to our Certified Rental Partner Network for short-term rental deployments to end-user customers. Cost of rental revenue for the 2005 period increased $40,933, or 83.2% to $90,118 from $49,185 during the 2004 period. Cost of rental revenue as a percentage of rental revenue was 60.3% for the 2005 period resulting in a gross margin on rental revenue of 39.7%. Cost of rental revenue as a percentage of rental revenue was 56.4% for the 2004 period resulting in a gross margin on sales revenue of 43.6%.

SELLING, GENERAL AND ADMINISTRATIVE EXPENSES

Total selling, general and administrative expenses for the 2005 period increased $195,662, or 97.6% to $396,136 from $200,474 during the 2004 period. The increase in selling, general and administrative expenses for the 2005 period was principally driven by increases in salaries and benefits of $94,294 associated with the increase in headcount and in legal fees of $70,995 incurred for the reverse merger transaction with Biofarm. The Company anticipates that recurring legal expenses will increase in conjunction with additional acquisition related activity and the related costs associated with being a public company.

LIQUIDITY AND CAPITAL RESOURCES

For the last three years, BIOF was a non-operating "shell" corporation with no revenue. During this period, BIOF management had sought to acquire an operating business. On December 10, 2004, BIOF entered in a reverse merger transaction with FWI and as a result, BIOF became an operating company. During 2004, FWI raised $180,000 from the issuance of Common Stock and $411,000 from issuance of convertible notes for working capital purposes.

We believe that cash generated from operations may be insufficient to fund our ongoing operations through the next twelve months. During fiscal year ended October 31, 2004, FWI successfully raised equity and debt financing to fund its working capital. Efforts are underway to secure additional financing. In early March 2005, we raised an additional $150,000 of debt financing and are in advanced discussions to secure additional financing for working capital.

We currently have certain financing agreements in place for potential sources of financing but there can be no assurance that we will be able to successfully raise such additional funds or that such funds will be available on acceptable terms. Funds raised through future equity financing will likely be dilutive to our current shareholders. The incurrence of indebtedness would result in an increase in our fixed obligations and could result in borrowing covenants that would restrict our operations. There can be no assurance that financing will be available in sufficient amounts or on terms acceptable to us, if at all. If financing is not available when required or is not available on acceptable terms, we may be unable to develop or enhance our products or services. In addition, we may be unable to take advantage of business opportunities or respond to competitive pressures. Any of these events could have a material and

14

<PAGE>

adverse effect on our business, results of operations and financial condition. Lack of additional funds will materially affect our business and may cause us to cease operations. Consequently, shareholders could incur a loss of their entire investment in Biofarm.

Our financial statements were prepared on the assumption that we will continue as a going concern. The report of our independent registered pulic accounting firm for the year ended October 31, 2004 acknowledges that we have incurred losses in each of the last three fiscal years and that we will require additional funding to sustain our operations. These conditions cause substantial doubt as to our ability to continue as a going concern. Our financial statements included herein do not include any adjustments that might result should we be unable to continue as a going concern.

We cannot guarantee that additional funding will be available on favorable terms, if at all. If we are unable to obtain debt and/or equity financing upon terms that our management deems sufficiently favorable, or at all, it would have a materially adverse impact upon our ability to pursue our business strategy and

maintain our current operations.

RISKS AND UNCERTAINTIES

Our business is subject to the effects of general economic conditions, and in particular, market conditions in the software and computer industries. Our operating results have been and continue to be adversely affected as a result of the recent unfavorable global economic conditions and reduced consumer spending in the high tech sector. These adverse economic conditions in the U.S., may continue in the short term, and they may continue to adversely affect our revenue and earnings. If these economic conditions do not improve, or if we experience a continued weakening of the economy or technology spending, we may experience material adverse impacts on our business.

OFF-BALANCE SHEET ARRANGEMENTS

The Company does not have any off-balance sheet arrangements.

