1  HARRY G. LEWIS (STATE BAR NO. 157705)
   BRIAN V. DONNELLY (STATE BAR NO. 162987)
2  CORNERSTONE LAW GROUP
   595 Market Street, Suite 2360
3  San Francisco, CA 94105
   Telephone: (415) 974-1900
4  Facsimile:   (415) 974-6433

5  Attorneys for Defendant
   ALEXANDER VON WELCZECK
6  and HENRY LO

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                   OAKLAND DIVISION

11

12  PSI CORPORATION (f/k/a
    FRIENDLYWAY CORPORATION, f/k/a       CASE NO. C 07-02869 SBA
13  BIOFARM, INC.),
                                         DEFENDANT ALEXANDER VON
14          PLAINTIFF,                   WELCZECK'S AND HENRY LO'S
                                         OPPOSITION TO PSI CORPORATION'S
15      vs.                              MOTION FOR TEMPORARY
                                         RESTRAINING ORDER
16  ALEXANDER VON WELCZECK, HENRY
    LO, MICHAEL DRAPER and
17  FRIENDLYWAY AG,

18          DEFENDANTS.

19  FRIENDLYWAY, INC., KARL
    JOHANNNSMEIER, PACIFIC
20  CAPSOURCE, INC., and DERMA PLUS,
    INC.,
21
            NOMINAL DEFENDANTS
22

23                    I.    **INTRODUCTION**

24      PSI Corporation's ("PSI") Motion for Temporary Restraining Order ("TRO Motion")

25  should be denied because it cannot show the requisite "irreparable injury."  After engaging in

26  extensive settlement negotiations with Defendants Alexander von Welczeck ("Welczeck") and

27

DEFENDANT ALEXANDER VON WELCZECK'S AND HENRY LO'S OPPOSITION TO PSI
CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER

1   Henry Lo ("Lo") in January 2007 to resolve its claims of fraud, PSI abruptly cut off negotiations
2   after a change in management.  PSI then waited five months to bring the subject motion.
3   Certainly, the alleged harm to PSI cannot be imminent or irreparable if PSI can wait five months
4   to bring its TRO Motion.

5          The TRO Motion should also be denied because PSI has an adequate remedy at law.
6   While PSI seeks to rescind its agreement with the Defendants, this is only one of the many
7   remedies available to it.  If the Court denies PSI's request for a TRO, and it eventually prevails at
8   trial, PSI will be able to recover adequate monetary damages from the Defendants.  Therefore, a
9   TRO is not necessary.

10          Finally, the hardship to the Defendants far outweighs any inconvenience to PSI of having
11   to pursue a remedy other than rescission.  Welczeck sells PSI stock on a monthly basis to support
12   his family.  Accordingly, any TRO preventing him from doing so will cause severe hardship to
13   him and his family.

14                                  **II.     BACKGROUND**

15   **A.     Merger Between Biofarm and Friendlyway**

16          Mike Draper introduced Biofarm, Inc. ("Biofarm") (the predecessor to PSI and
17   Friendlyway Corporation ("Friendlyway")) and its director Allan Esrine, to Friendlyway, Inc. in
18   June 2004.  Mr. Draper represented to Friendlyway, Inc. that Biofarm would be interested in
19   entering into a reverse merger with a growing company in the self-service provider industry. See
20   Henry Lo's Delcaration in Opposition to Motion for Temporary Restraining Order ("Lo Decl."),
21   ¶ 3.

22          Biofarm and Friendlyway thereafter mutually agreed upon a share exchange ratio of 3:1
23   whereby Biofarm would issue 3 shares of stock to Friendlyway, Inc. stockholders for 1 share of
24   Biofarm.  Biofarm represented to Friendlyway, Inc.'s stockholders that their outstanding
25   capitalization consisted of 6,000,000 shares up through the closing of the Share Exchange
26
27

DEFENDANT ALEXANDER VON WELCZECK'S AND HENRY LO'S OPPOSITION TO PSI
CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER

1    Agreement ("SEA"). Biofarm, accordingly, issued 18,000,000 shares to Friendlyway, Inc.

2    stockholders at closing in December 2004.[1] Lo Decl. ¶ 4.

