Daniel D. Harshman (SBN# 177139)
Charles Wheeler
Cozen O'Connor
425 California Street, Suite 2400
San Francisco, CA 94104
Telephone: (415) 617-6100
Facsimile: (415) 617-6101
Email: dharshman@cozen.com

Attorneys for Plaintiff
PSI Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PSI CORPORATION (f/k/a/ FRIENDLYWAY CORPORATION, f/k/a BIOFARM, INC.),<br><br>Plaintiff,<br><br>vs.<br><br>ALEXANDER VON WELCZECK, HENRY LO, MICHAEL DRAPER, and FRIENDLYWAY AG,<br><br>Defendants. | Case No. C 07-02869 SBA<br><br>**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>JURY TRIAL DEMANDED |
| FRIENDLYWAY, INC., KARL JOHANNSMEIER, PACIFIC CAPSOURCE, INC., and DERMA PLUS, INC.,<br><br>Nominal Defendants. | |

1

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................................i

TABLE OF AUTHORITIES ............................................................................................................ii

I.   PLAINTIFF HAS SHOWN A LIKELIHOOD OF SUCCESS
     ON THE MERITS OR A FAIR CHANCE OF SUCCESS ON THE MERITS. .....................2

     A.   Plaintiff's Securities Fraud Claims Are Not Time-Barred ............................................2

     B.   Plaintiff's Fraud Claims—Against All Defendants—
          Are Likely To Succeed And Raise Serious Questions. ................................................4

          1.   FWAG's own direct statements were false when made. ..................................4

          2.   FWAG Is Responsible For Statements Uttered
               By Others That Were False When Made. .........................................................5

          3.   Plaintiff has produced sufficient evidence to support probable
               success on its theory that FWAG was a control person of FWI. ......................6

II.  FWAG, VON WELCZECK, AND LO ADMIT THAT PLAINTIFF WILL
     SUFFER IRREPARABLE HARM WITHOUT TEMPORARY INJUNCTIVE RELIEF,
     AND THE BALANCE OF HARDSHIPS TIPS IN PLAINTIFF'S FAVOR. .........................8

CONCLUSION ................................................................................................................................9

i

# TABLE OF AUTHORITIES

**Cases**

*Betz v. Trainer Wortham & Co., Inc.*,
   -- F.3d --, 2007 WL 1377613, at *5 (9th Cir. May 11, 2007) ...................................................... 2, 3

*First Interstate Bank of Denver, N.A. v. Pring*,
   969 F.2d 891, 896 (10th Cir. 1992) ............................................................................................... 7

*Hart v. Browne*,
   163 Cal. Rptr. 356, 361 (Cal. App. 1980) ..................................................................................... 4

*In re Stat-Tech Securities Litig.*,
   905 F. Supp. 1416, 1429 (D. Colo. 1995) ..................................................................................... 7

*In re Williams Securities Litig.*,
   339 F. Supp. 2d 1206, 1237-38 (N.D. Okla. 2003) ....................................................................... 8

*Int'l R'ways v. United Fruit Co.*,
   373 F.2d 408, 414 (2d Cir. 1967) .................................................................................................. 3

*Mosesian v. Peat, Marwick, Mitchell & Co.*,
   727 F.2d 873, 879 (9th Cir. 1984) ............................................................................................ 2, 3

*RTC v. Fleischer*,
   890 F. Supp. 972, 976-79 (D. Kan. 1995) ..................................................................................... 3

The oppositions of Defendants Friendlyway AG ("FWAG"), Alexander von Welczeck ("von Welczeck"), and Henry Lo ("Lo") to Plaintiff's Motion for Temporary Restraining Order merely confirm that it is warranted and necessary. Both oppositions readily admit that, absent such relief, the shares of stock at issue in this case will be sold to third-parties. Neither opposition sufficiently undermines Plaintiff's detailed showing of its probability of success on the merits of its claims.

Indeed, in their oppositions, Defendants merely snipe at certain parts of Plaintiff's claims. FWAG asserts the limitations period that applies to Plaintiff's securities fraud claims, ignoring that longer limitations periods govern myriad claims that entitle Plaintiff to rescind the Share Exchange Agreement (the "SEA") between the parties, based on Defendants' fraud. FWAG also attempts to show that it cannot be held liable for the statements of Friendlyway, Inc. (a company it "controlled") or Lo (its co-conspirator), but it ignores that Plaintiff is entitled to rescission if it was defrauded by *any* of the Defendants. Von Welczeck and Lo do not even make a full-hearted attempt to contest the merits of Plaintiff's claims.

