1  Daniel D. Harshman (SBN# 177139)
2  Charles E. Wheeler (SBN #82915)
   Cozen O'Connor
3  425 California Street, Suite 2400
   San Francisco, CA 94104
4  Telephone: (415) 617-6100
   Facsimile: (415) 617-6101
5  E-mail: dharshman@cozen.com
          cwheeler@cozen.com
6
7  Attorneys for Plaintiff
   PSI Corporation
8
9             IN THE UNITED STATES DISTRICT COURT
10
11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12  PSI CORPORATION (f/k/a/ FRIENDLYWAY           Case No. C 07-02869 SBA
    CORPORATION, f/k/a BIOFARM, INC.),
13
14                        Plaintiff,             **PSI CORPORATION'S MEMORANDUM
              vs.                                 OF POINTS AND AUTHORITIES IN
15                                                SUPPORT OF ITS MOTION TO DISMISS
    ALEXANDER VON WELCZECK, HENRY LO,             DEFENDANTS VON WELCZECK'S AND
16  MICHAEL DRAPER, and FRIENDLYWAY               LO'S CROSS-COMPLAINT**
    AG,
17
18                        Defendants.            **JURY TRIAL DEMANDED**

19                                               Date: September 11, 2007
                                                 Time: 1:00 pm
20                                               Dept.: United States District Court, Oakland
                                                 Division, Courtroom 3
21  FRIENDLYWAY, INC., KARL
    JOHANNSMEIER, PACIFIC CAPSOURCE,             **PART I OF V**
22  INC., and DERMA PLUS, INC.,
23
                          Nominal Defendants.
24
25  ///
26  ///
27
28
    _____
       PSI CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT ON
    ITS MOTION TO DISMISS DEFENDANTS VON WELCZECK'S AND LO'S CROSS-COMPLAINT
                          CASE NO. C 07-02869 SBA

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      INTRODUCTION ................................................................................................. 1

II.     NATURE AND STAGE OF PROCEEDINGS ................................................... 2

III.    STATEMENT OF FACTS ................................................................................... 3

         A.      DEFENDANTS NEGOTIATE THE MERGER OF FWI INTO PSI. ............................. 4

         B.      DEFENDANTS CREATE THE LIABILITY
                THAT THEY NOW ALLEGE PSI FACES. ................................................ 5

IV.    STATEMENT OF ISSUES TO BE DECIDED ................................................. 6

V.     ARGUMENT .......................................................................................................... 7

         A.      DEFENDANTS' BREACH OF CONTRACT CLAIM IS
                TIME-BARRED AS THE CONTRACTUAL LIMITATIONS
                PERIOD SET FORTH IN THE SEA EXPIRED IN DECEMBER 2006. .................... 7

         B.      DEFENDANTS' CLAIM FOR BREACH OF A
                GUARANTEE OBLIGATION SHOULD BE DISMISSED. ........................................ 10

         C.      DEFENDANTS' UNJUST ENRICHMENT CLAIM IS
                PREEMPTED BY THE AGREEMENTS AND OBLIGATIONS
                REFERRED TO IN THEIR COUNTERCLAIM. .................................................. 12

VI.    CONCLUSION ..................................................................................................... 13

i

# TABLE OF AUTHORITIES

**Cases**

*Barron v. Reich,*
  13 F.3d 1370 (9th Cir. 1994) ............................................................................ 4

*Branch v. Tunnell,*
  14 F.3d 449 (9th Cir. 1994) ............................................................................ 3

*City of Oakland v. Comcast Corp.,*
  2007 WL 518868 (N.D. Cal. 2007) ............................................................ 14, 15

*Conley v. Gibson,*
  355 U.S. 41 (1957) ............................................................................ 8

*Diaz v. Carlson,*
  5 F. Supp. 2d 809 (C.D. Cal. 1997) ............................................................ 9

*Emrich v. Touche Ross & Co.,*
  846 F.2d 1190 (9th Cir. 1988) ............................................................ 4

*Everest & Jennings, Inc. v. Am. Motorists Ins. Co.,*
  23 F.3d 226 (9th Cir. 1994) ............................................................ 8

