1  HARRY G. LEWIS (STATE BAR NO. 157705)
   BRIAN V. DONNELLY (STATE BAR NO. 162987)
2  CHRISTINA PARK (STATE BAR NO. 236480)
   CORNERSTONE LAW GROUP
3  595 Market Street, Suite 2360
   San Francisco, CA 94105
4  Telephone: (415) 974-1900
   Facsimile:  (415) 974-6433
5
   Attorneys for Defendants and Cross-Complainants
6  ALEXANDER VON WELCZECK and HENRY LO

7
                    UNITED STATES DISTRICT COURT
8
                   NORTHERN DISTRICT OF CALIFORNIA
9
                          OAKLAND DIVISION
10

| | |
|---|---|
| PSI CORPORATION (f/k/a FRIENDLYWAY CORPORATION, f/k/a BIOFARM, INC.), <br><br>       PLAINTIFF, <br><br> vs. <br><br> ALEXANDER VON WELCZECK, HENRY LO, MICHAEL DRAPER and FRIENDLYWAY AG, <br><br>       DEFENDANTS. | CASE NO. C 07-02869 SBA <br><br> DEFENDANTS ALEXANDER VON WELCZECK'S AND HENRY LO'S FIRST AMENDED CROSS-COMPLAINT AGAINST PSI CORPORATION |
| FRIENDLYWAY, INC., KARL JOHANNNSMEIER, PACIFIC CAPSOURCE, INC., and DERMA PLUS, INC., <br><br>       NOMINAL DEFENDANTS | |
| ALEXANDER VON WELCZECK and HENRY LO <br><br>       CROSS-COMPLAINANTS, <br><br> vs. <br><br> PSI CORPORATION (f/k/a FRIENDLYWAY CORPORATION, f/k/a BIOFARM, INC.), <br><br>       CROSS-DEFENDANT. | |

Page 1

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendants and Cross-Complainants ALEXANDER VON WELCZECK ("Welczeck") and HENRY LO ("Lo") (collectively "Cross-Complainants") hereby counterclaim against Plaintiff and Cross-Defendant PSI CORPORATION f/k/a FRIENDLYWAY CORPORATION, f/k/a BIOFARM, INC. (hereinafter "PSI" or "Cross-Defendant") as follows:

## PARTIES AND JURISDICTION

1. On or about June 1, 2007, PSI commenced a lawsuit against, among other parties, Welczeck and Lo and other parties in this court and under the above action number (the "Complaint"). By a separate pleading filed prior to this First Amended Cross-Complaint, Cross-Complainants have denied any and all material allegations in the Complaint and have raised affirmatives defenses thereto.

2. Cross-Complainant Welczeck is an individual residing in California who, at all times relevant, was the Chief Executive Officer ("CEO") and the majority shareholder of friendlyway, Inc. ("FWI") and its successor Friendlyway Corporation ("FW Corp.").

3. Cross-Complainant Lo is an individual residing California who, at all times relevant, was the Chief Financial Officer of FWI and its successor FW Corp.

4. Cross-Defendant, on information and belief, is a Nevada corporation with its principal place of business in Colorado Springs, Colorado.

5. Cross-Defendant submitted to the jurisdiction of this court by the filing of its Complaint.

## GENERAL ALLEGATIONS

6. On August 13, 2004, FWI entered into a Stock Exchange Agreement ("SEA") to acquire Biofarm, Inc. ("Biofarm"), a public "shell" company, as part of a "reverse merger." A copy of the SEA is attached as Exhibit C to PSI's Complaint and incorporated by this reference.

7. The SEA established a 3 to 1 share exchange ratio that granted FWI's shareholders an aggregate 75% the resulting company. Biofarm's shareholders retained the remaining 25%.

Page 2

CROSS-COMPLAINANTS ALEXANDER VON WELCZECK'S AND HENRY LO'S
FIRST AMENDED CROSS-COMPLAINT AGAINST PSI CORPORATION
CASE NO. C 07-02869 SBA


8. Biofarm represented to FWI in the SEA that Biofarm's outstanding capitalization consisted of 6,000,000 shares. Accordingly, FWI's shareholders received 18,000,000 shares of Biofarm and Biofarm's shareholders received 6,000,000. Welczeck received 8,659,999 and Lo received 900,000 of the 18,000,000 aggregate shares received by FWI shareholders.