OTHER FACTORS THAT MAY AFFECT FUTURE RESULTS OF OPERATIONS:

        o    delays in shipment of our major new versions of existing products
        o    lack of acceptance of new versions of existing products
        o    introduction of new products by major competitors
        o    weakness in demand for software
        o    lack of growth in worldwide personal computer sales
        o    corporate reductions in IT spending
        o    inability to integrate companies and products we acquire
        o    industry transitions to new business and information delivery models
        o    changes occurring in the global market conditions affecting our customers

                                15

<PAGE>

Statements included in this "Management's Discussion and Analysis of Financial Condition and Results of Operations" which are not historical facts are forward-looking statements. These forward-looking statements involve risks and uncertainties that could render them materially different, including, but not limited to, the risk that new products and product upgrades may not be available on a timely basis, the risk that such products and upgrades may not achieve market acceptance, the risk that competitors will develop similar products and reach the market first, and the risk that the Company would not be able to fund its working capital needs from cash flow.

                                16

<PAGE>

ITEM 3. CONTROLS AND PROCEDURES

DISCLOSURE CONTROLS AND PROCEDURES

The Company maintains a system of disclosure controls and procedures that is designed to ensure that information required to be disclosed by the Company in this Form 10-QSB, and in other reports required to be filed under the Securities Exchange Act of 1934, is recorded, processed, summarized and reported within the time periods specified in the rules and forms for such filings.

Management of the Company, comprised of the Company's Chief Executive Officer

and Chief Financial Officer, reviewed and performed an evaluation of the effectiveness of the Company's disclosure controls and procedures as of the end of the period covered by this Report.

Based on that review and evaluation, the Chief Executive Officer and Chief Financial Officer have determined that the disclosure controls and procedures were and are effectively designed to ensure that material information relating to the Company and its consolidated subsidiaries would be made known to them on a timely basis.

PART II - OTHER INFORMATION

ITEM 1. LEGAL PROCEEDINGS

Neither the Company nor its property is subject to any legal proceedings.

ITEM 2. UNREGISTERED SALES OF EQUITY SECURITIES AND USE OF PROCEEDS.

On December 10, 2004, BIOF issued 18,000,000 shares of its Common Stock to all stockholders of FWI in exchange for all of the outstanding shares of FWI.

The issuance of the shares referred to above was not effected through a broker-dealer, and no underwriting discounts or commissions were paid in connection with such issuance.

Exemption from registration requirements is claimed under the Securities Act of 1933 ("The Securities Act") in reliance on Section 4(2) of the Securities Act or Regulation D promulgated thereunder. The purchasers represented their intention to acquire the Company's shares for investment only and not with a view to, or for sale in connection with, any distribution thereof and appropriate legends were affixed to the certificates evidencing the shares in such transaction. The purchasers had acquired access to information about BIOF.

ITEM 5. OTHER INFORMATION

On December 10, 2004, BIOF entered in a reverse merger transaction with FWI. As a result, BIOF became an operating company. BIOF was a non-operating public shell corporation previous to the reverse merger transaction. As a result of this transaction, the stockholders of FWI became the controlling stockholders of BIOF, and FWI became a public company Registrant. This reverse merger transaction has been accounted for as a recapitalization of FWI, as FWI is the accounting acquirer, effective December 10, 2004.

ITEM 6. EXHIBITS AND REPORTS ON FORM 8-K

Exhibits required to be filed by Item 601 of Regulation S-B

31.1  Certification of Chief Executive Officer Pursuant to Section 302 of the
      Sarbanes-Oxley Act of 2002

31.2  Certification of Chief Financial Officer Pursuant to Section 302 of the
      Sarbanes-Oxley Act of 2002

32.1  Certification of Chief Executive Officer Pursuant to Section 906 of the
      Sarbanes-Oxley Act of 2002

32.2  Certification of Chief Financial Officer Pursuant to Section 906 of the
      Sarbanes-Oxley Act of 2002

17
<PAGE>

SIGNATURES

In accordance with the  requirements of the Exchange Act, the registrant  caused
this  report to be  signed on its  behalf  by the  undersigned,  thereunto  duly
authorized.

BIOFARM, INC.                                    /s/ Alexander von Welczeck
- - - - - - - - - - - - -                        - - - - - - - - - - - - - - - - - - - - - - - - - -
  (Registrant)                                   Alexander von Welczeck
                                                 Chief Executive Officer

Dated: March 17, 2005


18

</TEXT>
</DOCUMENT>