3          Biofarm had a fantasy market capitalization of $3,000,000 prior to the closing based on

4    6,000,000 shares at $0.50/share. However, Biofarm was nothing more than a thinly traded

5    closely-held stock with a balance sheet that had $243 of cash and $101,818 of liabilities, and no

6    operating business. In short, Biofarm was a non-operating empty shell that had been seeking an

7    operating business for many years. Lo Decl. ¶ 5.

8          Throughout the closing process, Biofarm was accurately informed of Friendlyway, Inc.'s

9    operating and financial performance. Friendlyway even used the accounting firm recommended

10   by Biofarm to perform the audit of its books for the SEA. Biofarm's director assisted in the

11   drafting of the pro-forma financial statements of Biofarm as required for the SEC Filing under

12   Form 8-K (filed in March 2005). Moreover, all liabilities were disclosed to Biofarm at closing.

13   Lo Decl. ¶ 7.

14   **B.**    **Settlement Negotiations In January 2007**

15         Welczeck received 7,130,175 of restricted shares in Friendlyway Corporation at the time

16   of the merger in December 2004. The Rule 144 restriction period for the sale of these shares

17   expired in December 2006, two years after the merger. See Alexander von Welczeck Declaration

18   in Opposition to Motion for Temporary Restraining Order ("Welczeck Decl."), ¶ 3.

19         In response to Welczeck's demand to PSI for the share certificates, PSI threatened legal

20   action against Welczeck and Lo for failing to disclose claims against Friendlyway, Inc. at the

21   time of the merger. Welczeck countered with claims against PSI for its failure to satisfy certain

22   financial obligations owed to him. Welczeck Decl., ¶ 4.

23

24

25   [1] During the due diligence process, it was discovered that Biofarm had issued approximately 1,000,000
     additional shares that it had not originally disclosed. The parties, therefore, mutually agreed to include a
26   provision in the SEA that Friendlyway, Inc. would receive 3 additional shares (or approximately 3,000,000)
27   for every 1 share above the 6,000,000 represented by Biofarm. Lo Decl. ¶ 6.

DEFENDANT ALEXANDER VON WELCZECK'S AND HENRY LO'S OPPOSITION TO PSI
CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER

1    In January 2007, Lo and Welczeck engaged in extensive negotiations with PSI's then

2    CEO David Lott to resolve their respective claims. These negotiations progressed to the stage of

3    their drafting a mutual settlement agreement and release of claims. Welczeck Decl., ¶ 5,. Mr.

4    Lott left PSI in January 2007. The settlement negotiation ended when PSI's new management

5    failed to respond to Welczeck efforts to conclude the negotiations. The first communication

6    Welczeck or Lo received from PSI thereafter was the subject Motion for TRO. Welczeck Decl.,

7    ¶¶ 5-6, Exhibit A.

8    ## III.    LEGAL ARGUMENT

9    "The basis for injunctive relief in the federal courts has always been irreparable

10   injury and the inadequacy of legal remedies." *Weinberger v. Romero–Barcelo*, 456 U.S.

11   305, 312 (1982). All courts agree that plaintiff must show a significant threat of

12   "irreparable injury" and that legal remedies are "inadequate." *See Arcamuzi v.*

13   *Continental Air Lines, Inc.*, 819 F.2d 935, 937(9th Cir. 1987). "[A] court must balance

14   the competing claims of injury and must consider the effect on each party of the granting

15   or withholding of the requested relief... a federal judge sitting as chancellor is not

16   mechanically obligated to grant an injunction for every violation of law." *Amoco*

17   *Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987).[2]

18   **A.    PSI Cannot Show A Significant Threat of Irreparable Injury**

19   A preliminary injunction "may only be granted when the moving party has

20   demonstrated a significant threat of irreparable injury, irrespective of the magnitude of

21   the injury." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999). Significantly,

22   "even if Plaintiffs establish a likelihood of success on the merits, the absence of a