Rather, Defendants' oppositions concern irrelevant events that occurred years after the events at issue in this case. For instance, FWAG discusses at length Plaintiff's acquisitions of other businesses, more than a year after it acquired FWI, but it never explains how those facts are relevant to Plaintiff's claims. FWAG accuses Plaintiff's current management of causing "devastation" to the company, but it does not explain how those allegations affect Plaintiff's motion, let alone support those allegations. FWAG refers to an apparent attempt to "cancel" FWAG's shares, but it does not contend that its shares were actually cancelled.[1] Von Welczeck and Lo discuss "settlement negotiations," but the document they provide in support shows that those negotiations concerned a *different* dispute between them and Plaintiff, and that their 2004 fraud had yet to be uncovered. Defendants' focus on events other than the 2004 acquisition at issue is quite telling.

---

[1] Under previous management, Plaintiff took the position that certain shares of its stock were canceled. The Form 8-k filing at issue does not specify which shares. In any event, no such cancellation ever took effect, as the company's subsequent SEC filings show.

1

## I. PLAINTIFF HAS SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS OR A FAIR CHANCE OF SUCCESS ON THE MERITS.

FWAG's arguments concerning the merits of Plaintiff's claims are flawed. Plaintiff has indeed shown probable success on the merits. At the very least, Plaintiff has shown a "fair chance of success on the merits," as required by the second alternative test for temporary injunctive relief. In fact, while FWAG raises several erroneous arguments concerning Plaintiff's claims against FWAG, it ignores that Plaintiff is entitled to rescission if Plaintiff was defrauded by *any* of the Defendants.

### A. Plaintiff's Securities Fraud Claims Are Not Time-Barred

FWAG argues that Plaintiff's federal and state securities fraud claims are time-barred. FWAG does not argue, however, that Plaintiff's common law fraud claim is time-barred. Plaintiff bases its common law fraud claim on the same allegations and evidence as its claims under the securities laws, and its seeks rescission and restitution as a remedy for both sets of claims. Thus, for the Court's present purpose—determining whether Plaintiff stands a fair chance of succeeding on *any* of its claims seeking rescission—the Court need not even consider FWAG's limitations argument.

The Court should also disregard FWAG's timeliness argument because it requires a detailed fact inquiry inappropriate for this stage of the proceedings. The limitations period for securities fraud claims begins to run when the plaintiff "discovers" the facts constituting the alleged fraud. 28 U.S.C. § 1658(b). "Inquiry notice" alone, however, does not trigger the limitations period, as FWAG argues. Rather, the Ninth Circuit applies a "notice-plus-reasonable-diligence standard" and asks when, *after* inquiry notice, "the investor, in the exercise of reasonable diligence, should have discovered the facts constituting the alleged fraud." *Betz v. Trainer Wortham & Co., Inc.*, -- F.3d --, 2007 WL 1377613, at *5 (9th Cir. May 11, 2007). These fact-intensive determinations cannot be made on this record. *See Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 879 (9th Cir. 1984) ("The question of what a reasonably prudent investor should have known is particularly suited to a jury determination.").

PSI CORPORATION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER

Even if the Court considered FWAG's limitations argument, the argument does not withstand scrutiny. For FWAG to prove as it argues that, as a matter of law, Plaintiff had both inquiry notice and sufficient time to discover the relevant facts before June 1, 2005, it faces a considerable burden. "Under the notice-plus-reasonable-diligence standard we apply to securities fraud claims, the defendant bears a considerable burden in demonstrating, at the summary judgment stage, that the plaintiff's claim is time barred." *Betz*, 2007 WL 1377613, at *6. FWAG has not met that burden. FWAG argues that the truth of Defendant's fraud was publicly disclosed in March 2005.[2] As FWAG also admits, however, Defendants Von Welczeck and Lo *controlled* Plaintiff until May 1, 2006. "[T]he adverse domination doctrine tolls the statute of limitations for a corporation's cause of action against its directors while the directors control the corporation." *Mosesian*, 727 F.2d at 879. Von Welczeck was Plaintiff's CEO, and Lo was its CFO. Between them, Defendants owned 75% of Plaintiff's stock. FWAG, Lo, and von Welczeck also occupied three seats on Plaintiff's board. Plaintiff's original directors only remained on the board with Defendants until June 16, 2005—less than three months after, according to FWAG, the facts of fraud became discoverable. Their replacements were *more* FWAG representatives, including FWAG's own Chief Operating Officer, Andreas Stutz. This gave Defendants majority control of Plaintiff's board of directors.