*Han v. Mobil Oil Corp.,*
  73 F.3d 872 (9th Cir. 1995) ............................................................ 9, 10

*In re Calpine Corp. Sec. Litig.,*
  288 F. Supp. 2d 1054 (N.D. Cal. 2003) ............................................................ 3, 8

*In re Copper Mountain Sec. Litig.,*
  311 F. Supp. 2d 857 (N.D. Cal. 2004) ............................................................ 4

*Jenkins v. McKeithen,*
  395 U.S. 411 (1969) ............................................................ 8

*Johnson v. Knowles,*
  113 F.3d 1114 (9th Cir. 1997) ............................................................ 8

*Lincoln Nat'l Corp. v. Takecare, Inc.,*
  1998 WL 281290 (N.D. Cal. May 11, 1998) ............................................................ 12

*McGlinchy v. Shell Chem. Co.,*
  845 F.2d 802 (9th Cir. 1988) ............................................................ 9

ii

1

2

*Mike Nelson Co., Inc. v. Hathaway,*
    2005 WL 2179310 (E.D. Cal. 2005)..................................................................15

3

4

*Miranda v. Clark County, Nev.,*
    279 F.3d 1102 (9th Cir. 2002) .......................................................................9

5

6

*Moffat County State Bank v. Told,*
    780 P.2d 11 (Colo. App. 1989) ...................................................................13

7

8

*Pentax Corp. v. Boyd,*
    904 P.2d 1024 (Nev. 1995)..........................................................................13

9

*Philips Medical Capital, LLC v. Medical Insights Diagnostics Center, Inc.,*
    471 F. Supp. 2d 1035 (N.D. Cal. 2007) ......................................................8

10

11

*PSI Corp. v. Welczeck,*
    No. C 07-02869-SBA, slip op. at 10 (N.D. Cal. June 8, 2007) ...................11

12

13

*Quadro v. Widemann,*
    237 P. 756 (Cal. App. 1 Dist. 1925).............................................................13

14

*Seagate Tech. LLC v. Dalian China Express Intern. Corp.,*
    169 F. Supp. 2d 1146 (N.D. Cal. 2001) ......................................................10

15

16

*Sousa ex rel. Will of Sousa v. Unilab Corp. Class II (Non-Exempt) Members Group Benefit Plan,*
    252 F. Supp. 2d 1046  (E.D. Cal. 2002) ......................................................10

17

18

*United States v. Ritchie,*
    342 F.3d 903 (9th Cir. 2003) .......................................................................3

19

20

*Weatherly v. Universal Music Pub. Group,*
    23 Ca. Rptr. 3d 157 (Cal. App. 2 Dist. 2004) ............................................11

21

**Statutes**

22

Cal. Civ. Code § 1624(a)(2)..................................................................................11

23

Colo. Rev. Stat. § 38-10-112(1)(b) .......................................................................11

24

Nev. Rev. Stat. § 111.220 ......................................................................................11

25

26

27

iii

28

# I.     <u>INTRODUCTION</u>

In December 2004, Defendants Alexander von Welczeck ("Welczeck") and Henry Lo ("Lo") took their failing company, friendlyway, Inc. ("FWI"), "public." They did this by convincing an already-public company, Plaintiff PSI Corporation ("PSI"), which was then known as Biofarm, Inc., to acquire the stock of FWI. They convinced Biofarm's shareholders to do so by misrepresenting the financial condition of FWI. Their fraud was successful, and, on December 10, 2004, Welczeck and Lo ("Defendants") took control of PSI.

They then proceeded to run PSI into the ground. The failing nature of FWI's business only grew worse—by the end of the first full quarter after their assumption of control, the company's year-over-year net loss had increased, and its liabilities were now more than two-and-a-half times its assets. By October 2005, the net loss exceeded $2.2 million, and they had accumulated over $3.1 million in liabilities, compared to $686,313 in assets. By March 2006, Welczeck and Lo publicly acknowledged their "substantial doubt about the [PSI's] ability to continue as a going concern." These dire financial conditions forced Welczeck and Lo to seek additional financing and to infuse new operations into PSI, even if that meant losing control of PSI. On May 2, 2006, they caused PSI to acquire the stock of Pantel Systems, Inc.("Pantel"). Following the form through which they had gained control of PSI 17 months earlier, Welczeck and Lo turned control of PSI over to Pantel's only shareholder.