9. Section 10.2 of the SEA provided that, if it was later determined that Biofarm had more than 6,000,000 outstanding shares of stock, FWI shareholders would be issued additional shares so that the aggregate number of shares held by FWI was three times the number of shares held by the Biofarm shareholders.

10. FWI repurchased 1,633,334 shares of its common stock from Welczeck on or about October 31, 2004 for $367,500. FWI paid Welczeck for these shares by issuing him a promissory note in the amount of $367,500 ("the Note").

11. On December 10, 2004, FWI and Biofarm entered into the Closing Agreement consummating the merger transaction subject to the SEA. FWI then became a wholly-owned subsidiary of Biofarm.

12. Biofarm disclosed at the time of the execution of the Closing Agreement that it had 6,978,130 outstanding shares of common stock, and not the 6,000,000 shares represented to FWI in the SEA. FWI shareholders, including Cross-Complainants, were therefore entitled to be issued an additional 2,934,390 (978,130 x 3) shares pursuant to Section 10.2 of the SEA.

13. In March 2005, Biofarm changed its name to FW Corp.

14. In July 2005, a portion of the Note in the amount of $200,000 was converted to 454,545 shares of common stock of FW Corp. The remaining portion of the Note, $167,500 plus accrued interest of $26,613, was converted into a new promissory note in the amount of $194,113 ("New Note"). A copy of the FW Corp.'s Form 8-K describing the creation of the New Note is attached hereto as Exhibit A and incorporated by this reference.

15. In May 2006, FW Corp. merged with Pantel Systems, Inc. ("Pantel Merger"). Pursuant to the Pantel Merger, Pantel's sole shareholder, Kenneth J. Upcraft ("Upcraft"), became the majority and controlling shareholder of Cross-Defendant, as well as its President and CEO.

Soon thereafter, Welczeck and Lo were dismissed from Cross-Defendant's Board of Directors and from their positions as CEO and CFO.

16. On August 15, 2006, FW Corp., now controlled by Upcraft, announced that it had "cancelled" the issuance of 15,560,000 shares of its stock. On information and belief, the cancelled shares included all those shares held by Welczeck and Lo.

17. In October 2006, FW Corp changed its name to PSI.

18. Subsequent to the Pantel Merger, Cross-Complainants requested that Cross-Defendant issue them their proportionate share of the 2,934,930 additional shares of stock owed to them pursuant to Section 10.2 of the SEA. Cross-Defendant refused, and continues to refuse, to issue these shares to Cross-Complainants.

## LEGAL CLAIMS

### FIRST CLAIM
**(Breach of Contract regarding Promissory Note – Cross-Complainant Welczeck)**

19. Cross-Complainants reincorporate and reallege by this reference as though more fully set forth all the preceding and subsequent allegations of this Cross-Complaint.

20. Welczeck has performed all conditions, covenants, and promises required to be performed by him in accordance with the terms and conditions of the New Note.

21. Cross-Defendant has breached the New Note by refusing to issue the 454,545 additional shares to Welczeck and/or "cancelling" these shares, repudiating its obligations to Welczeck under the Note, and by filing the Complaint seeking rescission of all exchanges of securities between Cross-Complainant and Cross-Defendant.

WHEREFORE, Cross-Complainant Welczeck prays for relief against Cross-Defendant as hereinafter set forth.

### SECOND CLAIM
**(Breach of Contract - Cross-Complainants Welczeck and Lo)**

22. Cross-Complainants reincorporate and reallege by this reference as though more fully set forth all the preceding and subsequent allegations of this Cross-Complaint.

23. Cross-Complainants have performed all conditions, covenants, and promises required to be performed by them under the SEA.

24. Cross-Defendant, subsequent to the Pantel Merger, breached the SEA by refusing to issue Cross-Complainants their proportionate share of the 2,934,930 additional shares due to them pursuant to Section 10.2 of the SEA, repudiating its obligations to Complainants under the SEA to issue said stock, and by filing the Complaint seeking rescission of all exchanges of securities between Cross-Complainant and Cross-Defendant.

25. Cross-Complainants are, therefore, entitled to their proportionate share of the 2,934,930 additional shares of stock due to them pursuant to Section 10.2 of the SEA.