23

24   [2] PSI also argues for the TRO under the alternative theory of serious questions going to the merits and the
25   balance of hardships tipping in favor of plaintiffs. Under either test, the analysis "creates a continuum: the
     less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince
26   the district court that the public interest and balance of hardships tip in their favor." *Southwest Voter*
     *Registration Ed. Project v. Shelley*,344 F.3d 914, 918(9th Cir. 2003).
27

DEFENDANT ALEXANDER VON WELCZECK'S AND HENRY LO'S OPPOSITION TO PSI
CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER

1  substantial likelihood of irreparable injury would, standing alone, make preliminary

2  injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). PSI

3  cannot show a significant threat of irreparable injury.

4        **1.    PSI Cannot Show A Threat Of Imminent Harm**

5        A plaintiff seeking a TRO "must demonstrate immediate threatened harm."

6  *Caribbean Marine Serv. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). PSI

7  claims imminent harm because of the expiration of the Rule 144 period restricting

8  Defendants from selling their stock. However, the restrictions on Welczeck's sale of his

9  stock expired in December 2006, **six months ago**. PSI, Welczeck and Lo thereafter

10  engaged in extensive settlement negotiations to resolve their respective claims and

11  exchanged draft language for a settlement agreement in January 2007, **five months ago**.

12  PSI's six month delay in seeking this TRO shows that there is no imminent harm.

13        **2.    Plaintiff May Obtain Monetary Damages Against Defendants**

14        PSI also cannot demonstrate that the potential harm it may suffer cannot be

15  redressed by a legal remedy following trial. *See Campbell Soup Co. v. ConAgra, Inc.* 977

16  F.2d 86, 91 (3rd Cir. 1992). The legal remedy (damages) need not be wholly ineffectual.

17  Rather, it "must be seriously deficient as compared to the harm suffered." *FoodComm*

18  *Int'l v. Barry* 328 F.3d 300, 304 (7th Cir. 2003). The fact that adequate compensatory

19  damages will ultimately be available in the ordinary course of litigation weighs heavily

20  against a claim of "irreparable" harm. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974).

21        PSI has failed to explain or even address why monetary damages will not be an

22  adequate remedy for its claims against Defendants. PSI does state that, as one of its

23  remedies, it seeks rescission of the merger and return of its stock. PSI also argues

24  unconvincingly, that if the TRO is not granted defendants may sell the stock preventing

25  its return to PSI.

26

27

DEFENDANT ALEXANDER VON WELCZECK'S AND HENRY LO'S OPPOSITION TO PSI
CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER

1   Defendants response to this is, "so what." If Defendants sell their stock and PSI
2   prevails at trial, it will be able to recover monetary damages from the Defendants, if any
3   exist. However, it is unclear how PSI can claim any damages since it was a shell
4   company with no asssets prior to the merger. Therefore, PSI again cannot show the
5   irreparable injury required to obtain a TRO.

6   **3.    The Harm To Defendants Of A TRO Outweighs Any Potential Harm**
7   **To Plaintiffs.**

8   In assessing the relative hardships to each party, the court must consider the
9   impact the injunction may have on the respective parties. Where the harm likely to be
10  suffered by defendant outweighs any injury threatened by defendant's conduct, plaintiff
11  must make a stronger showing of likely success on the merits. *MacDonald v. Chicago*
12  *Park Dist.*, 132 F.3d 355, 357 (7th Cir. 1997). The relative size and strength of each
13  party is pertinent to this inquiry. *See Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719,
14  726 (9th Cir. 1985).

15  Here, the hardship to the individual Defendants outweighs that to the corporate
16  Plaintiff. Welczeck sells his stock on a monthly basis to support himself and his family.
17  Welczeck Decl., ¶ 6. PSI, on the other hand, can show no real hardship because it may
18  seek legal remedies if the TRO is denied.

19  **B.    PSI Cannot Show A Likelihood of Success on the Merits**

20  The greater the risk of injury to the defendant if the injunction is granted (i.e., the
21  more the balance moves away from plaintiff), the stronger his or her showing on the
22  merits must be. *See Steakhouse, Inc. v. City of Raleigh, N.C.*, 166 F.3d 634, 637 (4th Cir.
23  1999). Here, PSI cannot meets its burden of showing a likelihood on the merits because
24  this case is nothing more than a "he said, she said."