That Mr. Esrine, disenfranchised by Defendants' fraud, could have brought a derivative suit, is irrelevant to determining whether *Plaintiff* could have brought suit. *RTC v. Fleischer*, 890 F. Supp. 972, 976-79 (D. Kan. 1995) (holding that the limitations period does not begin to run, regardless of shareholder knowledge, until there exists a disinterested majority of nonculpable directors). The possibility of a derivative suit does not affect the application of the adverse domination doctrine. Rather, the question is whether an informed director or shareholder "could have induced *the corporation* to sue." *Int'l R'ways v. United Fruit Co.*, 373 F.2d 408, 414 (2d Cir. 1967); *see id.* at 414015 (determining whether a demand on the board would "have been fruitless").

---

[2]   FWAG's "public disclosure" argument, even were it meritorious, does not apply to each of Defendants' fraudulent representations and omissions. For example, with respect to FWAG's representation that it did not intend to distribute Plaintiff's stock, FWAG itself argues that Plaintiff discovered the falsity of that representation in April 2006.

3

PSI CORPORATION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER

During most of the time at issue, Plaintiff's board was dominated by Messrs. von Welczeck, Lo, Trox and Stutz. Plaintiff certainly has raised serious questions as to whether a demand on those gentlemen to sue themselves would have been fruitless.

### B. Plaintiff's Fraud Claims—Against All Defendants—Are Likely To Succeed And Raise Serious Questions.

#### 1. FWAG's own direct statements were false when made.

FWAG next argues that Plaintiff fails to meet the "merits" element of either of the alternative tests for injunctive relief, because Plaintiff has not sufficiently shown that FWAG's misstatements were false when made. This argument, however, ignores the current posture and the purpose of Plaintiff's motion. Plaintiff seeks temporary injunctive relief to protect its right to rescission. That right accrues whether Plaintiff was defrauded by all Defendants or just one. For example, if Plaintiff succeeds only on its claims against Lo, it will be entitled to rescind the entire Share Exchange Agreement. Thus, temporary injunctive relief is necessary as to all Defendants—even Nominal Defendants—to prevent the destruction of that remedy. By focusing on whether FWAG committed fraud, FWAG misses the point.

Nevertheless, FWAG *did* commit fraud. To use the example selected by FWAG (and ignoring FWAG's responsibility for FWI's statements), on December 10, 2004, FWAG (through Mr. Trox and Mr. Stutz) represented that it was not acquiring Plaintiff's stock for resale. *Less than two months later*, on February 2, 2005, FWAG actually began *closing* agreements to distribute Plaintiff's stock to other investors. (D.I. 17 (Trox Decl. ¶ 11.)) Plaintiff may prove fraud by circumstantial evidence; in most cases it is the only evidence available. *Hart v. Browne*, 163 Cal. Rptr. 356, 361 (Cal. App. 1980). That FWAG actually consummated a sophisticated distribution of Plaintiff's stock just weeks after representing that it would not do so is very strong evidence that its representation was false.[3]

---

[3] To make matters worse, FWAG now admits that it used the proceeds of this distribution of Plaintiff's stock to loan money to Plaintiff, in exchange for *more* stock, at prices well below market. (FWAG's Br. at 4–5.)

4

### 2. FWAG Is Responsible For Statements Uttered By Others That Were False When Made.

FWAG's argument that Lo's statements were not false is equally meritless.[4] Moreover, FWAG ignores that FWI also made statements that were false, for which FWAG is responsible as a "control person" of FWI and as a function of its conspiracy with Defendants. *See infra* Part I.B.3.

Contrary to FWAG's conclusory arguments, there already is ample evidence that these statements were false when made. The following list includes just a few examples.