Now, however, after saddling PSI with crippling losses, and after passing off the near-ruined company to new owners, Welczeck and Lo have sued PSI for losses *PSI* supposedly caused *them*. What's worse, the debts PSI allegedly owes Welczeck and Lo are debts that were incurred when Welczeck and Lo controlled PSI, and which they apparently did not cause PSI to pay. Welczeck's and Lo's claims against PSI are a mere sideshow to distract attention from the fraud they perpetrated on PSI's original shareholders in 2004, which PSI commenced this action to address.

1

Welczeck's and Lo's claims also are substantively meritless, and most are flawed on their face. In fact, Counts Two, Three and Four of their Cross-Complaint (their "Counterclaim") should be dismissed because those counts clearly fail to state a claim upon which relief can be granted. Specifically, Defendants' claim for breach of the August 2004 Share Exchange Agreement ("SEA") is time-barred by the unambiguous terms of the SEA itself. Defendants' claim that PSI, as part of the 2006 transaction with Pantel, agreed to assume certain guarantee obligations owed by Welczeck's parents is also clearly meritless because it is precluded by the written terms of that transaction and because Defendants have not pointed to a writing that would satisfy the Statute of Frauds. Even if Defendants were to satisfy the Statute of Frauds, they have no standing to assert such a claim. Finally, Defendants' claim for unjust enrichment should be dismissed because it is wholly displaced by the very contracts to which Defendants refer.

## II.    NATURE AND STAGE OF PROCEEDINGS

PSI filed its Complaint on June 1, 2007. [Docket No. 1] The Complaint named four (4) Defendants and four (4) Nominal Defendants. The Defendants include: (i) Welczeck; (ii) Lo; (iii) Michael Draper; and (iv) friendlyway AG ("FWAG"). The Nominal Defendants include: (i) FWI; (ii) Karl Johannsmeier; (iii) Pacific Capsource, Inc.; and (iv) Derma Plus, Inc. PSI's Complaint contains eight (8) causes of action, including: (i) violation of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"); (ii) violation of § 20(a) of the Exchange Act; (iii) rescission under § 29(b) of the Exchange Act; (iv) violation of § 25401 of the California Corporation Code; (v) fraudulent misrepresentation; (vi) breach of contract; (vii) civil conspiracy; and (viii) injunctive relief.

On June 5, 2007, PSI presented its motion for a temporary restraining order seeking to preliminarily restrain the Defendants from selling, transferring or otherwise encumbering their PSI stock until a full adjudication of PSI's claims could take place. [Docket No. 6] On June 7, 2007, pursuant to the Court's scheduling order on PSI's motion for a temporary restraining order, FWAG, Welczeck and Lo either served or filed and served their opposition papers to PSI's

2

motion. [Docket Nos. 15, 19]  On June 8, 2007, PSI filed its reply memorandum in further

support of its motion. [Docket No. 20]  On that same day, the Court denied PSI's motion for a

temporary restraining order. [Docket No. 21]

On June 26, 2007, Welczeck and Lo filed their Answers and Counterclaim in response to

Plaintiff's Complaint. [Docket Nos. 26-28]  On July 16, 2007, PSI filed its motion to dismiss

Counts Two, Three and Four of Defendants Welczeck's and Lo's Counterclaim.  This is PSI's

opening memorandum in support of its motion to dismiss.

## III.    STATEMENT OF FACTS

PSI derived the following statement of facts from Welczeck's and Lo's Counterclaim

[Docket No. 28] and from those portions of PSI's Complaint [Docket No. 1] that were admitted

by Defendants in their Answers [Docket Nos. 26, 27].  This statement of facts also stems from

PSI's Form 10-KSB for the twelve-moth period ended October 31, 2005, which Defendants

caused PSI to file with the Securities and Exchange Commission ("SEC") in March 2006.  This

statement of facts also draws from the written contracts referred to in Welczeck's and Lo's

Counterclaim.  When deciding a motion to dismiss, the Court is generally confined to

consideration of the allegations in the pleadings, but "a document is not 'outside' the complaint

if the complaint specifically refers to the document and if its authenticity is not questioned."

*Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir. 1994).  Moreover, the Court may consider

documents attached to the operative pleadings and documents incorporated by reference in the

pleadings.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk v.

CNN*, 284 F.3d 977, 980 (9th Cir. 2002)).  The Court also may consider matters of which it may

properly take judicial notice without converting the motion to dismiss to one for summary

judgment.  *In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1074 (N.D. Cal. 2003); *see

also Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir. 1994) (records and reports of administrative

bodies); *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1198 (9th Cir. 1988) (court records); *In

re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 863 (N.D. Cal. 2004) (SEC filings).

3

## A.     DEFENDANTS NEGOTIATE THE MERGER OF FWI INTO PSI.

FWI was incorporated in 2000 as a privately-held company, wholly-owned by Welczeck's former employer, FWAG. (Compl. ¶ 20; Answers ¶ 20.) In 2002, Welczeck – FWI's Chief Executive Officer – bought 70% of FWI's stock from FWAG. (*Id.*) In 2004, Lo became FWI's Chief Financial Officer. (*Id.* ¶ 21.) By 2004, FWI's business was failing. Welczeck and Lo concluded that, to resuscitate the business, they must gain access to public financing. (*Id.* ¶ 22.) In particular, they sought a "reverse merger" with a public "shell" company, where FWI would become a subsidiary of the "shell," and its assets and operations would become those of the once-empty "shell." (*Id.*)

At the time, PSI was a public "shell" company.[1] (*Id.* ¶ 23.) Following several months of negotiations, on August 13, 2004, PSI entered into the SEA with FWAG, Welczeck, and FWI. (*Id.* ¶ 37.) The SEA provided that Plaintiff would acquire all of FWI's stock from Welczeck and FWAG, in exchange for 18,000,000 new shares of PSI's stock. (*Id.*) In the SEA, the parties made several representations and warranties, including representations about the capitalization and financial condition of PSI. The parties specifically agreed, however, that the representations, warranties, and agreements expressed in the SEA would only survive for two years after the acquisition provided for by the closing of the SEA. Specifically, the parties agreed to the following:

> 11.5 SURVIVAL. The representations, warranties, covenants and agreements made in this Agreement shall survive any investigation made by any party hereto and the closing of the transactions contemplated hereby for two years from the date of the Closing Date.

(Ex. 1, SEA § 11.5.) The closing of the acquisition occurred on December 10, 2004. (Countercl. ¶ 8.) According to Defendants, "on or about October 31, 2004,"—i.e., after the execution of the SEA but before the December 10, 2004 closing—PSI "repurchased 1,633,334 shares of its

---

[1]     After the merger closed, Plaintiff became known as friendlyway Corporation and moved its headquarters to San Francisco. In 2006, Plaintiff adopted its current name, PSI Corporation, and moved its headquarters to Colorado.

4

common stock from Welczeck," in exchange for a $367,500 note (i.e, for approximately $0.23 per share). (Countercl. ¶ 13.) The documents to which Defendants refer, however, refute that contention. According to the Schedule of Changes attached to the parties' Closing Agreement, it was FWI, not PSI, which redeemed 1,633,334 shares of *FWI* stock from Welczeck. The redemption occurred on August 20, 2004, and it was FWI which issued a $367,500 note to Welczeck. (Ex. 2, Closing Agr. Ex. B at 4, 5.)

**B.    DEFENDANTS CREATE THE LIABILITY THAT THEY NOW ALLEGE PSI FACES.**

FWAG, Welczeck and Lo took control of PSI's board of directors following the acquisition, with Welczeck being installed as the CEO and Lo as the CFO. (Compl. ¶ 51; Answers ¶ 51.) According to Defendants, after they gained control of PSI, they caused PSI to breach its obligations to the FWI shareholders under the SEA. In the SEA, PSI represented that, as of the time of the closing, its capitalization would include no more than 6,000,000 outstanding shares of stock. (Ex. 1, § 5.3.) According to Defendants, at the time of the December 10, 2004 Closing Agreement, PSI disclosed that its outstanding shares totaled 6,978,130. (Countercl. ¶ 18.) Defendants contend that the FWI shareholders were "therefore entitled to 2,934,930 additional shares of [PSI's] common stock pursuant to the terms of the SEA." (Countercl. ¶ 19.) Apparently, however, despite Defendants' control of PSI for 17 months after the accrual of this obligation to the FWI shareholders, they did not cause PSI to issue these new 2,934,930 shares to the FWI shareholders. Defendants do not explain why.