WHEREFORE, Cross-Complainants pray for relief against Cross-Defendant as hereinafter set forth.

### THIRD CLAIM
### (Unjust Enrichment – Cross-Complainants Welczeck and Lo)

26. Cross-Complainants reincorporate and reallege by this reference as though more fully set forth all the preceding and subsequent allegations of this Cross-Complaint.

27. As described above, Cross-Defendant has failed to fulfill its contractual obligations to Cross-Complainants and has been unjustly and unlawfully enriched at the expense of Cross-Complainants.

28. Had Cross-Complainants known that Cross-Defendant would not honor its obligations under the contracts, Defendant would not have entered into the contracts.

WHEREFORE, Cross-Complainants pray for relief against Cross-Defendant as hereinafter set forth.

### FOURTH CLAIM
### (Conversion – Cross-Complainants Welczeck and Lo)

29. Cross-Complainants reincorporate and reallege by this reference as though more fully set forth all the preceding and subsequent allegations of this Cross-Complaint.

30. Cross-Complainants have a right to possession to their proportionate share of the 2,934,930 additional shares of Cross-Defendant due to them pursuant to Section 10.2 of the SEA.

CROSS-COMPLAINANTS ALEXANDER VON WELCZECK'S AND HENRY LO'S
FIRST AMENDED CROSS-COMPLAINT AGAINST PSI CORPORATION
CASE NO. C 07-02869 SBA

31. Cross-Defendant has wrongfully interfered with Cross-Complainants right of possession.

32. Cross-Defendant's conduct has been willful, knowing, intentional, and undertaken with malice.

WHEREFORE, Cross-Complainants pray for relief against Cross-Defendant as hereinafter set forth.

### **PRAYER**

WHEREFORE, Cross-Complainant prays for judgment against Cross-Defendant as follows:

1. For an order compelling Cross-Defendant to issue to Welczeck 454,545 shares of PSI common stock.

2. For an order compelling Cross-Defendant to pay Welczeck $194,113 owing under the New Note, plus interest at the greater of the rate set forth in the note or the statutory rate;

3. For an order compelling Cross-Defendant to issue to Cross-Complainants their proportionate share of the 2,934,930 shares of PSI common stock due to them pursuant to Section 10.2 of the SEA.

4. For Cross-Complainants' attorneys fees and costs of suit incurred in this action;

5. Punitive damages; and

6. For such other and further relief as the Court may deem proper.

Dated: September 4, 2007                CORNERSTONE LAW GROUP

By: _____/S/_____
Harry Lewis
Attorneys for Defendant
ALEXANDER VON WELCZECK and
HENRY LO

Page 6
CROSS-COMPLAINANTS ALEXANDER VON WELCZECK'S AND HENRY LO'S
FIRST AMENDED CROSS-COMPLAINT AGAINST PSI CORPORATION
CASE NO. C 07-02869 SBA

**EXHIBIT A**

8-K 1 v026006.htm

<div style="text-align: center;">

# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, DC 20549

# FORM 8-K

### CURRENT REPORT

PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

DATE OF REPORT (DATE OF EARLIEST EVENT REPORTED): July 31, 2005

# friendlyway Corporation
### (NAME OF REGISTRANT AS SPECIFIED IN ITS CHARTER)

**Nevada**
(STATE OR OTHER JURISDICTION OF
INCORPORATION OR ORGANIZATION)

</div>

| | |
|---|---|
| **0-20317**<br>COMMISSION FILE NUMBER | **88-0270266**<br>(I.R.S. EMPLOYER<br>IDENTIFICATION NUMBER) |
| **1255 Battery Street, Suite 200, San Francisco, California**<br>(ADDRESS OF PRINCIPAL EXECUTIVE OFFICES) | **94111**<br>(ZIP CODE) |

<div style="text-align: center;">

ISSUER'S TELEPHONE NUMBER: (415) 288-3333

(FORMER NAME OR FORMER ADDRESS, IF CHANGED SINCE LAST REPORT)

</div>

Item 1.01  Entry into a Material Definitive Agreement.