25  Welczeck and Lo deny PSI's allegations that they made material representations
26  regarding Friendlyway, Inc.'s financial condition at the time of the merger. Indeed, throughout

27

DEFENDANT ALEXANDER VON WELCZECK'S AND HENRY LO'S OPPOSITION TO PSI
CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER

1  the closing process, Biofarm was fully informed of Friendlyway's operating and financial

2  performance.  Friendlyway even used the accounting firm recommended by Biofarm to perform

3  the audit of its books for the SEA.  Biofarm's director assisted in the drafting of the pro-forma

4  financial statements of Biofarm as required for the SEC Filing under Form 8-K (filed in March

5  2005).  Moreover, all liabilities were disclosed to Biofarm at closing.

6          Therefore, at this early stage of the litigation, it is equally as probable that the Defendants

7  will prevail at trial as it is that PSI will.

8                          **IV.    CONCLUSION**

9          For the reasons set forth herein, this court should deny PSI's Motion for

10  Temporary Restraining Order.

11  Dated: June 7, 2007                    CORNERSTONE LAW GROUP

12

13                                  By: _____ /S/ _____
                                            Harry Lewis
14                                          Attorneys for Defendant
                                            ALEXANDER VON WELCZECK and
15                                          HENRY LO

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT ALEXANDER VON WELCZECK'S AND HENRY LO'S OPPOSITION TO PSI
CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER

1  HARRY G. LEWIS (STATE BAR NO. 157705)
   BRIAN V. DONNELLY (STATE BAR NO. 162987)
2  CORNERSTONE LAW GROUP
   595 Market Street, Suite 2360
3  San Francisco, CA 94105
   Telephone: (415) 974-1900
4  Facsimile:  (415) 974-6433

5  Attorneys for Defendants
   ALEXANDER VON WELCZECK
6  and HENRY LO

7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10                    **OAKLAND DIVISION**

11

12  PSI CORPORATION (f/k/a
    FRIENDLYWAY CORPORATION, f/k/a      **CASE NO. C 07-02869 SBA**
13  BIOFARM, INC.),
                                        **DEFENDANT ALEXANDER VON**
14           PLAINTIFF,                 **WELCZECK'S DECLARATION IN**
                                        **OPPOSITION TO PSI CORPORATION'S**
15      vs.                             **MOTION FOR TEMPORARY**
                                        **RESTRAINING ORDER**
16  ALEXANDER VON WELCZECK, HENRY
    LO, MICHAEL DRAPER and
17  FRIENDLYWAY AG,

18           DEFENDANTS.

19  FRIENDLYWAY, INC., KARL
    JOHANNNSMEIER, PACIFIC
20  CAPSOURCE, INC., and DERMA PLUS,
    INC.,
21
             NOMINAL DEFENDANTS
22

23      I, Alexander von Welczeck, declare that:

24      1.    I am a defendant in the above captioned matter.  The statements contained herein

25  are based upon my personal knowledge, and if called upon to testify as a witness in this matter, I

26  could competently testify thereto.

27

---

Page 1

DEFENDANT ALEXANDER VON WELCZECK'S DECLARATION IN OPPOSITION TO PSI
CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER

2.      I was the President of Friendlyway, Inc. prior to its merger with Biofarm, Inc. to create Friendlyway Corporation in December 2004. After the merger, I assumed the position of Chief Executive Officer with Friendlyway Corporation. I held this position until February 2005 when I was succeeded by Dr. Michael Urban as Chief Executive Officer. After Dr. Michael Urban's departure in August 2005, I again assumed the position of Chief Executive Officer until I was succeeded by Mr. Ken Upcraft in January 2006.

3.      I received 7,130,175 restricted shares in Friendlyway Corporation at the time of the merger in December 2004. The Rule 144 restriction period for the sale of these shares expired in December 2006, two years after the merger.