- On December 10, 2004, FWI, von Welczeck, and Lo certified, in writing, that the financial condition of FWI was consistent with the financial statements delivered to Plaintiff for FWI's year ended 2002, year ended 2003, and half-year ended June 30, 2004. (See Pl.'s Opening Br. at Ex. C §§ 3.5 6.1 and at Ex. F.) Those statements reflected the FWI was solvent and had assets in balance with its liabilities. As is admitted in by the financial statements filed by von Welczeck and Lo *only after* they took control of Plaintiff, which cover the ten-month period that ended over a month *before* December 10, 2004, FWI was insolvent, with liabilities nearly *double* the size of its assets. (*Id.* at Ex. H.)[5]

- On October 6, 2004, after the end of FWI's third quarter, Lo sent to Plaintiff FWI's "Q3 2004 Financial Update." This document stated that, as of September 30, 2004 FWI *already had earned* close to $2.1 million in revenue, had incurred only $730,425 in operating expenses, and was profitable. (*Id.* at Ex. B ¶ 25.) Again, however, the financial statements filed by Lo and von Welczeck *after* they gained control show that FWI did not even earn $2.1 million in revenue by October 31, 2004. (*Id.* at Ex. H.) If FWI did not earn $2.1 million by October 31, 2004, it certainly

---

[4] FWAG also argues that it cannot be held responsible for Lo's statements. (FWAG's Br. at 10-11.) FWAG forgets, however, that Lo made the statements at issue on behalf of FWI. As a "control person" of FWI, FWAG is responsible for FWI's fraud. *See infra* Part I.B.3. Moreover, Lo consistently represented that he spoke for the "FWI team" and for the other selling shareholders. (Pl.'s Opening Br. Ex. B ¶ 11.) FWAG also forgets that it formed a conspiracy with Lo and the other Defendants to use fraud to effect the transaction with Plaintiff. (Compl. ¶¶ 100.)

[5] Given this drastic difference between what Defendants warranted Plaitniff would receive and what Plaintiff actually received, the Court should reject FWAG's unexplained proclamation that "failure of consideration" is a "clearly insupportable" ground for rescission. (FWAG's Br. at 1.)

5

**PSI CORPORATION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER**

did not earn $2.1 million by September 30, 2004, and FWI must have known as much or recklessly disregarded the truth when it represented that it had. Moreover, those same public financial statements show that, as of October 31, 2004 (just days after release of this "Financial Update"), FWI had incurred nearly $1.2 million in operating expenses and was operating at a significant loss. (*See id.* at Ex. H.) Unless FWI nearly doubled its year-to-date operating expenses in 25 days, its October 2004 "Financial Update" was false, and Defendants must have known as much or acted recklessly.[6]

- On December 10, 2004, FWI, FWAG, Lo, and von Welczeck certified and represented that FWI had not incurred any individual liabilities since June 30, 2004 in excess of $25,000, had operated FWI as usual, and had continued to pay its accounts payable. (*Id.* at Ex. C §§ 3.6, 6.1, 6.2, 8.1 and at Ex. F.) As of the time Plaintiff acquired FWI, however, Defendants had caused FWI to incur substantial liabilities that were never disclosed to Plaintiff. For example, Defendants deliberately concealed the fact that they had not paid for the services of FWI's own merger counsel, and they deceitfully delivered FWI to Plaintiff encumbered by that liability. (*See id.* at Ex. B ¶ 34.)

The apparent falsity of these statements has nothing to do with "hindsight."[7]

### 3. Plaintiff has produced sufficient evidence to support probable success on its theory that FWAG was a control person of FWI.

FWAG argues that was not a "control person" of FWI, such that it can be held liable for FWI's misstatements under Section 20(a). As FWAG concedes, however, determining whether one

---

[6] If FWI did double its year-to-date operating expenses in just 25 days, that would constitute a violation of FWI's, FWAG's, Lo's, and von Welczeck's written covenant that FWI would be operated in the usual course of business prior to the closing. (*Id.* at Ex. C § 8.1.)

[7] This list does not even include Lo's and FWI's many baseless financial projections. Financial projections, when made without a reasonable basis, constitute factual misstatements. *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996). For example, on August 30, 2004, Lo and FWI represented that FWI "was on pace" to earn more than $1 million in revenue for the third quarter, which was already two-thirds complete. (Pl.'s Opening Br. at Ex. B ¶ 24.) As Lo, von Welczeck, and FWI would later reveal, FWI only earned approximately $1 million in revenue *during the entire second half of 2004.* (*See* Ex. H; Ex. I.)