Defendants also allege that they caused PSI to enter into a loan transaction with Welczeck but failed to complete the transaction. In July 2005, Defendants caused PSI to assume the $367,500 note they had earlier caused FWI to issue to Welczeck. They did this by causing PSI to issue 454,545 shares of its own common stock to Welczeck in exchange for $200,000 of this note. (Countercl. ¶ 14.) They caused PSI to issue a new note to Welczeck for $194,113 in exchange for the remaining $167,500 of the original FWI note (plus accrued interest).

1

(Countercl. ¶ 14.)  Defendants do not explain whether PSI's board of directors approved these

2

transactions.  Moreover, Defendants apparently again failed to cause PSI to make good on its

3

alleged obligations.  Defendants maintain that PSI never issued Welczeck his 454,545 shares.

4

(Countercl. ¶ 16.)

5

        By the end of the first year of Defendants' first year in control of PSI, their unprofitable

6

operations had grown even less profitable, and they had all but ruined PSI.  By the end of

7

October 2005, their net loss exceeded $2.2 million, and they had accumulated over $3.1 million

8

in liabilities, compared to $686,313 in assets.  (*See* Ex. 3, Mar. 9, 2006 Form 10-KSB.)

9

Apparently, one of the mounting liabilities was a $50,000 line of credit, which had been

10

guaranteed by Welczeck's parents.  (Countercl. ¶ 23.)  By March 2006, Welczeck and Lo caused

11

PSI to disclose "substantial doubt about the [its] ability to continue as a going concern."  (*See*

12

Ex. 3, Mar. 9, 2006 Form 10-KSB.)  These dire financial conditions forced Welczeck and Lo to

13

seek additional financing and to infuse new operations into PSI, even if that meant losing control

14

of PSI.  On May 2, 2006, they caused PSI to acquire the stock of Pantel Systems, Inc.  (*See* Ex.

15

4, Apr. 27, 2006 Share Exchange Agr. (the "Pantel Agreement").)  Following the form through

16

which they had gained control of PSI 17 months earlier, Welczeck and Lo turned control of PSI

17

over to Pantel's shareholder, Kenneth Upcraft.

18

### IV.    STATEMENT OF ISSUES TO BE DECIDED

19

20

a)    Should Defendants' claim for breach of the SEA be dismissed, given the parties' agreement that any agreements made under the SEA would only survive until December 10, 2006 and given that Defendants' Counterclaims were first asserted on June 26, 2007?

21

22

23

b)    Should Defendants' claim for breach of an undisclosed guarantee agreement be dismissed, given that it is inherently illogical, is excluded by the terms of a written agreement, and does not satisfy the Statute of Frauds, and given that Defendants have no standing to raise it?

24

25

26

c)    Is Defendants' claim for unjust enrichment barred as being wholly displaced by the parties' written agreements and obligations?

27

6

28

# V. ARGUMENT

Counts Two Three, and Four of Defendants' Counterclaim should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6), because they fail to state a claim upon which relief could be granted. A motion to dismiss must be granted when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Johnson v. Knowles,* 113 F.3d 1114, 1117 (9th Cir. 1997). When assessing a motion to dismiss, the Court will construe the complaint in a light most favorable to the plaintiff, and all properly pleaded factual allegations will be taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. Am. Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). The Court, however, is not required to accept as true legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Philips Medical Capital, LLC v. Medical Insights Diagnostics Center, Inc.*, 471 F. Supp. 2d 1035, 1042 (N.D. Cal. 2007) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)). Additionally, the Court is not "required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1074 (N.D. Cal. 2003) (quoting *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998)). Indeed, "conclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim." *Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002); *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir. 1988) (recognizing that "conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim").

## A. DEFENDANTS' BREACH OF CONTRACT CLAIM IS TIME-BARRED AS THE CONTRACTUAL LIMITATIONS PERIOD SET FORTH IN THE SEA EXPIRED IN DECEMBER 2006.