Effective as of July 31, 2005, the Registrant entered into that certain Assignment and Assumption Agreement (the "Assignment") with friendlyway Technologies, Inc. ("FTI"), its wholly-owned subsidiary, pursuant to which FTI assigned and transferred to the Registrant, FTI's rights, duties, liabilities, and obligations under the following promissory notes: (a) Unsecured Convertible Promissory Note held by John Jameson ("Jameson") dated effective July 16, 2004 in the principal amount of $180,000 (the "Jameson Note"); and (b) Promissory Note held by Alexander von Welczeck ("AVW") dated effective August 20, 2004 in the principal amount of $367,500 (the "AVW Note").

Effective as of July 31, 2005, the Registrant and Jameson entered into a certain note conversion and subscription agreement pursuant to which Jameson agreed to cancel and subscribe the outstanding principal and accrued interest under the Jameson Note, in consideration for the issuance of shares of the Registrant's common stock as more particularly described in Item 3.02 below.

Effective as of July 31, 2005, the Registrant and AVW entered into a certain subscription agreement pursuant to which AVW agreed to cancel and subscribe Two Hundred Thousand Dollars of the outstanding principal under the AVW Note, in consideration for the issuance of shares of the Registrant's common stock as more particularly described in Item 3.02 below.

Effective as of July 31, 2005, Registrant executed and delivered a Promissory Note (the "New AVW Note") in the principal amount of One Hundred Ninety-Four Thousand One Hundred Thirteen Dollars ($194,113) to AVW for the remaining principal under the AVW Note and the interest accrued through July 31, 205 thereunder. AVW beneficially owns approximately 28.2% of Registrant's outstanding common stock and was one of the selling stockholders of the shares of FTI to Registrant in the share exchange transaction that closed on December 10, 2004 and is described in Registrant's Annual Report Form 10-KSB for the year ended October 31, 2004.

The New AVW Note bears interest at the compounded interest rate of six (6) percent per annum, is payable on or before June 30, 2008; provided, however, the New AVW Note will mature and the entire principal and accrued interest thereunder will become due and payable within ten (10) days of closing on or before December 31, 2005 of a transaction or series of transactions in which the Registrant issues and sells shares of capital stock, or securities convertible, exercisable or exchangeable into its capital stock, and raises gross proceeds of at least Three Million Dollars ($3,000,000) in the aggregate.

Effective as of July 31, 2005, the Registrant and friendlyway AG ("FWAG") entered into a certain subscription agreement pursuant to which FWAG agreed to cancel and subscribe the outstanding principal and accrued interest under the following promissory notes in consideration for the issuance of shares of the Registrant's commons stock as more particularly described in Item 3.02 below: (a) Unsecured Promissory Note dated effective July 7, 2005 in the principal amount of $100,000; (b) Unsecured Promissory Note dated effective July 15, 2005 in the principal amount of $100,000; and (c) Unsecured Promissory Note dated effective July 26, 2005 in the principal amount of $100,000 (collectively, the "July AG Notes").

On August 19, 2005, Registrant borrowed $100,000 from FWAG and executed and delivered an Unsecured Promissory Note (the "August 19 Note") in that principal amount to FWAG. FWAG beneficially owns approximately 29.6% of Registrant's outstanding common stock and was one of the selling stockholders of the shares of FTI to Registrant in the share exchange transaction that closed on December 10, 2004 and is described in Registrant's Annual Report Form 10-KSB for the year ended October 31, 2004.

The August 19 Note bears interest at the compounded interest rate of 6 percent per annum, is payable in equal quarterly installments of principal and accrued interest beginning on the last day of the first calendar quarter immediately following August 19, 2006 and on the last day of each calendar quarter thereafter, with the final payment due on or before March 31, 2008.

Effective as of September 2, 2005, the Registrant and FWAG entered into a certain subscription agreement pursuant to which FWAG agreed to cancel and subscribe the outstanding principal and accrued interest under the following promissory notes in consideration for the issuance of shares of the Registrant's commons stock as more particularly described in Item 3.02 below: (a) Unsecured Promissory Note dated effective August 19, 2005 in the principal amount of $100,000; and (b) Unsecured Promissory Note dated effective September 2, 2005 in the principal amount of $200,000 (collectively, the "Aug-Sept AG Notes").

Item 1.02 Termination of Material Definitive Agreement.

Effective as of July 31, 2005, the Registrant and Jameson entered into certain subscription agreement pursuant to which Jameson agreed to cancel and subscribe the outstanding principal and accrued interest under the Jameson Note, in consideration for the issuance of shares of the Registrant's common stock.