4.      In response to my demand to PSI for the share certificates, PSI threatened legal action against me and Henry Lo for failing to disclose claims against Friendlyway, Inc. at the time of the merger. I countered with claims against PSI for its failure to satisfy certain financial obligations owed to me.

5.      In January 2007, Lo and I engaged in extensive negotiations with PSI's then CEO David Lott to resolve our respective claims against each other. These negotiations progressed to the stage of our drafting a mutual settlement agreement and release of claims. See Exhibit A, General and Mutual Release.

6.      Mr. Lott left PSI in January 2007. The settlement negotiation ended when PSI's new management failed to respond to my efforts to conclude the negotiations. The first communication I received from PSI was the subject action which I received on June 5, 2007.

7.      The 7,130,175 shares of PSI common stock that I currently own represent the vast majority of my net worth. I sell about $3,000-5,000 of this stock on a monthly basis in order to support my family which includes my wife and two young children. Any restriction on my ability to sell this stock would cause a great hardship to me and my family.

DEFENDANT ALEXANDER VON WELCZECK'S DECLARATION IN OPPOSITION TO PSI CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct and executed this 7th day of June 2007 in Mill Valley, California.

3                                                   /S/

4                                        Alexander von Welczeck

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Page 3

DEFENDANT ALEXANDER VON WELCZECK'S DECLARATION IN OPPOSITION TO PSI
CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER

**EXHIBIT A**

# GENERAL AND MUTUAL RELEASE

This Mutual Release ("Release") is executed this 8th day of January, 2007 by and between Alex von Welczeck (hereinafter referred to as "AVW"), Henry Lo (hereinafter referred to as "LO") and PSI Corporation, a Nevada Corporation together with its subsidies (hereinafter "PSI" and David Lott, as a Director and Officer and Ken Upcraft), the "parties".

# RECITALS:

WHEREAS, AVW is the owner of 7,130,175 common shares of PSI and Henry Lo is the owner of 900,000 common shares of PSI.

WHEREAS, PSI has alleged that AVW and LO did not disclose certain claims related to trade and contract debt in the amount of approximately $1.3 million in the 10K and 10Q financial filings for FY 05 and FY06 of friendlyway Corporation ("friendlyway"); and

WHEREAS, AVW has certain claims against PSI related to (1) PSI's obligation to release Annette von Welczeck's guarantee in support of the Citibank line of credit in the amount of $50,000; (2) PSI's obligation to pay the $194,113 Promissory Note plus interest issued by friendlyway in connection with the transfer by AVW of shares that were sold to raise capital for the corporation; (3) PSI"s obligation to issue 454,000 shares of PSI common stock that were promised when AVW bought back said shares for $200,000 at .44 cents per share; and (4) AVW's claims that the failure of PSI to contribute a portion of monies raised by PSI to support the business of friendlyway caused certain damages that now appear in the claims of PSI; and

WHEREAS, while AVW and LO do not agree that any such filings were incorrect or that the indebtedness is $1.3 million or any other number, both AVW and LO are agreeable to assigning 3.5 million (3.0 million by AVW and .5 million by LO) shares of the common stock of PSI Corporation bearing no restrictive legend to an Escrow (ie, a mutual brokerage account) in return for a full and complete release of any indebtedness and/or other damages to PSI as well as claims they may have against PSI; and

1

WHEREAS, this Mutual Release is intended to resolve all claims of the parties.

## WITNESSED:

NOW THEREFORE, for and in consideration for the PSI's agreement not to contest the removal of the transfer restrictions and restrictive legend under the Securities Act of 1933, as amended, relating to the aggregate of AVW's 7,130,175 shares of PSI common stock and LO's 900,000 shares of common stock, and the assignment of the 3.5 million shares of common stock of PSI that bear no restrictive legend, and other good and valuable consideration, in hand paid, the receipt and sufficiency of which are hereby acknowledge, the parties agree as follows:

1.    Upon execution of this Mutual Release, AVW and LO will assign 3.5 million shares of PSI common stock bearing no restrictive legend into a "Mutual Brokerage" Escrow Account established at Smith Barney, San Francisco, CA. The Mutual Brokerage account shall act on behalf of the parties hereto based on the written instructions by both PSI and AVW/LO as to claims presented and agreed upon. It is understood that PSI may sell the shares to provide cash to settle alleged amounts due or owing.