6

is a "control person" is an "intensely factual question." (FWAG's Answering Brief at p. 13 (citing *Howard v. Everex Sys., Inc.*, 228 F.2d 1057, 1065 (9th Cir. 2000).) "Control" may be established by showing that FWAG had "some indirect means of discipline or influence" over FWI. *First Interstate Bank of Denver, N.A. v. Pring*, 969 F.2d 891, 896 (10th Cir. 1992). "A showing of 'actual' or 'culpable' participation is not required." *Id.* at 897; *In re Stat-Tech Securities Litig.*, 905 F. Supp. 1416, 1429 (D. Colo. 1995).

Plaintiff's evidence is hardly "scant." FWAG owned 100% of FWI until 2002. It retained 30% of the stock after 2002 and was *one of two shareholders* in FWI at the time of the Share Exchange Agreement. Its CEO was one of three FWI directors. The only other shareholder, and one of the two other directors, was Defendant von Welczeck, FWAG's former employee, to whom it had sold 70% of the company for little consideration. (*See* Pl.'s Opening Br. at Ex. B ¶ 5.) FWAG clearly retained influence over von Welczeck—shortly after the closing, von Welczeck transferred 1,529,824 shares of Plaintiff's stock to FWAG, in satisfaction of "deferred payment obligations" owed to FWAG. (D.I. 16 – Hlly Decl. at Ex. 6.) At the time of the fraud, FWAG was conducting "related party transactions" with FWI, including a lucrative licensing arrangement. (*See* Pl.'s Opening Br. at Ex. H, note 7 to financial statements.) FWAG even admits that it had so much influence over FWI that von Welczeck and Lo caused Plaintiff to issue additional stock to FWAG in 2005, at prices well below market. (FWAG's Br. at 4–5.)[8]

A court has held that similar facts actually would be sufficient to *prove* "control person" liability:

> For example, WCG and WCG's officers remained under the "control" of WMB even after the spin-off due to their interlocking relationships, the numerous and continuing financial transactions between WMB and WCG, and the fact that WMB exerted its domination and control over WCG as demonstrated by its actions prior to WCG's bankruptcy. Indeed, many of the same officers of WCG prior to the spin-off

---

[8] For example, on June 16, 2005, FWAG exchanged $550,000 in debt for 2,419,384 additional shares. (D.I. 16 – Holly Decl. at Ex 9.) In other words, FWAG purchased over two million shares at approximately 23 cents a share, at a time when the market price for Plaintiff's stock was 40 cents per share. (*See* Ex. A.)

7

> remained as officers of WCG even after the spin-off. Many of these WCG officers had long tenures with WMB . . . . Furthermore, prior to the spin-off, many of these WCG officers allegedly owed large debts to WMB . . . .

*In re Williams Securities Litig.*, 339 F. Supp. 2d 1206, 1237-38 (N.D. Okla. 2003). Accordingly, under similar facts, Plaintiff certainly has shown a probability of success on this issue.

## II. FWAG, VON WELCZECK, AND LO ADMIT THAT PLAINTIFF WILL SUFFER IRREPARABLE HARM WITHOUT TEMPORARY INJUNCTIVE RELIEF, AND THE BALANCE OF HARDSHIPS TIPS IN PLAINTIFF'S FAVOR.

FWAG, von Welczeck, and Lo argue valiantly that Plaintiff's alleged "delay" in seeking injunctive relief reveals that Plaintiff is not faced with immediate and irreparable harm. This argument is nothing more than a red herring. FWAG and von Welczeck readily *admit* that, absent an order maintaining the *status quo pendente elite*, they will take steps to sell, transfer, and encumber the very stock that Plaintiff seeks to recover from them in this action. (*See* FWAG's Br. at 15–16; von Welczeck & Lo's Br at 6.) FWAG claims an urgent need to distribute its shares, and it has brought a lawsuit to further its effort to do so. Welxzeck concedes that the regularly sells his shares and intends to continue. Indeed, the very fact that FWAG, Lo, and von Welczeck retained counsel on an emergency basis, just to contest an order temporarily preventing them from selling Plaintiff's stock, itself demonstrates the imminent threat. Thus, whether or not Plaintiff delayed in bringing this motion, there is no dispute that, absent temporary injunctive relief, Defendants will take steps that thwart this Court's ability to grant the relief sought by Plaintiff.