In Count Two of the Counterclaim, Defendants claim that PSI breached an agreement in the SEA to issue additional stock to the FWI shareholders. (Countercl. ¶¶ 18 – 21.) This claim

7

should be dismissed, because it is time-barred by the very terms of the SEA.[2] Limitations arguments may be raised in a motion to dismiss where the facts on which such an argument is based are clear from the Complaint and the documents referred to therein. *Diaz v. Carlson*, 5 F. Supp. 2d 809, 815 (C.D. Cal. 1997).

The law of California is well-settled: parties can contractually agree to shorten the limitations for presenting claims, as long as the time allowed is reasonable. "California permits contracting parties to agree upon a shorter limitations period for bringing an action than that prescribed by statute, so long as the time allowed is reasonable." *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995) (citing *Tebbets v. Fidelity & Cas. Co.*, 99 P. 501, 502 (Cal. 1909); *Beeson v. Schloss*, 192 P. 292, 294 (Cal. 1920); *Ward v. System Auto Parks & Garages, Inc.*, 309 P.2d 577, 578 (Cal. App. Ct. 1957)); *Seagate Tech. LLC v. Dalian China Express Intern. Corp.*, 169 F. Supp. 2d 1146, 1159 (N.D. Cal. 2001) (recognizing that it is a "well-settled proposition of law that the parties to a contract may stipulate therein for a period of limitation, shorter than that fixed by the statute of limitations, and that such stipulation violates no principle of public policy, provided the period fixed be not so unreasonable as to show imposition or undue advantage in some way"); *Sousa ex rel. Will of Sousa v. Unilab Corp. Class II (Non-Exempt) Members Group Benefit Plan*, 252 F. Supp. 2d 1046, 1055 (E.D. Cal. 2002) (citing *Order of United Commercial Travelers v. Wolfe*, 331 U.S. 586, 608 (1947)).

Taking advantage of this ability, Welczeck, Lo, and PSI agreed that any claim for breach of the parties' agreements under the SEA would only survive for two years after the Closing Date. Specifically, the parties agreed that:

> The representations, warranties, covenants and agreements made in this Agreement shall survive any investigation made by any party hereto and the closing of the transactions contemplated hereby for two years from the date of the Closing Date.

---

[2]  Of course, Defendants lack standing to assert a claim for all the stock allegedly owed to all the "FWI shareholders." Defendants only have standing to assert a claim for that portion of the stock that could be owed to them, directly.

8

(Ex. 1, SEA § 11.5.) This two year limitations period established by the SEA is reasonable. *See, e.g., Han*, 73 F.3d at 877 (affirming a contractual limitations period of twelve (12) months as a reasonable limitation which generally manifests no undue advantage and no unfairness) (citing *Fageol Truck & Coach Co. v. Pacific Indem. Co.*, 117 P.2d 669, 672 (Cal. 1941); *Lawrence v. Western Mut. Ins. Co.*, 251 Cal. Rptr. 319, 322 (Cal. App. Ct. 1988)).

As a general proposition, a contractual limitations period (just like a statutory limitations period) may be tolled, under special circumstances. *Weatherly v. Universal Music Pub. Group*, 23 Ca. Rptr. 3d 157, 161 (Cal. App. 2 Dist. 2004). Defendants, however, have not alleged facts that prevent any tolling of the contractual limitations period. Defendants admit that they learned of their alleged claim as of December 10, 2004. (Countercl. ¶ 18 (noting that PSI disclosed prior to the Closing Date and through "subsequent SEC Filings that it had 6,978,130 outstanding shares of common stock, rather than the 6,000,000 shares disclosed to FWI in the SEA").) They also admit that they took control of PSI on December 10, 2004 and kept control for the next 17 months. (Compl. ¶ 51; Answers ¶ 51.) Nothing prevented Defendants from asserting their claim under the SEA within those 17 months or, for that matter, causing PSI to make good on its supposed obligation to issue more stock. Moreover, as Defendants admit, they did threaten to assert claims against PSI within the two year period. (*See* Defs. Welczeck's & Lo's Opp'n PSI's Mot. TRO at 3.)