Effective as of July 31, 2005, the Registrant and AVW entered into a certain subscription agreement pursuant to which AVW agreed to cancel and subscribe Two Hundred Thousand Dollars of the outstanding principal under the AVW Note, in consideration for the issuance of shares of the Registrant's common stock. AVW is a stockholder of the Registrant.

Effective as of July 31, 2005, the Registrant and FWAG entered into a certain subscription agreement pursuant to which FWAG agreed to cancel and subscribe the outstanding principal and accrued interest under the July AG Notes in consideration for the issuance of shares of the Registrant's commons stock. FWAG is a stockholder of the Registrant.

Effective as of September 2, 2005, the Registrant and FWAG entered into a certain subscription agreement pursuant to which FWAG agreed to cancel and subscribe the outstanding principal and accrued interest under the Aug-Sept AG Notes in consideration for the issuance of shares of the Registrant's commons stock. FWAG is a stockholder of the Registrant.

Item 2.03 Creation of a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement of a Registrant.

As more particularly described in Items 1.01 above, effective as of July 31, 2005, the Registrant entered into the Assignment with FTI pursuant to which FTI assigned and transferred to the Registrant, FTI's rights, duties, liabilities, and obligations under the Jameson Note and AVW Note. As described in Item 1.02 above, however, effective as of July 31, 2005, the Registrant and Jameson entered into a certain subscription agreement pursuant to Jameson agreed to cancel and subscribe the outstanding principal and accrued interest under the Jameson Note in consideration for the issuance of shares of the Registrant's common stock. Moreover, effective as of July 31, 2005, the Registrant and AVW entered into a certain subscription agreement pursuant to which AVW agreed to cancel and subscribe Two Hundred Thousand Dollars of the outstanding principal under the AVW Note, in consideration for the issuance of shares of the Registrant's common stock.

On July 31, 2005, Registrant became obligated on a direct financial obligation pursuant to the New AVW Note. The amount of the obligation, including the terms of payment and other material terms of the obligations, are described above under Item 1.01 Entry into a Material Definitive Agreement.

On August 19, 2005, Registrant became obligated on a direct financial obligation pursuant to the August 19 Note. The amount of the obligation, including the terms of payment and other material terms of the obligations, are described above under Item 1.01 Entry into a Material Definitive Agreement.

Item 3.02   Unregistered Sales of Equity Securities.

Pursuant to certain subscription agreements dated effective as of July 31, 2005 entered into by and between the Registrant and the holders of the Jameson Note and the AVW Note, (a) the Jameson Note was cancelled and Jameson subscribed the outstanding principal and accrued interest thereunder in consideration for the Registrant's issuance of 1,100,000 shares of common stock; and (b) the AVW Note was cancelled and AVW subscribed Two Hundred Thousand Dollars of outstanding principal thereunder in consideration for the Registrant's issuance of 454,545 shares of common stock.

Pursuant to the subscription agreement dated effective as of July 31, 2005 entered into by and between the Registrant and FWAG, the July AG Notes were cancelled and FWAG subscribed the outstanding principal and accrued interest thereunder in consideration for the Registrant's issuance of 1,250,000 shares of common stock.

Pursuant to the subscription agreement dated effective as of September 2, 2005 entered into by and between the Registrant and FWAG, the Aug-Sept AG Notes were cancelled and FWAG subscribed the outstanding principal and accrued interest thereunder in consideration for the Registrant's issuance of 1,250,000 shares of common stock.

With respect to each of the issuances described in the foregoing paragraphs in this Item 3.02, exemption from registration requirements is claimed under the Securities Act of 1933, as amended (the "Securities Act") in reliance on Section 4(2) of the Securities Act or Regulation D promulgated thereunder. The purchasers represented their intention to acquire the Registrant's shares for investment only and not with a view to, or for sale in connection with, any distribution thereof and appropriate legends were affixed to the certificates evidencing the shares in such transaction. The purchasers had acquired access to information about the Registrant.

## SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, Registrant has duly caused this Report to be signed on its behalf by the undersigned, thereunto duly authorized.

Date: September 20, 2005

          friendlyway Corporation

By: /s/ Michael Urban

    Dr. Michael Urban
    President/Chief Executive Officer