2.    The parties agree to resolve all the alleged claims of the parties in a mutually agreeable manner including agreeing as to the payments to be made from the Escrow for PSI's account, namely, that each and every claim shall be presented by the party making the claim, that the parties shall attempt to reach an agreement as to each and every claim, and that should the parties not reach agreement, that each claim shall be presented for arbitration by and independent trier of fact such as JAMS, an association of retired judges, that provides such services in Northern California. It is agreed that when a claim is presented for arbitration, that AVW and LO shall have the burden to prove that such claim is not valid or correct in fact or amount and that they are responsible for the fees and costs in connection therewith.

3.    The parties agree that to the extent that monies remain in the Escrow after 90 days from the date of this agreement unless it is further agreed to extend the time, then such monies shall be returned to AVW and LO as their sole property;

4.    AVW and LO agree that they will not sell more than a combined 200,000 shares per month in public markets through January 15, 2008. Thereafter, this restriction on sale will no longer be a condition of this agreement.

5.    PSI, David Lott, and Ken Upcraft hereby agrees to release, cancel, forgive and forever discharge AVW and LO, each of their predecessors, heirs, successors, and assigns, from any and all actions, claims, demands, damages, obligations, liabilities, controversies and executions, of any kind and nature whatsoever, whether known or unknown, whether suspected or not, which have arisen, or may have arisen, or shall arise by reason of any alleged indebtedness or obligation/guaranty being considered hereunder from the first day of the world, including this day and each day hereafter, and PSI, including PSI Directors and Officers (David Lott) and former Directors and Officers (Ken Upcraft) do specifically waive any claim or right to assert a claim or cause of action or demand which has been omitted from this Release;

6.    AVW and LO hereby agree to release, cancel, forgive and forever discharge PSI and each of its holding companies, subsidiaries, divisions, successors, heirs, and assigns in all capacities whatsoever, including without limitation as an officer, director, employee, representative, designee, agent and shareholder thereof, from all actions claims, demands, damages, obligations, liabilities, controversies, and executions, of any kind or nature whatsoever, whether known or unknown, where suspected or not, which have arisen, or may have arisen, or shall arise by reason of any matter, cause or thing whatsoever, from the first day of the world, including this day and each day hereafter, and AVW and LO do specifically waive any claim or right to assert any cause of action or alleged cause of action or demand which has, through oversight or error been omitted from this Release;

7.    Each party agrees to be responsible for its own attorney fees and costs.

8.    The provisions of this Release must be read as a whole and are not severable and/or separately enforceable by any of the parties hereto. This Release is subject to the same provisions as are set forth in the Share Exchange Agreement dated April 25, 2006, including 11.3, 11.11, and 11.12.

3

IN WITNESS WHEREOF, the undersigned have executed this Release in and as of the day month and year first set forth above.

PSI Corporation                    Alexander von Welczeck


_____            _____
David Lott,
As President and CEO
And Individually                   Henry LO

Ken Upcraft                        _____


_____

4

1  HARRY G. LEWIS (STATE BAR NO. 157705)
   BRIAN V. DONNELLY (STATE BAR NO. 162987)
2  CORNERSTONE LAW GROUP
   595 Market Street, Suite 2360
3  San Francisco, CA 94105
   Telephone: (415) 974-1900
4  Facsimile:  (415) 974-6433

5  Attorneys for Defendants
   ALEXANDER VON WELCZECK
6  and HENRY LO

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                  OAKLAND DIVISION