FWAG does not contest Plaintiff's showing that this injury would be irreparable. (*See* Pl.'s Openng Br. at 21.) Von Welczeck and Lo do, but their argument only proves the opposite. Von Welczeck insists that Plaintiff could recover damages from him, in lieu of his stock. (Von Welczeck's and Lo's Br. at 5.) In the same breath, however, he admits that the shares at issue "constitute the vast majority of my net worth." (*Id.* at Von Welczeck Decl. ¶ 7.) Thus, even if damages were an adequate replacement for Plaintiff's shares, Von Welczeck admits that Plaintiff will never be able to recover damages from him. Von Welczeck's and Lo's opposition only further shows the irreparability of the imminent harm faced by Plaintiff.

8

Finally, Plaintiff did not inexcusably delay in bringing this action. The Rule 144 restrictions on the stock at issue expired at the end of 2006 (these restrictions apparently did not stop FWAG from distributing the stock to third-parties in February 2005). At that time, Plaintiff's management was changing hands. The new, current management undertook to investigate the facts concerning the company's various previous transactions, including the transaction at issue in this case. This investigation required the retention of forensic accountants, a search and review of reams of documents, and the locating and interviewing of witnesses. Plaintiff acted as quickly as was responsibly possible.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court enter an order enjoining Defendants Alexander von Welczeck, Henry Lo, Michael Draper, Friendlyway AG, Karl Johannsmeier, Pacific Capsource, Inc. and Derma Plus, Inc. from selling, assigning or transferring, in any manner, their shares of Plaintiff's stock.

Dated: June 8, 2007

by David A. Felice  
Daniel D. Harshman  
Daniel D. Harshman (SBN# 177139)  
COZEN O'CONNOR  
425 California Street, 24th Floor  
San Francisco, CA 94104  
E-mail: dharshman@cozen.com  
Telephone: (415) 617-6100  
Facsimile: (415) 617-6101  

*Of Counsel:*  
Richard J. Bortnick  
George M. Gowen III  
COZEN O'CONNOR  
1900 Market Street  
Philadelphia, PA 19103  
215.665.2000 (tel.)  
215.665.2013 (fax)  
ggowen@cozen.com  

*Attorneys for Plaintiff*  
*Plaintiff Corporation*

9

# *<u>Exhibit A</u>*

Yahoo!   New User? Sign Up   Sign In   Help

# YAHOO! FINANCE

Dow ↑ 0.30% Nasdaq ↑ 0.30%        Friday, June 8, 2007, 9:58AM ET - **U.S. Markets close in 6 hour**

Enter Symbol(s)   [ GET QUOTES ]   Symbol Lookup   Finance Search

## PSI Corporation (PSCP.PK)                                   On Jun 5: **0.0650** 0.0



### Historical Prices                    Get **Historical Prices** for:   [ GO ]

**SET DATE RANGE**

**Start Date:** Jun  01  2005    Eg. Jan 1, 2003    ⦿ Daily
**End Date:**   Jun  30  2005                     ○ Weekly
                                                  ○ Monthly
                                                  ○ Dividends Only

[ Get Prices ]

First | Prev | Next | Last

**PRICES**

| Date | Open | High | Low | Close | Volume | Adj Close* |
|---|---|---|---|---|---|---|
| 30-Jun-05 | 0.35 | 0.35 | 0.35 | 0.35 | 0 | 0.35 |
| 29-Jun-05 | 0.40 | 0.40 | 0.30 | 0.35 | 41,100 | 0.35 |
| 28-Jun-05 | 0.40 | 0.40 | 0.40 | 0.40 | 0 | 0.40 |
| 27-Jun-05 | 0.40 | 0.40 | 0.40 | 0.40 | 100 | 0.40 |
| 24-Jun-05 | 0.45 | 0.45 | 0.45 | 0.45 | 0 | 0.45 |
| 23-Jun-05 | 0.45 | 0.45 | 0.45 | 0.45 | 5,000 | 0.45 |
| 22-Jun-05 | 0.50 | 0.50 | 0.50 | 0.50 | 0 | 0.50 |
| 21-Jun-05 | 0.50 | 0.50 | 0.50 | 0.50 | 5,000 | 0.50 |
| 20-Jun-05 | 0.40 | 0.50 | 0.40 | 0.50 | 5,100 | 0.50 |
| 17-Jun-05 | 0.46 | 0.50 | 0.41 | 0.41 | 40,000 | 0.41 |
| 16-Jun-05 | 0.35 | 0.40 | 0.35 | 0.40 | 6,000 | 0.40 |
| 15-Jun-05 | 0.30 | 0.30 | 0.30 | 0.30 | 0 | 0.30 |
| 14-Jun-05 | 0.33 | 0.33 | 0.30 | 0.30 | 7,700 | 0.30 |
| 13-Jun-05 | 0.33 | 0.33 | 0.33 | 0.33 | 1,700 | 0.33 |
| 10-Jun-05 | 0.33 | 0.33 | 0.33 | 0.33 | 4,000 | 0.33 |