Defendants admit in their Counterclaim that the Closing Date for the SEA was December 10, 2004. (Countercl. ¶ 8.) Pursuant to the plain terms of the SEA, Defendants were required to present their claim for breach of any of the agreements made under the SEA no later than December 10, 2006. *See PSI Corp. v. Welczeck*, No. C 07-02869-SBA, slip op. at 10 (N.D. Cal. June 8, 2007) [Docket No. 21] (reasoning that any claim by PSI for breach of the representations and warranties contain in the SEA would be time-barred as of December 10, 2006) (citing *Lincoln Nat'l Corp. v. Takecare, Inc.*, 1998 WL 281290, at 1, 3-6 (N.D. Cal. May 11, 1998).

9

Given the fact that the breach of contract claim contained in the Counterclaim was not filed until June 2007, the claim is time-barred and must be dismissed.

**B.    DEFENDANTS' CLAIM FOR BREACH OF A GUARANTEE OBLIGATION SHOULD BE DISMISSED.**

In Count Three of their Counterclaim, Defendants allege an inherently illogical and meritless claim. Specifically, they allege that, in connection with PSI's 2006 acquisition of Pantel System's, Inc., "Cross-Defendant agreed . . . to assume all liabilities of FW Corp," including, apparently, the $50,000 line of credit that had been guaranteed by Welczeck's parents. (Countercl. ¶¶ 23–24.) This story makes no sense. "Cross-Defendant," or PSI, and "FW Corp." *are the exact same company.* "Friendlyway Corporation" is simply one of PSI's old names, which it had when Defendants controlled PSI. The liability in question—the line of credit that Welczeck and Lo caused PSI to maintain through April 2006—was *already* PSI's liability at the time that it acquired the stock of Pantel Systems, Inc.

Moreover, while Defendants allege that "has PSI breached the merger agreements between [PSI] and Pantel by failing to assume the Line of Credit," (Countercl. ¶ 26), this contention is flatly refuted by the unambiguous terms of that very agreement. The Pantel Agreement does express an obligation on the part of PSI [then known as friendlyway Corporation] to assume liabilities, but only the liabilities of *Pantel.* (Ex. 4, Pantel Agr. § 1.2) The Pantel Agreement does not provide for PSI's assumption of any other liabilities. It does not provide for any person or entity to assume any of PSI's liabilities. It does not provide for any person or entity to release the guarantors of any of PSI's debts. The Pantel Agreement does provide, however, that it "constitute[s] the full and entire understanding and agreement among the parties with regard to the subjects hereof and thereof" and that "[n]o party shall be liable or bound to any other party in any manner with regard to the subjects hereof or thereof by any warranties, representations or covenants except as specifically set forth herein or therein." (*Id.* §

10

11.6.) Accordingly, Defendants cannot claim that PSI breached the Pantel Agreement by somehow failing to assume its own liability, guaranteed by Welczeck's parents.

Defendants' Count Three also fails to satisfy the Statute of Frauds, to the extent that it alleges that PSI somehow breached an obligation to take over Welczeck's parents' guaranty. The Statute of Frauds requires that such obligations be reduced to a writing. *Quadro v. Widemann*, 237 P. 756, 757 (Cal. App. 1 Dist. 1925); Cal. Civ. Code § 1624(a)(2)[3] (requiring that special promises to answer for the debt, default, or miscarriage of another be in writing); *Moffat County State Bank v. Told*, 780 P.2d 11, 12 (Colo. App. 1989) (recognizing that a "promise to act as a guarantor or surety of a debt for which an original debtor continues to be primarily liable is a collateral agreement which, under the statute of frauds, must be evidenced by a writing to be enforceable"); Colo. Rev. Stat. § 38-10-112(1)(b); *Pentax Corp. v. Boyd*, 904 P.2d 1024, 1026 (Nev. 1995) (holding that under Nevada law, "contracts of guarantee are subject to the statute of frauds"); Nev. Rev. Stat. § 111.220. Defendants appear to allege that PSI's guaranty obligation was expressed in the Pantel Agreement. As is demonstrated above, the Pantel Agreement expresses no such obligation. Defendants failed to attach or even allege any other writing, signed by PSI, whereby PSI agreed to guarantee the line of credit initially guaranteed by the Welczecks (as illogical as such an agreement would be). Thus, Defendants' Counterclaim fails on its face and must therefore be dismissed.