11

| | |
|---|---|
| 12  PSI CORPORATION (f/k/a FRIENDLYWAY CORPORATION, f/k/a BIOFARM, INC.), | CASE NO. C 07-02869 SBA |
| 13 | |
| 14          PLAINTIFF, | DEFENDANT HENRY LO'S DECLARATION IN OPPOSITION TO PSI CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER |
| 15      vs. | |
| 16  ALEXANDER VON WELCZECK, HENRY LO, MICHAEL DRAPER and | |
| 17  FRIENDLYWAY AG, | |
| 18          DEFENDANTS. | |
| 19  FRIENDLYWAY, INC., KARL JOHANNNSMEIER, PACIFIC | |
| 20  CAPSOURCE, INC., and DERMA PLUS, INC., | |
| 21 | |
| 22          NOMINAL DEFENDANTS | |

23      I, Henry Lo, declare that:

24      1.      I am a defendant in the above captioned matter.  The statements contained herein

25  are based upon my personal knowledge, and if called upon to testify as a witness in this matter, I

26  could competently testify thereto.

27

---

Page 1

DEFENDANT HENRY LO'S DECLARATION IN OPPOSITION TO
PSI CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER

1    2.    I was the Chief Financial Officer of Friendlyway, Inc. prior to its merger with

2    Biofarm, Inc. ("Biofarm") to create Friendlyway Corporation ("Friendlyway") in December

3    2004. After the merger, I assumed the position of Chief Financial Officer with Friendlyway

4    Corporation, a position I held until July 2006 when I left the company.

5    3.    Mike Draper introduced Biofarm (the predecessor to PSI and Friendlyway) and its

6    director Allan Esrine to Friendlyway, Inc. in June 2004. Mr. Draper represented to us that

7    Biofarm would be interested in entering into a reverse merger with a growing company in the

8    self-service provider industry.

9    4.    Biofarm and Friendlyway, Inc. thereafter mutually agreed upon a share exchange

10    ratio of 3:1 whereby Biofarm would issue 3 shares of stock to Friendlyway, Inc. stockholders for

11    1 share of Biofarm. Biofarm represented to Friendlyway, Inc.'s stockholders that their

12    outstanding capitalization consisted of 6,000,000 shares up through the closing of the Share

13    Exchange Agreement ("SEA"). Biofarm, accordingly, issued 18,000,000 shares to Friendlyway,

14    Inc. stockholders at closing in December 2004.

15    5.    Biofarm had a fantasy market capitalization of $3,000,000 prior to the closing

16    based on 6,000,000 shares at $0.50/share. However, Biofarm was nothing more than a thinly

17    traded closely-held stock with a balance sheet that had $243 of cash and $101,818 of liabilities,

18    and no operating business. In short, Biofarm was a non-operating empty shell that had been

19    seeking an operating business for many years.

20    6.    During the due diligence process, it was discovered that Biofarm had issued

21    approximately 1,000,000 additional shares that it had not originally disclosed. The parties,

22    therefore, mutually agreed to include a provision in the SEA that Friendlyway, Inc. would

23    receive 3 additional shares (or approximately 3,000,000) for every 1 share above the 6,000,000

24    represented by Biofarm.

25    7.    Throughout the closing process, Biofarm was accurately informed of

26    Friendlyway, Inc.'s operating and financial performance. Friendlyway, Inc. chose to use the

27

Page 2

DEFENDANT HENRY LO'S DECLARATION IN OPPOSITION TO
PSI CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER

1  audit firm recommended by Mr. Esrine to perform the audit of its books for the SEA. Biofarm's
2  director assisted in the drafting of Biofarm's pro-forma financial statements as required by the
3  SEC Filing under Form 8-K (filed in March 2005). Friendlyway, Inc. disclosed all liabilities to
4  Biofarm at the closing of the merger.

5      8.      I received 900,000 shares of stock issued to me which was in lieu of salary for
6  2004 and 2005 as a Chief Financial Officer. I currently own these 900,000 shares of PSI
7  Corporation.

8      I declare under penalty of perjury under the laws of the State of California that the
9  foregoing is true and correct and executed this 7th day of June 2007 in San Francisco, California.

10
11                          _____ /S/ _____
12                              Henry Lo
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Page 3

DEFENDANT HENRY LO'S DECLARATION IN OPPOSITION TO
PSI CORPORATION'S MOTION FOR TEMPORARY RESTRAINING ORDER