ADVERTISEMENT

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 9-Jun-05 | 0.33 | 0.33 | 0.33 | 0.33 | 0 | 0.33 |
| 8-Jun-05 | 0.33 | 0.33 | 0.33 | 0.33 | 0 | 0.33 |
| 7-Jun-05 | 0.33 | 0.33 | 0.33 | 0.33 | 0 | 0.33 |
| 6-Jun-05 | 0.33 | 0.33 | 0.33 | 0.33 | 0 | 0.33 |
| 3-Jun-05 | 0.33 | 0.33 | 0.33 | 0.33 | 0 | 0.33 |
| 2-Jun-05 | 0.33 | 0.33 | 0.33 | 0.33 | 0 | 0.33 |
| 1-Jun-05 | 0.33 | 0.33 | 0.33 | 0.33 | 1,000 | 0.33 |

* Close price adjusted for dividends and splits.

First | Prev | Next | Last

Download To Spreadsheet



Add to Portfolio   Set Alert   Email to a Friend

Get **Historical Prices** for Another Symbol:   [GO] Symbol Lookup

- Stock Screener
- Splits
- Mergers & Acquisitions

Copyright © 2007 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright/IP Policy

**Quotes delayed**, except where indicated otherwise.
Delay times are 15 mins for NASDAQ, 20 mins for NYSE and Amex. See also delay times for other exchanges.

Historical chart data and daily updates provided by Commodity Systems, Inc. (CSI). International historical chart data and daily updates provided by Hemscott Americas. Fundamental company data provided by Capital IQ. Quotes and other information supplied by independent providers identified on the Yahoo! Finance partner page. Quotes are updated automatically, but will be turned off after 25 minutes of inactivity. Quotes are delayed at least 15 minutes. Real-Time continuous streaming quotes are available through our premium service. You may turn streaming quotes on or off. All information provided "as is" for informational purposes only, not intended for trading purposes or advice. Neither Yahoo! nor any of independent providers is

PSCP.PK: Historical Prices for PSI CORPORATION - Yahoo! Finance

Case 4:07-cv-02869-SBA    Document 20    Filed 06/08/2007    Page 16 of 17

Page 3 of 3

liable for any informational errors, incompleteness, or delays, or for any actions taken in reliance on information contained herein. By accessing the Yahoo! site, you agree not to redistribute the information found therein.

**CERTIFICATE OF SERVICE**

I, David A. Felice, do hereby certify that on June 8, 2007, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing to the following parties of record:

Harry Girard Lewis, Esquire
Cornerstone Law Group
595 Market Street, Suite 2360
San Francisco, CA  94105
(415) 625-5126
email:  hlewis@cornerlaw.com

Lawrence Andrew Weiss, Esquire
Heller, Ehrman, White & McAuliffe LLP
333 Bush Street
San Francisco, CA  94104-2878
(415) 772-6000
email:  lweiss@hewm.com

I further certify that copies of the foregoing were served upon the below-named parties via Federal Express:

Karl Heinz Johannsmeier
8 Blanding Avenue
Belvedere, CA  94920

Pacific Capsource, Inc.
2325 Jackson, No. 303
San Francisco, CA  94115

Henry Lo
2715 Scott Street
San Francisco, CA  94123

Derma Plus, Inc.
405 – 12th Avenue, No. 204
San Francisco, CA  94118

David A. Felice (*pro hac vice*)
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
E-mail: dfelice@cozen.com