Finally, even assuming Defendants' allegations in Count Three to be true, Defendants lack standing to raise a claim that PSI breached an agreement to assume a liability guaranteed by Welczeck's parents. The only individuals who have standing to assert such a claim are Welczeck's parents. Even if there was a writing at either of the two focal points of this claim (*i.e.* the initial guarantee by Welczeck's parents or the alleged subsequent assumption of those guarantee obligations by PSI), Defendants lack standing to assert this claim as they were not

---

[3] Defendants have not alleged any facts that would suggest the exceptions enumerated in Cal. Civ. Code § 2794 are applicable.

11

party to nor were they intended to benefit from any such written undertakings. Indeed, Defendants were not parties to the Pantel Agreement nor have they alleged any factual basis that would suggest that they are third-party beneficiaries of the Pantel Agreement. As a result, Defendants have suffered no damages resulting from PSI's alleged failure to assume the guarantee obligations under a line of credit and, therefore, lack standing to assert such a claim in this litigation.

### C.   DEFENDANTS' UNJUST ENRICHMENT CLAIM IS PREEMPTED BY THE AGREEMENTS AND OBLIGATIONS REFERRED TO IN THEIR COUNTERCLAIM.

Defendants cannot, on one hand, allege that a single set of facts evidence their breach of contract claims and, on the other hand, allege that those same facts and circumstances give rise to an unjust enrichment claim. As pleaded, Defendants' breach of contract claim and unjust enrichment claims are mutually exclusive. As Defendants seek to redress alleged broken promises arising out of the SEA, a promissory note, and the Pantel Agreement, their unjust enrichment claim is wholly displaced by a claim for breach of contract.

Under California law, there "is no cause of action for unjust enrichment." *City of Oakland v. Comcast Corp.*, 2007 WL 518868, at *4 (N.D. Cal. 2007) (quoting *McKell v. Washington Mut., Inc.,* 142 Cal. App. 4th 1457, 1490, 49 Cal. Rptr. 3d 227 (2006)). Rather, unjust enrichment "is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust." *Id.* Based on this framework, however, "it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Id.* (quoting *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203, 51 Cal. Rptr. 2d 622 (1996)).

Here, the very basis of Defendants' unjust enrichment claim is that PSI "has failed to fulfill its contractual obligations to [Defendants]." (Countercl. ¶ 28.) Indeed, Defendants allege that these "contractual obligations" are the same contractual obligations "described above" in the other counts of their Counterclaim. (Countercl. ¶ 28.) If that were not sufficient to displace their

12

unjust enrichment claim, Defendants also allege that had they "known that [PSI] would not honor its obligations under the contracts, Defendant [sic] would not have entered into the contracts." (*Id.* ¶ 29.) Where, as here, a plaintiff's unjust enrichment claims arise from the same facts and alleged rights that form the basis of a breach of contract claim, the unjust enrichment claim should be dismissed as preempted by the breach of contract cause of action. *See Mike Nelson Co., Inc. v. Hathaway*, 2005 WL 2179310, at *3 n.4 (E.D. Cal. 2005) (holding that dismissal of claim for unjust enrichment was appropriate where allegations for breach of contract were incorporated by reference under the allegations for unjust enrichment) (citing *SMC Corp. v. Peoplesoft USA, Inc.*, 2004 WL 2538641, at *3 (S.D. Ind. 2004)). Accordingly, Defendants' unjust enrichment claim must be dismissed.

## VI.   CONCLUSION

For the reasons set forth above, PSI respectfully requests that this Court dismiss Counts Two, Three and Four of Defendants Alexander von Welczeck and Henry Lo's Counterclaims.

COZEN O'CONNOR

Dated: July 16, 2007

By: s/Daniel D. Harshman
    Daniel D. Harshman
    Attorneys for Plaintiff PSI Corporation

Of counsel:
George M. Gowen
David A. Felice
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2000
Facsimile: (215) 665-2013
E-mail: ggowen@cozen.com
      dfelice@cozen.com

13